**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZACHARY GREENBERG,<br><br>     *Plaintiff*,<br><br>  v.<br><br>JAMES C. HAGGERTY, in his official capacity as Board Chair of The Disciplinary Board of the Supreme Court of Pennsylvania, *et al.*<br><br>     *Defendants*. | No. 2:20-cv-03822-CFK |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ..............................................................................................................1

FACTUAL BACKGROUND.............................................................................................2

LEGAL STANDARD FOR PRELIMINARY INJUNCTION.......................................3

ARGUMENT .....................................................................................................................4

**I.**  Greenberg is likely to succeed on the merits because Rule 8.4(g) infringes the free speech rights of Pennsylvania attorneys by threatening to impose liability based upon the content and viewpoint of their ideas. ........................................................................................... 4

   A.   Viewpoint discrimination is no more acceptable within a code of professional conduct.................................................................................................... ......8

   B.   8.4(g) is substantially overbroad. ............................................................... 10

**II.**  Greenberg is also likely to prevail because Rule 8.4(g) unconstitutionally chills protected speech by employing vague and open-ended language that does not provide fair notice nor admit of reasoned and even-handed application.......................................................... 14

   A.   Rule 8.4(g)'s "manifest bias or prejudice, or engage in harassment or discrimination" standard is vague. ....................................................................................... 15

   B.   Rule 8.4(g)'s application of "in the practice of law" is vague. .................................... 19

**III.**  Greenberg will suffer irreparable harm if the Defendants are not enjoined from enforcing Rule 8.4(g). ............................................................................................................. 21

**IV.**  The balance of equities and public interest also support granting preliminary relief. ...... 22

CONCLUSION.................................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*ACLU v. Reno*, 929 F. Supp. 824 (E.D. Pa. 1996) ................................................................ 22, 24

*Alpine Apartments, Inc. v. Commonwealth*, 395 A.2d 299 (Pa. Commw. Ct. 1978) .................... 16

*Americans v. Prosperity v. Grewal*, 2019 WL 4855853, 2019 U.S. Dist. LEXIS 170793 (D.N.J.
Oct. 2, 2019). ........................................................................................................................... 4, 24

*Bank of Hope v. Chon*, 938 F.3d 389 (3d Cir. 2019) .................................................................. 23

*Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015) ............................................... 12

*Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011). ................................................................ 1

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................................................... 17

*Center for Investigative Reporting v. SEPTA*, __ F.3d __, 2020 WL 5509709, 2020 U.S. App.
LEXIS 29034 (3d Cir. Sept. 14, 2020) ............................................................... 1, 2, 14-15

*Connally v. General Const. Co.*, 269 U.S. 385 (1926) ................................................................ 17

*Cramp v. Bd of Pub. Instruction*, 368 U.S. 278 (1961) .............................................................. 15

*DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008) .................................................... 12, 13, 24

*Dambrot v. Central Michigan Univ.*, 55 F.3d 1177 (6th Cir. 1995) ........................................... 18

*Ellis v. Harrison*, 947 F.3d 555 (9th Cir. 2020) ........................................................................ 10

*FCC v. Fox TV Stations, Inc.*, 567 U.S. 239 (2012) ................................................................... 14

*Gay Lib v. Univ. of Missouri*, 558 F.2d 848 (8th Cir. 1977) ................................................. 23-24

*Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) ........................................................ *passim*

*Harkness v. Unemployment Comp. Bd of Review*, 920 A.2d 162 (Pa. 2007) .............................. 20

*Hurley v. Irish-Am Gay, Lesbian & Bisexual Group of Boston, Inc.*, 515 U.S. 557 (1995) .......... 1

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) ................................................................ 1

*Hynes v. Mayor & Council of Oradell*, 425 U.S. 610 (1976) ..................................................... 17

*Iancu v. Brunetti*, 139 S. Ct. 2294 (2019) ................................................................... 1, 4, 10, 13

*K.A. v. Pocono Mountain Sch. Dist.*, 710 F.3d 99 (3d Cir. 2013) ......................................... 21, 22

*Kalman v. Cortes*, 723 F. Supp. 2d 766 (E.D. Pa. 2010) ......................................................... 6, 7

*In re Kendall*, 712 F.3d 814 (3d Cir. 2013) ................................................................ 10

*Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967)...................................................... 19

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ................................... 22

*Konigsberg v. State Bar of Cal.*, 353 U.S. 252 (1957) ....................................... 9, 15, 22

*Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988).......................................... 13

*Masterpiece Cakeshop, Ltd. v. Colo Civil Rights Comm'n*, 138 S. Ct. 1719 (2018) .................... 8

*Matal v. Tam*, 137 S. Ct. 1744 (2017) ..............................................................4-5, 9, 19

*McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232 (3d Cir. 2010).......................... 12, 13, 15

*Miller v. Mitchell*, 598 F.3d 139 (3d Cir. 2010) ........................................................ 22

*Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876 (2018) ..................................... 4

*Morse v. Frederick*, 551 U.S. 393 (2007) ................................................................. 12

*NAACP v. Button*, 371 U.S. 415 (1963)..........................................................1, 8-9, 15, 24

*NAACP v. City of Philadelphia*, 834 F.3d 435 (3d Cir. 2016)...................................... 24

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1988)................................... 6, 16

*Nat'l Gay Task Force v. Bd. of Educ.*, 729 F.2d 1270 (10th Cir. 1984) ........................ 23

*Nat'l Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ... 2, 7, 9, 10, 12, 13

*Nat'l Socialist Party v. Skokie*, 432 U.S. 43 (1977) .................................................... 1

*Neb. Press Ass'n v. Stuart*, 423 U.S. 1327 (1975) ...................................................... 21

*Northeastern Pa. Freethought Soc'y v. Cty. of Lackwanna Transit Sys.*, 938 F.3d 432 (3d Cir. 2019) ............................................................................ 4

*Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. #204*, 523 F.3d 668 (7th Cir. 2008).......... 15-16

*Obergefell v. Hodges*, 576 U.S. 644 (2015)................................................................. 6

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992)....................................................................7-8

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ............................................ 4

*Reno v. ACLU*, 521 U.S. 844 (1997)........................................................................... 14

*Rodriguez v. Maricopa County Cmty. College Dist.*, 605 F.3d 703 (9th Cir. 2010) .............. 12-13

*Rosenberger v. Rector & Victors of the Univ. of Va.*, 515 U.S. 819 (1995)................................. 19

*In re Sawyer*, 360 U.S. 622 (1959) ............................................................................ 9

*Saxe v. State College Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001)............................ 7, 10-11, 13

*Smith v. Goguen,* 415 U.S. 566 (1974) .................................................................... 16, 17

*Snyder v. Phelps*, 562 U.S. 443 (2011) .......................................................................... 1

*Stenberg v. Carhart*, 530 U.S. 914 (2000) .................................................................. 13

*Stilp v. Contino*, 613 F.3d 405 (3d Cir. 2010)............................................................... 4

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ............................................ 7

*Swart v. City of Chicago*, 2020 WL 832362, 2020 U.S. Dist. LEXIS 29046 (N.D. Ill. Feb. 20, 2020) ...................................................................................................... 16-17

*Telescope Media Grp. v. Lucero*, 936 F.3d 740 (8th Cir. 2019)................................... 13

*Texas v. Johnson*, 491 U.S. 397 (1989) .......................................................................... 1

*United States v. Bolin*, __ F.3d__, 2020 U.S. App. LEXIS 30465 (2d Cir. Sept. 24, 2020) ........ 16

*United States v. Hill*, 959 F. Supp. 2d 158 (D.D.C. 2013).......................................... 17

*United States v. Schwimmer*, 279 U.S. 644 (1929).......................................................... 1

*United States v. Stevens*, 533 F.3d 218 (3d Cir. 2008) ............................................... 14

*United States v. Stevens*, 559 U.S. 460 (2010)................................................. 1, 10, 13

*Wynn v. Scott*, 449 F. Supp. 1302 (N.D. Ill. 1978) ..................................................... 17

*Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412 (3d Cir. 2010).......................... 22

*Zamecnik v. Indian Prairie Sch. Dist. #204*, 636 F.3d 874 (7th Cir. 2011).......... 12, 13

 **Constitutional Provisions**

U.S. CONST. AMEND. I ...................................................................................... *passim*

U.S. CONST. AMEND XIV ................................................................................. *passim*

**Statutes and Rules**

18 Pa. Cons. Stat. § 2709 .................................................................................... 22

42 Pa. Cons. Stat. § 953 ............................................................................................ 17

42 U.S.C. § 12182 ..................................................................................................... 17

204 Pa. Code § 99.3 .................................................................................................. 23

Fed. R. Civ. P. 65(c) ................................................................................................. 22

Pa. Code of Jud. Cond. 2.3 .......................................................................... 18, 19, 20, 22

Pa. R. Prof. Cond. 8.4(g) ..................................................................................... *passim*

**Other Authorities**

11A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. Apr. 2020).......... 21

Abramson, Bradley S., *ABA Model Rule 8.4(g): Constitutional and Other Concerns for Matrimonial Lawyers*, 31 J. AM. ACAD. MATRIM. LAW (2019) ............................................... 14

BLACK'S LAW DICTIONARY (10th Ed. 2014) ............................................................ 19

Blackman, Josh, *Reply: A Pause for State Courts Considering Model Rule 8.4(g)*, 30 GEO. J. LEGAL ETHICS 241 (2017)................................................................................. 6, 10

Dent Jr., George W*., Model Rule 8.4(g): Blatantly Unconstitutional and Blatantly Political,* 32 NOTRE DAME J. L. ETHICS & PUB. POL'Y 135 (2018).................................................... 6

Ekins, Emily, *Is Supporting Racists' Free Speech Rights the Same as Being a Racist?*, CATO AT LIBERTY (Nov. 1, 2017, 5:40 PM), https://www.cato.org/blog/supporting-racists-free-speech-rights-same-being-racist.......................................................................... 6-7

Indiana Supreme Court Disciplinary Commission, Advisory Opinion #1-20: Third Party Comments or Tags on a Lawyer's Social Media (Jul. 2020), *available at* https://www.in.gov/judiciary/discipline/files/dc-opn-1-20.pdf ................................................. 20

Kagan Elena, *Regulation of Hate Speech and Pornography After R.A.V.*, 60 U. CHI. L. REV. 873 (1993)...................................................................................................... 17

Pennyfarthing, Aldous J., *Pete Buttigieg Slaps Back at Amy Coney Barrett's Not-so-subtle Homophobic Slur*, DAILY KOS (Oct. 13, 2020, 5:20 PM),

https://www.dailykos.com/stories/2020/10/13/1986241/-Pete-Buttigieg-slaps-back-at-Amy-Coney-Barrett-s-not-so-subtle-homophobic-slur ................................................................ 18

Park, Jack, *ABA Model Rule 8.4(g): An Exercise in Coercing Virtue?*, 22 CHAP. L. REV. 267 (2019) ................................................................................................................ 23

Volokh, Eugene, *One-to-One Speech vs. One-to-Many Speech, Criminal Harassment Laws, and "Cyberstalking*,*"* 107 NW. U. L. REV. 731 (2013) ................................................................ 11

## INTRODUCTION

If the First Amendment means anything, it is not simply "free thought for those who agree with us but freedom for the thought we hate." *United States v. Schwimmer*, 279 U.S. 644, 655 (1929) (Holmes, J., dissenting). Conventional and prosaic ideas rarely need the First Amendment, as they do not evoke the censorious urges of government regulators. Provocative, heterodox, and politically incorrect ideas, on the other hand, do evoke such urges, and thus depend on constitutional protection for their very survival. Over the last century "freedom for the thought we hate" has become a cornerstone of modern First Amendment jurisprudence. To name but a few examples, the First Amendment protects callous anti-gay protests near a dead soldier's funeral; cruel videos depicting the crushing of mice under high-heeled shoe; the heartless exclusion of gay organizations from a St. Patrick's Day parade; gory and racist video games; vulgar and scandalous trademarks; tasteless lewd satire; disrespectful flag burning; and parades designed to intimidate Jewish survivors of the Holocaust. *See respectively Snyder v. Phelps,* 562 U.S. 443 (2011); *United States v. Stevens,* 559 U.S. 460 (2010); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston, Inc*., 515 U.S. 557 (1995); *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011); *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019); *Hustler Magazine, Inc v. Falwell,* 485 U.S. 46 (1988); *Texas v. Johnson*, 491 U.S. 397 (1989); *Nat'l Socialist Party v. Skokie*, 432 U.S. 43 (1977).

"Because First Amendment freedoms need breathing space to survive," another cornerstone of free speech jurisprudence is that "government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). In other words, vague regulations of speech are impermissible; "all forms of content-based restrictions must be capable of reasoned application." *Ctr. for Investigative Reporting v. SEPTA*, __F.3d__, 2020 WL 5509709, 2020 U.S. App. LEXIS 29034, at *18 (3d Cir. Sept. 14, 2020). Vague restraints on

1

speech pose "twin problems"—a "serious risk of chilling protected speech" and "the risk of discriminatory or arbitrary enforcement." *Id.* at *18 n.4 (internal quotation and citation omitted).

Individuals do not lose these rights when they join a state-regulated guild like the Pennsylvania Bar. "Speech is not unprotected merely because it is uttered by 'professionals.'" *Nat'l Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371–72 (2018) ("*NIFLA*"). "[D]isciplinary rules governing the legal professional cannot punish activity protected by the First Amendment…even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1054 (1991). The First Amendment requires that such a rule provides "fair notice to those to whom it is directed" and not be "so imprecise that discriminatory enforcement is a real possibility." *Id.* at 1048, 1051 (cleaned up).

By each of these measures, Pennsylvania Rule of Professional Conduct 8.4(g) falls short. In an effort to eradicate social injustices, prevent offense, avoid controversy, and swathe fragile sensibilities, the Rule imposes a speech code on Pennsylvania attorneys, threatening to impose professional liability on the basis of the content and viewpoint of their speech. It does so whether or not that speech has any connection to a legal proceeding or a client representation. Worse still, the Rule does not admit of any objective and determinative standard. At its core, the Rule employs vague language ("manifest bias or prejudice") and compounds that vagueness with open-ended qualifiers ("including, but not limited to") that inhibit expressions of moral judgments, religious beliefs, political views, or legal opinions in any law-related setting. Plaintiff Zachary Greenberg and other Pennsylvania attorneys will be chilled by the threat of *ad hoc*, arbitrary and discriminatory enforcement.

## FACTUAL BACKGROUND

On June 8, 2020, Pennsylvania appended to its Rules of Professional Conduct the new Rule 8.4(g) ("8.4(g)" or "the Rule"). Complaint (Dkt. 1) ¶ 40. The Rule designates it as professional misconduct to "in the practice of law, by words or conduct, knowingly manifest bias

or prejudice, or engage in harassment or discrimination, as those terms are defined in applicable federal, state or local statutes or ordinances, including but not limited to bias, prejudice, harassment or discrimination based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status." *Id*. A comment to the rule explains that "conduct in the practice of law includes participation in activities that are required for a lawyer to practice law, including but not limited to continuing legal education seminars, bench bar conferences and bar association activities where legal education credits are offered." *Id*.[1] 8.4(g) becomes effective on December 8, 2020. Complaint ¶ 41.

On August 6, 2020, Plaintiff Zachary Greenberg ("Plaintiff" or "Greenberg") filed the complaint in this action, seeking declaratory and injunctive relief against enforcement of the Rule. Greenberg, a Pennsylvania-licensed attorney who regularly speaks at Continuing Legal Education ("CLE") and non-Continuing Legal Education events on controversial, polarizing, and hot-button legal topics, fears that in today's climate he could be subject to professional disciplinary processes or sanction if his speech is perceived to violate the Rule. *Id.* at ¶¶ 12, 16–32, 60–77. He brings this action to vindicate his First Amendment and Due Process rights and those of Pennsylvania attorneys that are chilled by an overbroad and vague disciplinary rule. With the effective date of the Rule fast approaching, Greenberg now moves for a preliminary injunction against enforcement of the Rule.

### LEGAL STANDARD FOR PRELIMINARY INJUNCTION

Four factors determine whether a court should issue a preliminary injunction: (1) whether there is a reasonable probability that plaintiff will eventually succeed in the litigation; (2) whether the plaintiff will suffer irreparable harm absent the injunction; (3) the possibility of harm

---

[1] The full text of the amendment to Rule 8.4 is available at http://www.pacourts.us/assets/opinions/Supreme/out/Attachment%20-%20104446393101837423.pdf?cb=1.

to other interested persons from the grant or denial of the injunction; and (4) the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). "Because this action involves the alleged suppression of speech in violation of the First Amendment," the Court should "focus [its] attention on the first factor." *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010). In a First Amendment case, once a plaintiff shows a reasonable probability of success, "it is axiomatic [he] has met the other Reilly factors for granting a preliminary injunction." *Americans for Prosperity v. Grewal*, 2019 WL 4855853, 2019 U.S. Dist. LEXIS 170793, at *59 (D.N.J. Oct. 2, 2019). Greenberg "must prove that the law restricts protected speech and that [he] will suffer irreparable harm without the injunction." *Reilly*, 858 F.3d at 180 n.5. For the reasons discussed below, each of the *Reilly* factors weighs in favor of relief, and thus the Court should preliminarily enjoin Defendants from enforcing Rule 8.4(g).

## ARGUMENT

I.  **Greenberg is likely to succeed on the merits because Rule 8.4(g) infringes the free speech rights of Pennsylvania attorneys by threatening to impose liability based upon the content and viewpoint of their ideas.**

If a government entity chooses to regulate or restrict speech, it may not do so in a way that discriminates against certain viewpoints. *E.g., Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (where rule "is viewpoint-based, it is unconstitutional"); *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1885 (2018) ("restrictions…based on viewpoint are prohibited"); *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) ("viewpoint discrimination is forbidden"); *Northeastern Pa. Freethought Soc'y v. Cty. of Lackawanna Transit Sys.*, 938 F.3d 424, 436 (3d Cir. 2019) ("*Freethought Soc'y*") ("viewpoint discrimination is impermissible in any forum"). "Viewpoint discrimination is an egregious form of content discrimination. Rather than aiming at particular subjects, it targets particular views taken by speakers." *Freethought Soc'y*, 938 F.3d at 432 (cleaned up). "[T]hat violates the First Amendment's most basic promise." *Id.*

Rule 8.4(g) runs afoul of this core tenet of First Amendment law by proscribing speech on the basis of viewpoint. *Matal* shows why. *Matal* assessed the constitutionality of a federal

statute that prohibited the registration of trademarks that may "disparage or bring into contempt or disrepute" any "persons, living or dead." 137 S. Ct. at 1751 (alterations omitted). In two opinions, the Supreme Court unanimously determined that this statute constituted a viewpoint-based restriction. Writing for half the eight-member Court, Justice Alito explained: "Our cases use the term 'viewpoint' discrimination in a broad sense." *Id.* at 1763. "[I]n that sense, the disparagement clause discriminates on the bases [sic] of 'viewpoint.'" *Id.* It refuses "speech that is offensive to a substantial percentage of the members of any group." *Id.* And, "that is viewpoint discrimination: Giving offense is a viewpoint." *Id.*

Justice Kennedy, writing for the other half of the Court, echoed this reasoning. "At its most basic, the test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Id.* at 1766. On any particular subject, the disparagement clause permitted registration of "a positive or benign mark but not a derogatory one." *Id.* "The law thus reflects the Government's disapproval of a subset of messages it finds offensive. This is the essence of viewpoint discrimination." *Id.*

8.4(g)'s prohibition on using words to "knowingly manifest bias or prejudice, or engage in harassment or discrimination" suffers from the same infirmity. If, for example, a Pennsylvania attorney wishes to discuss fundamentalist religions in a legal setting, Rule 8.4(g) inhibits him or her from espousing the view that such religions are regressive, oppressive and worthy of condemnation. Similarly, imagine an attorney who recently chose to leave the Church of Scientology. If she wishes to explain her departure to attorney acquaintances at a bench-bar conference, she can't cast the religion in a deprecatory light without risking discipline under the Rule.

Conversely, imagine a religious attorney who harbors a good faith belief that allowing pre-adolescent gender identity transitioning is harmful and abusive. Expressing such views at a bar association event is impermissible under the Rule. Or alternatively, imagine a Democratic Socialist attorney who adheres to the views of Bernie Sanders and believes "Billionaires

shouldn't exist." If that attorney expresses such biased and prejudicial views (based upon socioeconomic status) at a CLE, 8.4(g) subjects them to discipline. *See also* Josh Blackman, *Reply: A Pause for State Courts Considering Model Rule 8.4(g)*, 30 GEO. J. LEGAL. ETHICS 241, 245 (2017) (offering an assortment of topics that might arise at a CLE seminar and that would implicate issues of race, gender, religion, national origin, ethnicity, sexual orientation, gender identity, marital status and socioeconomic status); George W. Dent, Jr., *Model Rule 8.4(g): Blatantly Unconstitutional and Blatantly Political*, 32 NOTRE DAME J. L. ETHICS & PUB POL'Y 135, 145–50 (2018) (similar).

 In the very same opinion that the Supreme Court announced the Fourteenth Amendment's guarantee of same-sex marriage, it made clear that "those who adhere to religious doctrines[] may continue to advocate with utmost conviction that, by divine precepts, same-sex marriage should not be condoned." *Obergefell v. Hodges*, 576 U.S. 644, 679 (2015). Just not if you're a lawyer in Pennsylvania. As in *Matal*, the Rule suppresses certain viewpoints on certain topics: tolerant, benign and respectful speech is allowed; biased, prejudiced, discriminatory, critical and derogatory speech is not. *Accord Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 593 (1998) (Scalia, J., concurring in the judgment) (a solicitude for decency and respectful speech "unquestionably constitutes viewpoint discrimination"); *Kalman v. Cortes*, 723 F. Supp. 2d 766, 802 (E.D. Pa. 2010) (holding unconstitutional as viewpoint-based a statute that permitted corporate names that were respectful and reverent to religion while prohibiting names that were disrespectful and irreverent to religion).

Through his educational advocacy work at CLE seminars, conferences and law school events, Greenberg defends the right of speakers to express their views, however prejudiced or misguided, free from government penalty. The unfortunate modern reality is that many people today consider defending the free speech rights of incendiary speakers to be as incendiary as the underlying speech itself. Emily Ekins, *Is Supporting Racists' Free Speech Rights the Same as Being a Racist?*, CATO AT LIBERTY (Nov. 1, 2017, 5:40 PM), https://www.cato.org/blog/supporting-racists-free-speech-rights-same-being-racist (reporting on

a CATO survey that found "nearly half (49%) of current college and graduate students believe that 'supporting someone's right to say racist things is as bad as holding racist views yourself'"). That 8.4(g) requires "knowing" manifestations of "bias or prejudice" provides Greenberg no comfort when potential liability ultimately turns on the perceptions of his public audience—each of whom has the ability to file confidential disciplinary complaints without consequence—and then the judgment of the disciplinary authorities themselves. Nor does this feature of the Rule save it from being struck down. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014) (repudiating the notion that plaintiff could feel secure merely because the statute required "knowing" falsehood and plaintiff had no "plans to lie or recklessly disregard the veracity of its speech.").

"[V]iewpoint discrimination is inherent in the design and structure of this Act. This law is a paradigmatic example of the serious threat presented when government seeks to impose its own message in the place of individual speech, thought, and expression." *NIFLA*, 138 S. Ct. at 2379 (Kennedy, J, concurring). "[A] disparaging comment directed at an individual's sex, race, or some other personal characteristic" can be captured under certain anti-discrimination laws "precisely because of its sensitive subject matter and because of the odious viewpoint it expresses." *Saxe v. State College Area Sch. Dist.,* 240 F.3d 200, 206 (3d Cir. 2001) (Alito, J.). As Justice Scalia elucidated nearly 30 years ago in striking down a municipal hate speech ordinance, derogatory language "would seemingly be usable ad libitum in the placards of those arguing in favor of racial, color, etc., tolerance and equality, but could not be used by those speakers' opponents. One could hold up a sign saying, for example, that all 'anti-Catholic bigots' are misbegotten; but not that all 'papists' are, for that would insult and provoke violence 'on the basis of religion.' St. Paul [Minnesota] has no such authority to license one side of a debate to

fight freestyle, while requiring the other to follow Marquis of Queensberry rules." *R.A.V. v. St. Paul.* 505 U.S. 377, 391–92 (1992).[2]

Again, "[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1746 (2018) (Thomas, J., concurring in part and in the judgment) (quoting *Texas v. Johnson*, 491 U.S. 397, 414 (1989)). When "it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection." *Id.* (quoting *Hustler Magazine*, 485 U.S. at 55). Regulating speech "to produce a society free of biases" is unacceptable "for it amounts to nothing less than a proposal to limit speech in the service of orthodox expression." *Id*. (cleaned up).

Rule 8.4(g) muzzles speech on the basis of viewpoint and therefore Greenberg is near-certain to succeed in having the Rule declared constitutional.

## A.   Viewpoint discrimination is no more acceptable within a code of professional conduct.

Rule 8.4(g)'s attempt to eradicate societal biases does not become constitutional merely because it only restricts the speech of licensed attorneys. As the Supreme Court has long declared, "it is no answer to say that the purpose of the regulation is merely to insure high professional standards and not to curtail free expression. For a state may not, under the guide of prohibiting professional misconduct, ignore constitutional rights." *NAACP v. Button*, 371 U.S.

---

[2] In one sense Rule 8.4(g) can be distinguished from the statute in *R.A.V.* because its applications are not facially confined to an enumerated list of topics. However, as discussed at length in Section II, *infra*, using open-ended "including, but not limited to" language exacerbates the problem by making arbitrary enforcement a certainty and even-handed enforcement an impossibility. *Kalman*, 723 F. Supp. 2d at 803 (observing that the danger of viewpoint censorship "is at its *zenith* when the determination of who may speak and who may not is left to the *unbridled discretion of a government official*") (quoting *City of Lakewood v. Plain Dealer Pub'g Co.*, 486 U.S. 750, 763 (1988) and adding emphasis).

415, 438–39 (1963) (cleaned up). Lawyers must remain "unintimidated—free to think, speak, and act as members of an Independent Bar." *Konigsberg v. State Bar of Cal.*, 353 U.S. 252, 273 (1957). The right to pursue a practice of law—or participate in any licensed occupation for that matter—cannot be conditioned on waiving First Amendment rights. *Gentile*, 501 U.S. at 1054; *cf. also Matal*, 137 S. Ct. at 1760–61 (describing the doctrine of "unconstitutional conditions" under which "the Government may not deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech even if he has no entitlement to that benefit.") (alterations and quotations omitted).

   If there was any lingering doubt about this proposition, the Supreme Court reaffirmed just two years ago that "professional speech" is not "a separate category of speech." *NIFLA*, 138 S. Ct. at 2371. "Speech is not unprotected merely because it uttered by 'professionals.'" *Id*. at 2371–72. *NIFLA* singles out "two circumstances" in which professional speech may be afforded less than full protection. *Id.* at 2372. First, courts may apply "more deferential review to some laws that require professionals to disclose factual, noncontroversial information in their 'commercial speech.'" *Id.* Second, "[s]tates may regulate professional conduct, even though that conduct incidentally involves speech." *Id.*

   8.4(g) fits neither exception. Rather, it directly regulates the expressed opinions, views, and beliefs of members of the Pennsylvania Bar. Professionals might disagree about matters of ethics or policy or their craft itself, but "the best test of truth is the power of the thought to get itself accepted in the competition of the market, and the people lose when the government is deciding which ideas should prevail." *Id.* at 2375 (internal quotation omitted).

   In line with *NIFLA*'s second exception, when an attorney's speech occurs as part and parcel of pending litigation or a client representation, such remarks become "more censurable" because they can "obstruct the administration of justice." *In re Sawyer*, 360 U.S. 622, 636 (1959); *Gentile*, 501 U.S. at 1074 (Rehnquist, J., opinion of the Court) ("Lawyers representing clients in pending cases are key participants in the criminal justice system, and the State may demand some adherence to the precepts of that system in regulating their speech as well as their

conduct."); *Gentile*, 501 U.S. at 1081 (O'Connor, J., concurring) ("a State may regulate speech by lawyers representing clients in pending cases more readily than it may regulate the press"); *In re Kendall*, 712 F.3d 814, 826 (3d Cir. 2013) (similar).

Rule 8.4(g), however, contains no limitation to speech uttered in the course of representing a client, in a pending litigation, or speech that is prejudicial to the administration of justice. *See generally* Blackman, *supra*, 30 GEO. J. LEGAL. ETHICS at 257–59 (explaining that states lack a compelling interest for regulation outside the delivery of legal services). Rather, it applies to words uttered "in the practice of law" but then proceeds to define "practice of law" to include participation in continuing legal education seminars, bench bar conferences and bar association activities where legal education credits are offered. Pa. R. Prof. Cond. 8.4(g), *cmt.* 3. By contrast, many states have adopted an earlier comment to Model Rule 8.4(d), promulgated by the ABA in 1998, which only prohibits manifesting bias or prejudice "in the course of representing a client" as that constitutes "conduct that is prejudicial to the administration of justice." *See Ellis v. Harrison*, 947 F.3d 555, 563 n.9 (9th Cir. 2020) (*en banc*) (Nguyen, J., concurring) (citing examples).

### B.    8.4(g) is substantially overbroad.

If Greenberg is correct that the Rule is viewpoint-based, that "end[s] the matter"; "it must be invalidated"—and a preliminary injunction granted—even without considering the Rule's "permissible applications." *Iancu*, 139 S. Ct. at 2302. But even if Rule 8.4(g) were deemed content-based, rather than viewpoint-based, and even if certain applications of the Rule would be permissible under *NIFLA*'s second exception (*i.e.* certain applications where an attorney's speech occurs in the course of a pending matter and is prejudicial to the administration of justice), the Rule remains facially overbroad. In First Amendment cases, a court will invalidate a statute as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotation omitted); *accord Saxe v. State College Area Sch. Dist.,* 240 F.3d 200,

214 (3d Cir. 2001) (Alito, J.). "A regulation is unconstitutional on its face on overbreadth grounds where there is a likelihood that the statute's very existence will inhibit free expression by inhibiting the speech of third parties who are not before the Court." *Saxe*, 240 F.3d at 214 (internal quotations omitted).

*Saxe* involved two Christian students who brought suit to challenge their school district's adoption of a policy that prohibited "any harassment of a student by a member of the school community" and provided a lengthy definition and specification of various types of qualifying harassment. *Id.* at 202–03. *Saxe* repudiates the notion that there is a "categorical 'harassment exception' to the First Amendment's free speech clause." *Id.* at 204. "There is of course no question that non-expressive, physically harassing *conduct* is entirely outside the ambit of the free speech clause." *Id.* at 206 (emphasis in original).[3] "But there is also no question that the free speech clause protects a wide variety of speech that listeners may consider deeply offensive, including statements that impugn another's race or national origin or that denigrate religious beliefs." *Saxe*, 240 F.3d at 206. "[H]owever detestable the views expressed may be, we cannot turn a blind eye to the First Amendment implications." *Id*.

The similarities between Rule 8.4(g) and *Saxe* demonstrate why Greenberg is likely to succeed in having the Rule declared unconstitutional. Just like 8.4(g)'s enumeration of twelve protected characteristics that the Rule "includ[es,] but [is] not limited to," the school policy in *Saxe* reached beyond the classes protected by federal statute and also included a "catch-all category." *Id*. Just like Rule 8.4(g) extends beyond manifestations of bias that are prejudicial to the administration of justice, the school policy "extend[ed] beyond harassment that objectively denies a student equal access to a school's education resources." *Id.* (contrasting "federal anti-

---

[3] Although prohibitions on harassment can be, and often are, consistent with the Constitution, governments cannot shrink that ambit and "eliminate First Amendment scrutiny by just labeling communication as the 'conduct' of 'harassment.'" Eugene Volokh, *One-to-One Speech vs. One-to-Many Speech, Criminal Harassment Laws, and "Cyberstalking*," 107 Nw. U. L. Rev. 731 (2013).

harassment law, which imposes liability only when the harassment has a systematic *effect* on educational programs and activities") (internal quotation omitted). Just like Rule 8.4(g) does not confine itself to the areas in which attorney speech is regulable—when, under *NIFLA*, it involves non-controversial factual commercial speech or speech incidental to professional conduct that would be prejudicial to the administration of justice—the school policy did not limit itself to the three categories of regulable student speech.[4] *Saxe*, 240 F.3d at 216–17 (reasoning that the school policy was unconstitutionally overbroad because it covered a substantial amount of non-vulgar, non-school sponsored speech that did not pose a realistic threat of substantial disruption).

*Saxe* has since been reaffirmed by the Third Circuit on multiple occasions. In *DeJohn v. Temple University*, the court invalidated a Temple speech code because "the policy's use of 'hostile,' 'offensive,' and 'gender-motivated' is, on its face, sufficiently broad and subjective that they 'could conceivably be applied to cover any speech' of a 'gender-motivated' nature 'the content of which offends someone." 537 F.3d 301, 317 (3d Cir. 2008) (quoting *Saxe*, 240 F.3d at 217). In *McCauley v. University of the Virgin Islands*, the court invalidated as facially overbroad another harassment policy because its "use of 'offensive' was, on its face, sufficiently broad and subjective that it could conceivably be applied to cover any speech that offends someone." 618 F.3d 232, 248–49 (3d Cir. 2010) (cleaned up). It provided "no shelter for core protected speech." *Id.* at 249 (quoting *DeJohn*, 537 F.3d at 317–18).

Other circuits have followed suit in recognizing the right to engage in hateful intolerant speech. "[D]isparaging the views of another to support one's own cause is protected by the First Amendment" *Bible Believers v. Wayne County*, 805 F.3d 228, 244 (6th Cir. 2015) (*en banc*) (involving banners that read: "Islam Is A Religion of Blood and Murder"); *see also Zamecnik v. Indian Prairie Sch. Dist. #204*, 636 F.3d 874 (7th Cir. 2011) (involving t-shirts that read: "Be Happy, Not Gay"). "The Constitution embraces…a heated exchange of views, even (perhaps

---

[4] Subsequent to *Saxe*, a fourth major category was added but that is not germane to the point here. *See Morse v. Frederick*, 551 U.S. 393 (2007).

especially) when they concern sensitive topics like race, where the risk of conflict and insult is high." *Rodriguez v. Maricopa County Cmty. College Dist*., 605 F.3d 703, 708 (9th Cir. 2010) (involving emails espousing the "superiority of Western Civilization" and advocating for "discrimination" and "preservation of White majority"). "The right to provoke, offend and shock lies at the core of the First Amendment." *Id*. "[R]egulating speech because it is discriminatory or offensive is not a compelling state interest, however hurtful the speech may be." *Telescope Media Grp. v. Lucero,* 936 F.3d 740, 755 (8th Cir. 2019) (involving wedding photographers who refused to produce same-sex wedding videos).

Greenberg expects the Defendants will offer their assurances that they will only apply the Rule to extreme circumstances, but this cannot save the overbroad rule. "[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*." *Stevens*, 559 U.S. at 480. Courts may not uphold an unconstitutional rule just because defendants "promise[] to use it responsibly." *Id*. Nor may they "write nonbinding limits into a silent state statute"[5] or "rewrite a law to conform it to constitutional requirements." *Iancu*, 139 S. Ct. at 2301 (*quoting Stevens*, 559 U.S. at 481). They are "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." *Stenberg v. Carhart*, 530 U.S. 914, 944 (2000) (quoting *Boos v. Barry*, 485 U.S. 312, 330 (1988)). There is no reasonable and readily apparent construction that can salvage the Rule.

~~~                               ~~~                               ~~~

Just as high school students (*Saxe*; *Zamecnik*), college students (*DeJohn*; *McCauley*), public employees (*Rodriguez*), unlicensed professionals (*Telescope Media Grp.*), and members of the general public (*Bible Believers*) all retain their First Amendment rights, so too do Pennsylvania attorneys. Because the Rule far exceeds the two limited areas in which professional regulatory authorities may restrict speech, *NIFLA*, 138 S. Ct. at 2372, it is substantially

---

[5] *Lakewood v. Plain Dealer Pub. Co*., 486 U.S. 750, 770 (1988).

overbroad and facially infirm under the First Amendment. Indeed, the potential applications and zone of chill of Rule 8.4(g) exceed the examples discussed above. *See* Bradley S. Abramson, *ABA Model Rule 8.4(g): Constitutional and Other Concerns for Matrimonial Lawyers,* 31 J. AM. ACAD. MATRIM. LAW. 283, 328 (2019) (suggesting that the model rule "would appear to disproportionately impact matrimonial lawyers" "because matrimonial law intersects with some of the Rule's protected classes…in a greater number of circumstances").

8.4(g) is fundamentally incompatible with the First Amendment. As a viewpoint-based restriction of protected speech, it is automatically infirm. Interpreted as a subject matter/content-based restriction, it is fatally overbroad. State regulators may not anoint themselves gatekeepers of the marketplace of ideas. Attorneys have no monopoly on the truth but they are every bit as entitled as any other citizen to share their opinions publicly. Greenberg readily meets the burden of showing he is likely to prevail in this case.

**II.    Greenberg is also likely to prevail because Rule 8.4(g) unconstitutionally chills protected speech by employing vague and open-ended language that does not provide fair notice nor admit of reasoned and even-handed application.**

"The void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox TV Stations*, *Inc.*, 567 U.S. 239, 253 (2012). If a rule either fails to provide fair notice to "people of ordinary intelligence" or "authorizes or even encourages arbitrary and discriminatory enforcement," it is void for vagueness. *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008). "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Fox TV*, 567 U.S. at 253–54; *accord Reno v. ACLU*, 521 U.S. 844, 871–72 (1997).

Accordingly, "all forms of content-based restriction"—whether the most egregious viewpoint-based restrictions or the less egregious subject-based restrictions—"must be capable

of reasoned application." *Ctr. for Investigative Reporting*, 2020 WL 5509709, 2020 U.S. App. LEXIS 29034, at *18. Again, this standard applies to professional rules regulating attorney speech. *Gentile*, 501 U.S. at 1051; *NAACP v. Button*, 371 U.S. 415, 433 (1963); *Konigsberg v. State Bar of Cal.*, 353 U.S. 252, 263 (1957) ("vague qualification[s],…easily adapted to fit personal views and predilections, can be a dangerous instrument for arbitrary and discriminatory denial of the right to practice law.") The question is not whether discriminatory enforcement will necessarily occur, "but whether the Rule is so imprecise that discriminatory enforcement is a real possibility." *Gentile*, 501 U.S. at 1051.

Along multiple dimensions, 8.4(g) is simply too vague. It does not provide fair notice of what is prohibited, nor does it provide objective and workable standards that avoid the possibility of discriminatory and arbitrary enforcement.

### A.    Rule 8.4(g)'s "manifest bias or prejudice, or engage in harassment or discrimination" standard is vague.

Vagueness lies at the very heart of 8.4(g): what speech, what words, what ideas are sufficient to "manifest bias or prejudice, or engage in harassment or discrimination"? As Greenberg's complaint shows, in common parlance of today's society, speakers are accused of bias, prejudice and bigotry for taking policy positions, for discussing statistics or academic theories, for espousing legal views, or for even just mentioning loaded words. Complaint ¶¶73–74; *see also* Greenberg Declaration in Support of Motion for Preliminary Injunction. At the height of the McCarthyite Red Scare, there were those "among us always ready to affix a Communist label upon those whose ideas they violently oppose." *Cramp v. Bd. of Pub. Instruction*, 368 U.S. 278, 286–87 (1961). Though the labels have changed, the phenomenon now is similar—"it would be blinking reality not to acknowledge" comparable forces and efforts to tar and brand ideological opponents. *Id*.

In particular, "bias" and "prejudice" are not "susceptible of objective measurement." *Id.* at 286. Just as a "ban on 'offensive' signs is hopelessly ambiguous and subjective," so too is a ban on manifestations of bias or prejudice. *McCauley*, 618 F.3d at 250; *cf. also Nuxoll ex rel.*

15

*Nuxoll v. Indian Prairie Sch. Dist. #204*, 523 F.3d 668, 675 (7th Cir. 2008) (injunction against forbidding "'negative comments' about homosexuality short of 'fighting words'" would be "too vague" to satisfy Rule 65). Similarly, the Supreme Court has suggested that a metric of "general standards of decency and respect," if it "appeared in a criminal or regulatory statute," "could raise substantial vagueness concerns." *Finley*, 524 U.S. at 588. In another context, the Supreme Court held void for vagueness a state statute that penalized anyone who "treats contemptuously" the flag. *Smith v. Goguen*, 415 U.S. 566, 573 (1974). Just as "what is contemptuous to one man may be a work of art to another," what one person perceives as a manifestation of bias or prejudice another perceives as a religious or moral tenet, and yet another perceives as an intellectual curiosity or theory. *Id.* Rule 8.4(g) "fails to draw reasonably clear lines" between what is prohibited and what is not. *Id.* at 574.

8.4(g)'s attempts to provide guidance only muddy the water further. First, the Rule enumerates twelve topics that are covered, from race to socioeconomic status. But the upshot of this clause only introduces more fuzziness because the Rule "includ[es], but [is] not limited to" those twelve categories of bias. "Including, but not limited to" language "is a clear indication that the [drafter] intended to exclude nothing, implicitly or otherwise, by the language which follows those words." *Aldine Apartments, Inc. v. Commonwealth*, 395 A.2d 299, 302 (Pa. Commw. Ct. 1978) (cited approvingly by *Dechert LLP v. Commonwealth*, 998 A.2d 575, 581 (Pa. 2010)). Readers can only guess at the scope of the Rule. Is manifesting bias on the basis of political affiliation permissible? What about on the basis of ideological commitments? What about on the basis of intelligence? What about on the basis of personal values? *See Saxe*, 240 F.3d at 210 (finding policy's prohibition on the disparagement of "values" to be particularly pernicious). No answer is provided.

Such unbound "including, but not limited to" language *itself* creates vagueness problems; "[r]ather than narrow the scope of the forbidden speech" it "blurs it." *United States v. Bolin*, __F.3d__, 2020 U.S. App. LEXIS 30465 (2d Cir. Sept. 24, 2020); *see also Swart v. City of Chicago*, 2020 WL 832362, 2020 U.S. Dist. LEXIS 29046, *26 (N.D. Ill. Feb. 20, 2020) ("[T]he

inclusion of the catch-all phrase permits arbitrary enforcement for any reason or no reason. Again, such enforcement violates the Constitution."); *Wynn v. Scott*, 449 F. Supp. 1302, 1317 (N.D. Ill. 1978) ("Including, but not limited to" clause renders proscription "overly vague."); *cf. also United States v. Hill*, 959 F. Supp. 2d 158, 165 (D.D.C. 2013) (modifying a condition of release to eliminate "including, but not limited to" clause to avoid vagueness). In its "effort to be all-inclusive" this clause "raises serious problems of vagueness." *Buckley v. Valeo*, 424 U.S. 1, 76 (1976). Moreover, even if the list of twelve categories were actually a complete and exhaustive enumeration, it would do nothing to make the meaning of "bias or prejudice" more scrutable. *See Smith*, 415 U.S. at 578–79 (repudiating argument that the vagueness of "treats contemptuously" was ameliorated by the fact that the object of the statute was narrow and ascertainable (*i.e.* the United States flag)).

Second, 8.4(g) instructs that "bias," "prejudice," "harassment," and "discrimination" should be understood as "those terms are defined in applicable federal, state or local statutes or ordinances." *See also* Rule 8.4(g) *cmt*. 4 ("The substantive law of antidiscrimination and anti-harassment statutes and case law guide application of paragraph (g) and clarify the scope of prohibited conduct"). But what body of law is 8.4(g) even referring to? *See Hynes v. Mayor & Council of Oradell*, 425 U.S. 610, 621 (1976) ("it is not clear what is meant by a 'Federal, State, County or Municipal… cause'); *Connally v. General Constr. Co*., 269 U.S. 385, 390 (1926) ("the term 'locality' itself is fatally vague and uncertain."). Most such statutes use the language of "discrimination" rather than of "prejudice" or "bias." *E.g.* 42 U.S.C. § 12182 (Title III of Civil Rights Act of 1964, prohibiting discrimination by public accommodations); 43 Pa. Cons. Stat. § 953 (Pennsylvania Human Relations Act, establishing right to freedom from discrimination in employment, housing, and public accommodation). For good reason. In contrast to expressed attitudes and views, non-expressive discriminatory conduct is not protected by the First Amendment. *See generally* Elena Kagan, *Regulation of Hate Speech and Pornography After R.A.V.*, 60 U. CHI. L. REV. 873, 884 (1993) (advocating for renewed focus on regulating discriminatory conduct rather than hateful speech).

17

The one analog that employs the same "bias" and "prejudice" terminology of the Rule does not resolve 8.4(g)'s vagueness. Added by amendment to the Pennsylvania Code of Judicial Conduct in 2017, Rule 2.3 prohibits judges from manifesting bias or prejudice or engaging in harassment "in the performance of judicial duties" and instructs judges to require the same of lawyers "in proceedings before the court." Comment 2 to Rule 2.3 illustrates what might constitute manifesting bias or prejudice: manifestations "include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics." Reading 8.4(g) in light of this comment raises more questions than it resolves. What stereotyping is "negative" and unacceptable and what stereotyping is positive and acceptable? *See Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1184 (6th Cir. 1995) (finding policy unconstitutionally vague where it turned on the "subjective reference" whether speech was "negative" or "offensive"). What references to personal characteristics are "irrelevant?" *Cf. Gentile* 501 U.S. at 1048–49 ("The right to explain the 'general' nature of the defense without 'elaboration' provides insufficient guidance because 'general' and 'elaboration' are both classic terms of degree."). "Slurs" may seem easy enough to understand, but perhaps not anymore. *See* Aldous J. Pennyfarthing, *Pete Buttigieg Slaps Back at Amy Coney Barrett's Not-so-subtle Homophobic Slur*, DAILY KOS  (Oct. 13, 2020, 5:20 PM), https://www.dailykos.com/stories/2020/10/13/1986241/-Pete-Buttigieg-slaps-back-at-Amy-Coney-Barrett-s-not-so-subtle-homophobic-slur (characterizing Judge Barrett's use of the term "sexual preference" at her confirmation hearing as a homophobic slur). The unbound list of examples provided in Comment 2 to Rule 2.3 does not provide clear notice of what is prohibited nor does it cabin the potential for arbitrary and discriminatory enforcement of 8.4(g).

Comment 2's most concrete example only reinforces Greenberg's belief that good faith academic commentary—such as "suggestions of connections between race, ethnicity, or nationality and crime"—could be captured within the scope of the Rule. *See* Complaint ¶¶ 73–

74. Rule 2.3 of the Code of Judicial Conduct thus demonstrates the Rule's overbreadth. It also underscores the viewpoint discrimination inherent in the Rule. Singling out "negative" stereotyping or "demeaning" nicknames is classic viewpoint discrimination. *E.g. Matal*, 137 S. Ct. at 1766 (Kennedy, J., concurring). As is deciding that certain academic views are taboo. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 834–37 (1995).  Truth is discovered "out of a multitude of tongues, rather than through any kind of authoritative selection." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967) (internal quotation and alteration omitted). Governments may not shutter the marketplace of ideas nor may they prescribe which ideas may be exchanged. To the extent that Comment 2 to Rule 2.3 clarifies some applications of 8.4(g), it only confirms that 8.4(g) sweeps too broadly and infringes attorneys' free speech rights.

### B.      Rule 8.4(g)'s application of "in the practice of law" is vague.

The Rule's vagueness does not stop there. Under the Rule, manifestations of bias or prejudice are sanctionable whenever they are made "in the practice of law." Usually, "practice of law" means lawyers doing "the work of a lawyer," encompassing "a broad range of services such as conducting cases in court, preparing papers necessary to bring about various transactions from conveying land to effecting corporate mergers, preparing legal opinions on various points of law, drafting wills and other estate-planning documents, and advising clients on legal questions." *Practice of Law*, Black's Law Dictionary (10th ed. 2014). However, Rule 8.4(g) broadens that definition. "For the purposes of paragraph (g), conduct in the practice of law includes participation in activities that are required for a lawyer to practice law, including but not limited to continuing legal education seminars, bench bar conferences and bar association activities where legal education credits are offered." Rule 8.4(g), *cmt.* 3.

Again, the clarity of this definition suffers from the open-ended "including, but not limited to" language. In addition to CLE seminars, what other academic settings are included in the "practice of law?" Law school sponsored on-campus events? Debates sponsored by academic

organizations like the Federalist Society or the American Constitution Society? Discussion in a law school classroom? After all, going to law school is a prerequisite to taking the bar exam and practicing law in Pennsylvania. In addition to bench bar conferences, what other social settings are covered? Legal organization fundraisers? An American Inn of Court gathering? A law school alumni reunion? A firm's golf tournament?

Nor does the Rule even attempt to clarify which professional activities at the margins of the practice of law are covered. Does discussing or providing print, social media, or other public commentary on a pending case or legal decision fall within the ambit of the Rule? *See* Indiana Supreme Court Disciplinary Commission, Advisory Opinion #1-20: Third Party Comments or Tags on a Lawyer's Social Media (Jul. 2020), *available at* https://www.in.gov/judiciary/discipline/files/dc-opn-1-20.pdf ("An attorney who responds to or 'likes' a third party's comment that contains prohibited content could be deemed to have adopted the third-party comment. Such action could subject the attorney to a rule violation."). How about offering legal or policy opinions before a public meeting of a state or local, executive or legislative, committee? How about attending a legal recruitment fair? Under Pennsylvania law, "what constitutes the practice of law" "is not capable of a comprehensive definition." *Harkness v. Unemployment Comp. Bd. of Review*, 920 A.2d 162, 166 (Pa. 2007). While fuzziness may be acceptable when regulating conduct, it is not when directly regulating speech or "words" as the Rule does.[6]

~~~                          ~~~                          ~~~

As currently written, the language of the Rule is not capable of reasoned, consistent and neutral application. Its failure to provide to clear standards will chill speech by Pennsylvania

---

[6] By contrast, Pa. Code of Jud. Cond. R. 2.3 operates on surer footing. That rule operates whenever judges act "in the performance of judicial duties" or attorneys act "in proceedings before the court."

attorneys on matters of public and private concern. For that reason, it violates the Fourteenth Amendment and should be preliminarily enjoined as void for vagueness.

### III.    Greenberg will suffer irreparable harm if the Defendants are not enjoined from enforcing Rule 8.4(g).

"When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary." 11A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. Apr. 2020 update). The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *K.A. v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976)). "[A]ny First Amendment infringement that occurs with each passing day is irreparable." *Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975).

Here, the Rule is scheduled to go into effect on December 8, 2020. Complaint ¶ 41.[7] If the Rule is not enjoined, Greenberg will be chilled in the exercise of his First Amendment rights at CLE presentations and other speaking events. Complaint ¶ 60. Even if the Defendants wield their powers responsibly, Greenberg and other attorney speakers will be deterred by the vague and overbroad standards under the Rule and the fact that any member of the public can—without personal consequence or accountability—register a disciplinary complaint against them. The First Amendment requires clear and definite rules so that attorneys' free speech rights are not left to the mercy of public whims and vicissitudes.

---

[7] Because the summary judgment process would overtake this relatively short timetable, this preliminary injunction motion is necessary to prevent the constitutional harm that will occur beginning on the effective date. *See generally* 11A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2948.1 ("If a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief.").

Because Greenberg has above "shown a likelihood of success on the merits of [his First Amendment] claim," he has "necessarily shown that irreparable harm would result absent an injunction." *Miller v. Mitchell*, 598 F.3d 139, 147 n.8 (3d Cir. 2010).[8]

## IV.   The balance of equities and public interest also support granting preliminary relief.

The remaining two factors to be considered—the public interest and whether other interested persons would be benefited or harmed by an injunction—also weigh in favor of granting relief. Fundamentally, "the enforcement of an unconstitutional law vindicates no public interest." *K.A.*, 710 F.3d at 114 (citing *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003)). Because the Rule deters not only Greenberg's speech, but that of all Pennsylvania attorneys, "the balance of equities and the public interest thus tip sharply in favor of enjoining the [Rule]." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Lawyers must remain "unintimidated—free to think, speak, and act as members of an Independent Bar." *Konigsberg*, 353 U.S. at 273.

The Commonwealth has other existing tools at its disposal to combat invidious discrimination or harassment conducted by members of the Bar. In addition to federal and state laws against discrimination in employment and in public accommodations, the Commonwealth proscribes the offense of criminal harassment. 18 Pa. Cons. Stat. § 2709. Even more closely related, as discussed above, Pennsylvania's Code of Judicial Conduct addresses this concern by tasking judges with "requir[ing] lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment…" Rule 2.3(C). So too does the

---

[8] A Fed. R. Civ. P. 65(c) bond is not required here because this is a public-interest case seeking only declaratory and injunctive relief and there is no risk of monetary loss to the Defendants. *See Zambelli Fireworks Mfg. Co. v. Wood,* 592 F.3d 412, 426 (3d Cir. 2010) (no bond required "where the nature of the action necessarily precludes any monetary harm to the defendant"); *ACLU v. Reno*, 929 F. Supp 824, 884 (E.D. Pa. 1996) (three-judge court) (waiving bond requirement in First Amendment challenge; citing *Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir. 1991)).

Commonwealth's Code of Civility, which exhorts attorneys to, among other things, "refrain from acting upon or manifesting racial, gender or other bias or prejudice toward any participant in the legal process." 204 Pa. Code § 99.3(7). As for speech outside of the courtroom or a legal proceeding, the best "antidote usually lies in more speech and less government intrusion." *Bank of Hope v. Chon*, 938 F.3d 389, 397 (3d Cir. 2019) (citing *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 498 (1996)).

Given the available remedies and the First Amendment implications, it should not be surprising that most other states considering model rule 8.4(g) have declined to adopt it. Jack Park, *ABA Model Rule 8.4(g): An Exercise in Coercing Virtue?*, 22 CHAP. L. REV. 267 (2019) (examining why, as of publication, eight states had rejected the Model Rule and only one had adopted it). Historically, broad First Amendment rights have inured to the benefit of minority voices, and have allowed civil rights movements of all stripes to flourish and achieve great accomplishments. When governments seize the power to prohibit speech that they consider offensive, civil rights supporters lose an indispensable tool to effect change and it is often minority voices that pay the price. Neither the balance of equities nor the public interest is served by enforcing a rule that curtails First Amendment rights.

The freedom to express countercultural views has been the engine that has driven our advancement toward a more culturally aware, tolerant and open society. For example, less than a half-century ago, the prevailing opinion of the medical community (as reflected in the Diagnostic and Statistical Manual of Mental Disorders) considered homosexuality to be a disease. Some time before that, racial segregationist and anti-miscegenationist views held sway in many states in our country. Fortunately, the First Amendment prevented states from cementing these once-dominant views through suppressing private speech. *E.g. Nat'l Gay Task Force v. Bd. of Educ.*, 729 F.2d 1270, 1274 (10th Cir. 1984), *aff'd by equally divided court Bd. of Educ. v. Nat'l Gay Task Force*, 470 U.S. 903 (1985) (invalidating state statute that forbid teachers from "advocating, soliciting, imposing, encouraging or promoting public or private homosexual activity…"); *Gay Lib v. Univ. of Missouri*, 558 F.2d 848, 854 (8th Cir. 1977), *cert. den'd sub.*

*nom Ratchford v. Gay Lib.*, 434 U.S. 1080 (1978) (discrediting the expert opinion of two psychiatrists and concluding that a state university violated the First Amendment by denying recognition to student organization that wished to provide a forum for discussion about homosexuality); *NAACP v. Button*, 371 U.S. 415 (1963) (striking down Virginia's effort to resist desegregation by extending its barratry statute to outlaw NAACP litigation funding). Had governments been permitted to squelch dissenting speech, it is far from clear that society would have made the pluralistic development that it has. "[F]or history shows that speech is suppressed when either the speaker or the message is critical of those who enforce the law." *Gentile*, 501 U.S. at 1051.

Where, as here, the rule is facially unconstitutional, the proper remedy is an injunction prohibiting the defendants from enforcing it. *E.g. NAACP v. City of Philadelphia*, 834 F.3d 435, 440 (3d Cir. 2016) (affirming "an injunction preventing the City from enforcing the ban as written"); *DeJohn v. Temple Univ.*, 537 F.3d 301, 306 (3d Cir. 2008) (affirming an injunction against "reimplementing or enforcing the sexual harassment policy that existed before the changes implemented on January 15, 2007"); *Americans for Prosperity v. Grewal*, 2019 WL 4855853, 2019 U.S. Dist. LEXIS 170793, *63 (D.N.J. Oct. 2, 2019) (granting injunction against enforcement in response to a facial challenge); *ACLU v. Reno*, 929 F. Supp. 824, 883 (E.D. Pa. 1996), *aff'd* 521 U.S. 844 (1997) (same).

## CONCLUSION

For the foregoing reasons, the Court should grant Greenberg's motion for a preliminary injunction.

Dated: October 16, 2020                Respectfully submitted,

                                       /s/ Adam E. Schulman
                                       Adam E. Schulman
                                       HAMILTON LINCOLN LAW INSTITUTE
                                       1629 K Street NW, Suite 300
                                       Washington, DC 20006
                                       adam.schulman@hlli.org
                                       (610) 457-0856

                                       *Attorney for Plaintiff Zachary Greenberg*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case.


DATED: October 16, 2020


*(s) Adam Schulman*
Adam Schulman
