## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZACHARY GREENBERG | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 2:20-CV-3822 |
| v. | : | |
| | : | |
| JAMES C. HAGGERTY, in his | : | |
| official capacity as Board Chair of the | : | Hon. Chad F. Kenney |
| Disciplinary Board of the Supreme | : | |
| Court of Pennsylvania, et al. | : | |
| | : | |
| *Defendants* | : | |

### <u>Notice of Appeal</u>

Defendants appeal to the United States Court of Appeals for the Third Circuit from the District Court's December 7, 2020, Order (Doc. 31)(filed on Dec. 8, 2020) and accompanying Memorandum (Doc. 29) that granted Plaintiff's Motion for Preliminary Injunction (Doc. 16.) Copies of the District Court's December 7, 2020, Order and Memorandum are attached.

Respectfully Submitted,

<u>s/Michael Daley</u>
MICHAEL DALEY, ESQUIRE
Attorney I.D. No. PA 77212
MEGAN L. DAVIS, ESQUIRE
Attorney I.D. No. PA 321341
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486
***Counsel for Defendants***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZACHARY GREENBERG,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 20-3822** |
| | : | |
| **JAMES C. HAGGERTY,** *in his official* | : | |
| *capacity as Board Chair of The* | : | |
| *Disciplinary Board of the Supreme* | : | |
| *Court of Pennsylvania,* **et al.,** | : | |
| *Defendants.* | : | |

## <u>ORDER</u>

**AND NOW**, this 7th day of **December 2020**, upon consideration of

Plaintiff's Motion for Preliminary Injunction (ECF No. 16), Defendants' response

thereto (ECF No. 24), the parties' Stipulated List of Facts for Purposes of

Preliminary Injunction Motion (ECF No. 21), and the oral argument held on

November 13, 2020 (ECF No. 26), it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Preliminary Injunction (ECF No. 16) is **GRANTED**

   for the reasons stated in the accompanying Memorandum Opinion;

2. Defendants are **PRELIMINARILY ENJOINED** from enforcing

   Pennsylvania Rule of Professional Conduct 8.4(g);

3. This preliminary injunction is immediately effective upon the issuance of

   this Order;

1

4. Plaintiff shall not be required to post a bond pursuant to Federal Rule of Civil Procedure 65(c), as both parties agree no bond is necessary and the circumstances of this case represent an instance warranting an exception to the bond requirement of Rule 65(c). *See* ECF No. 21 at ¶ 50 ("The Defendants bear no risk of financial loss if they are wrongfully enjoined in this case.")

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZACHARY GREENBERG,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 20-3822** |
| | : | |
| **JAMES C. HAGGERTY,** *in his official* | : | |
| *capacity as Board Chair of The* | : | |
| *Disciplinary Board of the Supreme* | : | |
| *Court of Pennsylvania,* **et al.,** | : | |
| *Defendants.* | : | |

## <u>MEMORANDUM</u>

This case concerns the constitutionality of the amendments to Pennsylvania Rule of Professional Conduct 8.4, which were approved by the Supreme Court of Pennsylvania[1] and are set to take effect on December 8, 2020.  The amendments added paragraph (g) to Rule 8.4 along with two new comments, (3) and (4).  Plaintiff, Zachary Greenberg, Esquire, a Pennsylvania attorney who gives presentations on a variety of controversial legal issues, brings this pre-enforcement challenge alleging that these amendments violate the First Amendment because they are unconstitutionally vague, overbroad, and consist of viewpoint-based and content-based discrimination.

---

[1] Justice Mundy dissented.

Before the Court are Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 15) and Plaintiff's Motion for Preliminary Injunction (ECF No. 16).

## A.    BACKGROUND

Plaintiff Zachary Greenberg graduated from law school in 2016 and was admitted to the Pennsylvania Bar in May 2019.  ECF No. 1 at ¶ 10, 11; ECF No. 21 at ¶¶ 2-4.[2]  Plaintiff currently works as a Program Officer at the Foundation for Individual Rights in Education.  ECF No. 1 at ¶ 13; ECF No. 21 at ¶ 6.  In this position, Plaintiff speaks and writes on a number of topics, including freedom of speech, freedom of association, due process, legal equality, and religious liberty.  ECF No. 1 at ¶ 14; ECF No. 21 at ¶ 7.  Plaintiff is also a member of the First Amendment Lawyers Association, which regularly conducts continuing legal education ("CLE") events for its members.  ECF No. 1 at ¶ 15; ECF No. 21 at ¶¶ 8-9.  As a part of his association with the Foundation for Individual Rights in Education and the First Amendment Lawyers Association, Plaintiff speaks at a number of CLE and non-CLE events on a variety of controversial issues.  ECF No. 1 at ¶ 16-19; ECF No. 21 at ¶ 10. Specifically, Plaintiff has written and spoken against banning hate speech on university campuses and university regulation of

---

[2] The facts included here were alleged in the Complaint (ECF No. 1) and also stipulated in the Stipulated List of Facts for Purposes of Preliminary Injunction Motion (ECF No. 21).  Although the Court considered all allegations in the Complaint for purposes of Defendants' Motion to Dismiss and all stipulated facts for purposes of Plaintiff's Motion for Preliminary Injunction, the Court found these facts pertinent to its analysis and conclusion.

hateful online expression as protected by the First Amendment.  ECF No. 1 at ¶¶ 19-20; ECF No. 21 at ¶¶ 14-15.

In 2016, the Disciplinary Board of the Supreme Court of Pennsylvania considered adopting a version of the American Bar Association Model Rule of Professional Conduct 8.4(g) in Pennsylvania. ECF No. 1 at ¶¶ 38-39; ECF No. 21 at ¶ 56.  After an iterative process of notice and comment between December 2016 and June 2020, the Supreme Court of Pennsylvania approved the recommendation of the Board[3] and ordered that Pennsylvania Rule of Professional Conduct ("Pa.R.P.C.") 8.4 be amended to include the new Rule 8.4(g) (the "Rule") along with two new comments, (3) and (4), (together, the "Amendments").  ECF No. 1 at ¶ 40; ECF No. 21 at ¶ 61.

The Amendments state:

> It is professional misconduct for a lawyer to:
> * * *
> (g) in the practice of law, by words or conduct, knowingly manifest bias or prejudice, or engage in harassment or discrimination, as those terms are defined in applicable federal, state or local statutes or ordinances, including but not limited to bias, prejudice, harassment or discrimination based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude advice or advocacy consistent with these Rules.

---

[3] Justice Mundy dissented.  ECF No. 1 at ¶ 40.

Comment:

* * *

[3] For the purposes of paragraph (g), conduct in the practice of law includes participation in activities that are required for a lawyer to practice law, including but not limited to continuing legal education seminars, bench bar conferences and bar association activities where legal education credits are offered.

[4] The substantive law of antidiscrimination and anti-harassment statutes and case law guide application of paragraph (g) and clarify the scope of the prohibited conduct.

ECF No. 1 at ¶ 40 (quoting Pa.R.P.C. 8.4); ECF No. 21 at ¶¶ 62-64 (quoting Pa.R.P.C. 8.4).

The Amendments take effect on December 8, 2020. ECF No. 1 at ¶ 41; ECF No. 21 at ¶ 61.

In terms of enforcement, the Office of Disciplinary Counsel ("ODC") is charged with investigating complaints against Pennsylvania-licensed attorneys for violation of the Pennsylvania Rules of Professional Conduct and, if necessary, charging and prosecuting attorneys under the Pennsylvania Rules of Disciplinary Enforcement.  ECF No. 1 at ¶ 45; ECF No. 21 at ¶ 32.  First, a complaint is submitted to the ODC alleging an attorney violated the Pennsylvania Rules of Professional Conduct.  ECF No. 1 at ¶¶ 46-47; ECF No. 21 at ¶ 36.  The ODC then conducts an investigation into the complaint and decides whether to issue a DB-7 letter.  ECF No. 1 at ¶¶ 51-52; ECF No. 21 at ¶¶ 36-38.  If the ODC issues a DB-7

letter, the attorney has thirty days to respond to that letter. *Id*. If, after

investigation and a DB-7 letter response, the ODC determines that a form of

discipline is appropriate, the ODC recommends either private discipline, public

reprimand, or the filing of a petition for discipline to the Board. ECF No. 1 at ¶¶

55-57; ECF No. 21 at ¶¶ 44-45. After further rounds of review and

recommendation, along with additional steps, the case may proceed to a hearing

before a hearing committee and de novo review by the Disciplinary Board and the

Supreme Court of Pennsylvania. ECF No. 1 at ¶¶ 54-59; ECF No. 21 at ¶¶ 46-50.[4]

   Plaintiff filed a complaint in this Court alleging the Amendments consist of

content-based and viewpoint-based discrimination and are overbroad in violation

of the First Amendment (Count 1) and the Amendments are unconstitutionally

vague in violation of the Fourteenth Amendment (Count 2). ECF No. 1.[5]

Defendants filed a Motion to Dismiss (ECF No. 15), and Plaintiff filed a response

in opposition (ECF No. 25). Plaintiff filed a Motion for Preliminary Injunction

(ECF No. 16), and Defendants filed a response in opposition (ECF No. 24). The

---

[4] The Complaint (ECF No. 1) and the Stipulated List of Facts for Purposes of Preliminary Injunction Motion (ECF No. 21) contain different information regarding the process for a disciplinary action, but the discrepant facts are irrelevant to the Court's analysis of both Defendants' Motion to Dismiss and Plaintiff's Motion for Preliminary Injunction.

[5] All Defendants are sued in their official capacities only. ECF No. 1 at 3. "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). In this case, Defendants are members of either the Disciplinary Board of the Supreme Court of Pennsylvania or the Office of Disciplinary Counsel. ECF No. 1 at 3.

Court held oral argument on November 13, 2020, addressing both Defendants'

Motion to Dismiss and Plaintiff's Motion for Preliminary Injunction.  ECF No. 26.

## B.    STANDARD OF REVIEW

Before the Court are Defendants' Motion to Dismiss the Complaint (ECF

No. 15) and Plaintiff's Motion for Preliminary Injunction (ECF No. 16).

### I.   *Standard of Review for Motion to Dismiss*

When reviewing a motion to dismiss, the Court "accept[s] as true all

allegations in plaintiff's complaint as well as all reasonable inferences that can be

drawn from them, and [the court] construes them in a light most favorable to the

non-movant."  *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018)

(quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

*Twombly*, 550 U.S. at 557)).  "The plausibility determination is 'a context-specific

task that requires the reviewing court to draw on its judicial experience and

common sense.'"  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Finally, courts reviewing the sufficiency of a complaint must engage in a three-step process.  First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'"  *Id.* at 787 (alterations in original) (quoting *Iqbal*, 556 U.S. at 675).  "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Third, '"[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 679).

## II.  *Standard of Review for Preliminary Injunction*

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  "Awarding preliminary relief, therefore, is only appropriate 'upon a clear showing that the plaintiff is entitled to such relief.'"  *Id.* (quoting *Winter*, 555 U.S. at 22).

In order to "obtain a preliminary injunction the moving party must show as a prerequisite (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017) (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)) (alteration in original).

The Third Circuit has held that the first two factors act as "gateway factors," and that a "court must first determine whether the movant has met these two gateway factors before considering the remaining two factors—balance of harms, and public interest." *Fulton v. City of Philadelphia*, 320 F. Supp. 3d 661, 675 (E.D. Pa. 2018), *aff'd*, 922 F.3d 140 (3d Cir. 2019) (citing *Reilly*, 858 F.3d at 180). However, "[b]ecause this action involves the alleged suppression of speech in violation of the First Amendment, we focus our attention on the first factor, i.e., whether [Plaintiff] is likely to succeed on the merits of his constitutional claim." *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")).

## C.   DISCUSSION

### *I. Standing*

Defendants move to dismiss the Complaint contending that Plaintiff lacks standing to bring this pre-enforcement challenge to the Amendments.  ECF No. 15 at 10-16.

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) [hereinafter *SBA List*] (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id*. at 158 (quoting *Lujan*, 504 U.S. at 560) (internal citations omitted).

"An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'"  *Id*. (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 437 (2014)) (internal quotation marks omitted).  "The party invoking federal jurisdiction bears the burden of establishing standing."  *Id*. (quoting *Clapper*, 568 U.S. at 411) (internal quotation marks omitted).  "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the

manner and degree of evidence required at the successive stages of the litigation." *Id.* (quoting *Lujan*, 504 U.S. at 561) (alteration in original).

Here, the Court must determine if "the threatened enforcement of" the Amendments "creates an Article III injury." *Id.* "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Id.* (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)) (additional citations omitted). The Supreme Court has "permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent." *Id.* "Specifically, [the Supreme Court] ha[s] held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Many circuit courts have found a plaintiff's allegation that the law has or will have a chilling effect on the plaintiff's speech is sufficient to satisfy the injury-in-fact requirement. The Third Circuit held that "an allegation that certain conduct has (or will have) a chilling effect on one's speech must claim a 'specific present objective harm or a threat of specific future harm.'" *Sherwin-Williams Co. v. Cty. of Delaware, Pennsylvania*, 968 F.3d 264, 269–70 (3d Cir. 2020) (quoting *Laird v.*

10

*Tatum*, 408 U.S. 1, 13–14 (1972)).  The Fifth Circuit "has repeatedly held, in the pre-enforcement context, that '[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.'"  *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-331 (5th Cir. Oct. 28, 2020), as revised (Oct. 30, 2020) (quoting *Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007)) (alteration in original) (additional citations omitted).  Similarly, the Ninth Circuit has held that "[a] chilling of First Amendment rights can constitute a cognizable injury, so long as the chilling effect is not 'based on a fear of future injury that itself [is] too speculative to confer standing.'"  *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020) (quoting *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015)) (additional citations omitted).  The Seventh Circuit has held "a plaintiff may show a chilling effect on his speech that is objectively reasonable, and that he self-censors as a result."  *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), as amended on denial of reh'g and reh'g en banc (Sept. 4, 2020) [hereinafter *Killeen*] (citations omitted).

In terms of Plaintiff's injury-in-fact, Plaintiff alleges in the Complaint that the "vast majority of topics" discussed at Plaintiff's speaking events "are considered biased, prejudiced, offensive, and hateful by some members of his

audience, and some members of society at large." ECF No. 1 at ¶ 61.[6] Plaintiff

further alleges that "during his presentations," Plaintiff's "discussion of hateful

speech protected by the First Amendment involves a detailed summation of the law

in this area, which includes a walkthrough of prominent, precedential First

Amendment cases addressing incendiary speech." *Id*. at ¶ 62.

Plaintiff alleges that "it would be nearly impossible to illustrate United

States First Amendment jurisprudence, such as by accurately citing and quoting

precedent First Amendment cases, without engaging in speech that at least some

members of his audience will perceive as biased, prejudiced, offensive, and

potentially hateful." *Id*. at  ¶ 63.  Plaintiff alleges that he believes that "every one

of his speaking engagements on First Amendment issues carries the risk that an

audience member will file a bar disciplinary complaint against him based on the

content of his presentation under rule 8.4(g)." *Id*. at ¶ 64.  Plaintiff alleges that he

fears "his writings and speeches could be misconstrued by readers and listeners,

and state officials within the Board or Office, as violating Rule 8.4(g)." *Id*. at ¶ 72.

Plaintiff alleges that he does not want to be subjected to disciplinary sanctions by

the ODC or the Disciplinary Board and that a disciplinary investigation would

harm his "professional reputation, available job opportunities, and speaking

---

[6] As the Court is determining whether to grant or deny Defendants' Motion to Dismiss the Complaint for lack of standing, the Court considers those allegations related to standing in the Complaint (ECF No. 1).

opportunities." *Id.* at ¶ 69.  Plaintiff alleges that he will be "forced to censor himself to steer clear of an ultimately unknown line so that his speech is not at risk of being incorrectly perceived as manifesting bias or prejudice." *Id.* at ¶ 75.

Defendants contend that Plaintiff lacks standing because Plaintiff's injury "depends on an 'indefinite risk of future harms inflicted by unknown third parties.'"  ECF No. 15 at 11-12 (quoting *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011)) (citing *Clapper*, 568 U.S. at 414 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.")).  Defendants contend that Plaintiff speculates an audience member will be offended by his presentation, then further speculates that that audience member will file a disciplinary complaint against Plaintiff, and then finally speculates that the ODC will not dismiss the complaint as frivolous but will require Plaintiff to file an official response and thereafter move to bring charges. *Id.* at 12.

Defendants further contend that Plaintiff lacks standing because there is no credible threat of enforcement. *Id.*  First, Defendants note that there is no history of past enforcement, as the Amendments have not yet gone into effect, and Plaintiff failed to point to any attorneys anywhere who were charged with violating a similar provision. *Id.* at 13.

Next, Defendants note that the ODC has not "issued warning letters, opinions, or provided any other reason to believe that Plaintiff would be charged with violating the Amendments based on the conduct he wants to engage in." *Id*. Finally, Defendants contend that even if the ODC received a complaint, it is speculative whether Plaintiff would ever be notified, and further speculative whether Plaintiff would be required to respond or be charged with a violation. *Id*. at 14. Defendants reiterate that even if an audience member is offended by Plaintiff's presentation and makes a complaint to the ODC, "complainants do not institute disciplinary charges against an attorney: only ODC has that power – and only after approval by a Disciplinary Board hearing committee member." *Id*.

Finally, Defendants contend that the conduct in which Plaintiff wants to engage, providing a detailed summation of the law regarding hateful speech, is not proscribed by the plain language of the Amendments. *Id*. at 15. As the Amendments require that the Plaintiff *knowingly* manifest bias or prejudice or *knowingly* engage in discrimination or harassment, Defendants contend that it "strains credulity" to believe that citing and quoting cases could lead to disciplinary action. *Id*. Furthermore, if Plaintiff intends to advocate that certain cases were wrongly decided or advance a different interpretation of the law, Defendants note that Rule 8.4(g) provides a safe harbor for advocacy and advice. *Id*.

14

Plaintiff responds that the Amendments arguably proscribe Plaintiff's alleged speech and that there is a credible threat of enforcement.  ECF No. 25 at 11.  Plaintiff also contends that the Amendments would create an "*objectively reasonable* chill to [Plaintiff's] protected speech."  *Id*. at 12.

First, Plaintiff contends that he plans to continue speaking at CLE events on controversial and polarizing issues such as hate speech, regulation on college campuses or online, due process requirements for students accused of sexual misconduct, and campaign finance restrictions on monetary political contributions.  *Id*.  Plaintiff notes that his presentations include summarizing and using language from a number of cases that has in the past offended, and will continue to offend, audience members.  *Id*. at 12.  Plaintiff notes that Rule 8.4(g) proscribes words or conduct manifesting bias or prejudice at CLE seminars and that the Complaint contains many examples of people labeling speakers as biased and prejudiced "for taking policy positions, for discussing statistics or academic theories, for espousing legal views, or mentioning certain epithets as part of an academic discussion."  *Id*.

Plaintiff further contends that although Rule 8.4(g) requires the manifestation of bias or prejudice to be "knowing[]," the ultimate decision of whether to file and bring a disciplinary action against Plaintiff "turn[s] on the reaction of the listener and judgment of those who administer the Rule."  *Id*. at 13.

Therefore, Plaintiff contends his lack of intention to manifest bias or prejudice does not undercut his standing to challenge Rule 8.4(g). *Id*.

Additionally, although Rule 8.4(g) "does not preclude advice or advocacy consistent with these Rules," Plaintiff contends that "'advocacy' in this context refers to the only sort of advocacy contemplated by rules of professional conduct: the zealous advocacy in support of a client's interest." *Id*. (citing Pa.R.P.C. Preamble ("As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system); Pa.R.P.C. 1.3, cmt. 1 ("A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf")). Therefore, Plaintiff contends that "[a]cademic advocacy" at CLE events is not covered within the advocacy or advice safe harbor. *Id*. at 14.

Furthermore, Plaintiff contends that his intention to mention epithets, slurs, and demeaning nicknames during his presentations and in the question-and-answer portion of his presentation is arguably proscribed under Rule 8.4(g). *Id*. Although Rule 8.4(g) does not provide examples of "manifestations of bias or prejudice," Plaintiff notes that the language of Rule 8.4(g) regarding "manifest[ing] bias or prejudice" was borrowed from Rule 2.3 of the Pennsylvania Code of Judicial Conduct. *Id*. Comment 2 to Rule 2.3 of the Pennsylvania Code of Judicial Conduct states that examples of manifestations of bias and prejudice "include but

are not limited to epithets; slurs; demeaning nicknames; negative stereotyping;

attempted humor based upon stereotypes; threatening, intimidating, or hostile acts;

suggestions of connections between race, ethnicity, or nationality and crime; and

irrelevant references to personal characteristics." *Id*. (quoting Pa.C.J.C. Rule 2.3,

cmt. 2).   Plaintiff reiterates that he alleged in the Complaint that he mentions slurs,

epithets, and demeaning nicknames during his presentations. *Id*.  Plaintiff

contends that he also exchanges ideas with audience members about the

importance of affording Due Process and First Amendment rights to people who

do and say "odious" things.  *Id*.  Plaintiff is concerned that people might construe

his theories as manifesting bias or prejudice against those protected classes, akin to

"suggestions of connections between race, ethnicity, or nationality and crime." *Id*.

(quoting Pa.C.J.C. Rule 2.3).

   Next, Plaintiff contends that there is a credible threat of enforcement. *Id*.

Although Defendants point out that no one has filed a disciplinary complaint

against Plaintiff based on his past presentations, Plaintiff retorts that such a

showing is not required for standing and Rule 8.4(g) is not yet in effect. *Id*.

"When dealing with pre-enforcement challenges to recently enacted (or, at least,

non-moribund) statutes that facially restrict expressive activity by the class to

which the plaintiff belongs, courts will assume a credible threat of prosecution in

the absence of compelling contrary evidence." *Id*. (quoting *ACLU v. Reno*, 31 F.

Supp. 2d 473, 479 (E.D. Pa. 1999), eventually rev'd on other grounds sub. nom. *Ashcroft v. ACLU*, 535 U.S. 564 (2002)).

Plaintiff further contends that no Defendants have "declare[d] or present[d] other evidence that they would find this type of 8.4(g) complaint to be frivolous, let alone disavow[ed] their authority to take any enforcement steps in response to such complaints." *Id.* at 18 (collecting cases). Even if Defendants were to submit such evidence, Plaintiff maintains that the Complaint contains numerous examples of individuals who have imputed bias and bigotry to speakers advancing legal views or mentioning incendiary words, which shows that a disciplinary complaint for this reason would not be considered "frivolous." *Id.*

The Court finds that Plaintiff has standing to bring this pre-enforcement challenge to the Amendments. First, the Court finds Plaintiff's allegation that his speech will be chilled by the Amendments shows a "threat of specific future harm." *Sherwin-Williams*, 968 F.3d at 269–70 (quoting *Laird*, 408 U.S. at 13–14); *see also Speech First*, 979 F.3d 319, 330-331. Plaintiff's alleged fear of a disciplinary complaint and investigation is objectively reasonable based on Plaintiff's allegation that the "vast majority of topics" discussed at Plaintiff's speaking events "are considered biased, prejudiced, offensive, and hateful by some members of his audience, and some members of society at large." ECF No. 1 at ¶ 61.

18

Furthermore, Plaintiff alleged specific examples of individuals filing disciplinary and Title IX complaints against speakers who were presenting on similar topics as those discussed by Plaintiff, which he alleges will "force[ him] to censor himself to steer clear of an ultimately unknown line so that his speech is not at risk of being incorrectly perceived as manifesting bias or prejudice." ECF No. 1 at ¶ 75. Therefore, in addition to showing that the "chilling effect on his speech . . . is objectively reasonable," Plaintiff has shown that he will "self-censor[] as a result." *Killeen*, 968 F.3d at 638.

The Court concludes that Plaintiff's alleged chilling effect constitutes an injury in fact that is concrete, particularized, and imminent. *SBA List*, 573 U.S. at 158. Plaintiff's allegations of future injury suffice because Plaintiff has shown that "the threatened injury is 'certainly impending,'" and that "there is a 'substantial risk' that the harm will occur.'" *Id*. (quoting *Clapper*, 568 U.S. at 437) (internal citations omitted).

Plaintiff has further shown that he has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *SBA List*, 573 U.S. at 157–58 (quoting *Babbitt*, 442 U.S. at 298). First, neither party challenges that the speech in which Plaintiff intends to engage is affected with a constitutional interest. *See generally* ECF No. 15; ECF No. 25 at 11.

19

Second, Plaintiff has also clearly shown a likelihood that the activity in which he intends to engage is "arguably proscribed" by the Amendments. *Speech First, Inc.*, 979 F.3d at 332. Plaintiff has alleged that he intends to mention epithets, slurs, and demeaning nicknames as part of his presentation on First Amendment and Due Process rights. ECF No. 1 at ¶¶ 62-63. Rule 8.4(g) explicitly states that it is attorney misconduct to, "by **words** or conduct, knowingly manifest bias or prejudice." Pa.R.P.C. 8.4(g) (emphasis added). Both parties agree that the language used in Rule 8.4(g) mirrors Pennsylvania Code of Judicial Conduct Rule 2.3, which provides, in Comment 2, that "manifestations of bias include . . . epithets; slurs; demeaning nicknames; negative stereotyping . . . ." Plaintiff has shown that by repeating slurs or epithets, or by engaging in discussion with his audience members about the constitutional rights of those who do and say offensive things, he will need to repeat slurs, epithets, and demeaning nicknames. This is arguably proscribed by Rule 8.4(g).

Defendants contend that because Rule 8.4(g) requires an attorney to "*knowingly* manifest bias or prejudice," it "strains credulity" to believe that citing and quoting cases could lead to disciplinary action. ECF No. 15 at 15 (emphasis added). However, since the Court has found that repeating slurs or epithets is arguably proscribed by the statute based on the plain language, whether Plaintiff "knowingly" repeated slurs or epithets is immaterial.

Defendants further contend that, "to the extent that Plaintiff intends to advocate that certain cases were wrongly decided or advanced a different interpretation of relevant law," Rule 8.4(g)'s "clear safe harbor for advocacy" would protect Plaintiff.  *Id*. at 16.  However, the "advice or advocacy" safe harbor was plainly intended to protect those giving advice or advocacy in the context of representing a client, and not in the context of Plaintiff's intended activity.  Therefore, Plaintiff has shown that his intended conduct is arguably proscribed by the Amendments.

Third, Plaintiff has shown that there exists a credible threat of prosecution.  Defendants' contention that Plaintiff's injury "depends on an 'indefinite risk of future harms inflicted by unknown third parties'" is not persuasive.  *Id*. at 11-12 (quoting *Ceridian*, 664 F.3d at 42) (additional citations omitted).  Plaintiff alleged specific examples of individuals filing disciplinary and Title IX complaints against speakers who were presenting on similar topics as those discussed by Plaintiff.  ECF No. 1 at ¶¶ 73, 74.  Not every complaint filed with the ODC results in a letter to the accused attorney, nor every letter to the accused attorney results in any formal sanction.  However, Plaintiff has demonstrated that there is a substantial risk that the Amendments will result in Plaintiff being subjected to a disciplinary complaint or investigation.

Ultimately, the Court is swayed by the chilling effect that the Amendments will have on Plaintiff, and other Pennsylvania attorneys, if they go into effect. Rule 8.4(g)'s language, "by words . . . manifest bias or prejudice," are a palpable presence in the Amendments and will hang over Pennsylvania attorneys like the sword of Damocles. This language will continuously threaten the speaker to self-censor and constantly mind what the speaker says and how the speaker says it or the full apparatus and resources of the Commonwealth may be engaged to come swooping in to conduct an investigation. Defendants dismiss these concerns with a paternal pat on the head and suggest that the genesis of the disciplinary process is benign and mostly dismissive. Defendants further argue that, under the language of Rule 8.4(g) targeting "words," even if a complaint develops past the initial disciplinary complaint stage, actual discipline will not occur given the conduct targeted, good intentions of the Rule and those trusted arbiters that will sit in judgment and apply it as such. But Defendants do not guarantee that, nor did they remove the language specifically targeting attorneys' "words." Defendants effectively ask Plaintiff to trust them not to regulate and discipline his offensive speech even though they have given themselves the authority to do so. So, despite asking Plaintiff to trust them, there remains the constant threat that the Rule will be engaged as the plain language of it says it will be engaged.

It can hardly be doubted there will be those offended by the speech, or the written materials accompanying the speech, that manifests bias or prejudice who will, quite reasonably, insist that the Disciplinary Board perform its sworn duty and apply Rule 8.4(g) in just the way the clear language of the Rule permits.  Even if the disciplinary process does not end in some form of discipline, the threat of a disruptive, intrusive, and expensive investigation and investigatory hearing into the Plaintiff's words, speeches, notes, written materials, videos, mannerisms, and practice of law would cause Plaintiff and any attorney to be fearful of what he or she says and how he or she will say it in any forum, private or public, that directly or tangentially touches upon the practice of law, including at speaking engagements given during CLEs, bench-bar conferences, or indeed at any of the social gatherings forming around these activities. The government, as a result, de facto regulates speech by threat, thereby chilling speech.  Defendants' attempt to sidestep a direct constitutional challenge by claiming no final discipline will ever be rendered under Rule 8.4(g) fails.  The clear threat to Plaintiff's First Amendment rights and the chilling effect that results is the harm that gives Plaintiff standing.  Defendant's Motion to Dismiss the Complaint for lack of standing is denied.

II.  *First Amendment Violation*

In their Motion to Dismiss, Defendants contend that Plaintiff's claim that the Amendments constitute either content-based or viewpoint-based discrimination fails to state a claim because the Amendments regulate conduct, not speech.  ECF No. 15 at 30.  Even if the Amendments regulate speech, Defendants contend, the Amendments are narrowly tailored to achieve Pennsylvania's compelling interest in regulating the practice of law and ensuring that the judicial system is free from discriminatory and harassing conduct.  *Id.*

Defendants further contend that the Amendments are not viewpoint-based since they were not enacted based on particular views but rather to prohibit discrimination and harassment.  *Id.* at 30 (citing *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 32 (2d Cir. 2018)).  Furthermore, Defendants note that the Amendments apply to all attorneys.  *Id.* (citing *Barr v. Lafon*, 538 F.3d 554, 572 (6th Cir. 2008)).

Finally, Defendants contend that the Supreme Court has held that states have a "compelling interest" in regulating professions, and that "broad power" is "especially great" in "regulating lawyers[.]"  *Id.* (quoting *In re Primus*, 436 U.S. 412, 422 (1978)) (additional citations omitted).  Defendants further contend that states have a substantial interest both in "protect[ing] the integrity and fairness of a State's judicial system," *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1031

24

(1991), and in preventing attorneys from engaging in conduct that "is universally regarded as deplorable and beneath common decency," *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) (internal citations omitted).  ECF No. 15 at 31.

Plaintiff, on the other hand, contends that Rule 8.4(g)'s prohibition on using words to "manifest bias or prejudice, or engage in harassment or discrimination" is unconstitutional viewpoint discrimination.  ECF No. 25 at 19.  Plaintiff contends that the Amendments allow for "tolerant, benign, and respectful speech" while disallowing "biased, prejudiced, discriminatory, critical, and derogatory speech." *Id*.  Plaintiff highlights *Matal v. Tam*, where the Supreme Court found that a federal statute prohibiting the registration of trademarks that may "disparage or bring into contempt or disrepute" any "persons, living or dead" was a viewpoint-based restriction.  *Id*. (citing *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017)).  The Court stated that this "law thus reflects the Government's disapproval of a subset of messages it finds offensive, the essence of viewpoint discrimination." *Matal*, 137 S. Ct. at 1750.

Plaintiff further disputes that Rule 8.4(g) regulates discriminatory and harassing *conduct* and not speech, since the plain language of Rule 8.4(g) restricts "words" in addition to "conduct" and "manifest[ing] bias or prejudice" in addition to "engag[ing] in harassment or discrimination."  ECF No. 25 at 20.  Plaintiff notes that Rule 8.4(g) mirrors Rule 2.3 of the Pennsylvania Judicial Code of

Conduct, which states that "[e]xamples of manifestations of bias and prejudice include . . . epithets; slurs; demeaning nicknames," and this further underscores that Rule 8.4(g) prohibits the expression of certain words alone, apart from any conduct. *Id.*

Plaintiff further disputes Defendants' claim that because 8.4(g) applies to all attorneys it cannot be viewpoint discrimination. *Id.* at 21. Plaintiff contends that this is not the test for viewpoint discrimination and that the Supreme Court rejected the same argument. *Id.* Plaintiff contends that if the Court finds that the Amendments consist of viewpoint bias, that "end[s] the matter." *Id.* (quoting *Iancu v. Brunetti*, 204 L. Ed. 2d 714 (2019)).

Plaintiff further contends that even though Rule 8.4(g) is a regulation of "professional speech," it is still unconstitutional viewpoint-based discrimination under the Supreme Court's ruling in *Nat'l Inst. of Family & Life Advocates v. Becerra*. *Id.* at 22 (citing *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2375 (2018) [hereinafter *NIFLA*]). Plaintiff contends that Rule 8.4(g) does not fit within either of the two areas that the Court in *NIFLA* recognized justified regulation of professional speech. *Id.* Plaintiff contends that Rule 8.4(g) is not a law that "require[s] professionals to disclose factual, noncontroversial information in their 'commercial speech,'" nor does it merely "regulate professional

26

conduct, . . . [that] incidentally involves speech." *Id*. (quoting *NIFLA*, 138 S. Ct. at 2372).

Plaintiff further contends that the Court in *Gentile* and *Sawyer* recognized that when an attorney's speech occurs as part of pending litigation or a client representation, it is "more censurable" because it can "obstruct the administration of justice." *Id*. at 23 (quoting *In re Sawyer*, 360 U.S. 622, 636 (1959)) (citing *Gentile*, 501 U.S. at 1074 ("[O]ur opinions… indicate that the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press.")). Rule 8.4(g), however, contains no similar limitation, as it applies to any words or conduct uttered "in the practice of law," which includes participating in events where CLE credits are issued. *Id*. (quoting Pa.R.P.C. 8.4(g)).

### 1. Attorney Speech and Professional Speech

The Court recognizes that Pennsylvania has an interest in licensing attorneys and the administration of justice. However, contrary to Defendants' contention, speech by an attorney or by a professional is only subject to greater regulation than speech by others in certain circumstances, none of which are present here. The Supreme Court in *Gentile v. State Bar of Nevada* found that, "in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has

27

is extremely circumscribed."  501 U.S. at 1071.  Furthermore, "[e]ven outside the courtroom . . . lawyers in pending cases [are] subject to ethical restrictions on speech to which an ordinary citizen would not be."  *Id.* (citing *In re Sawyer*, 360 U.S. 622 (1959)).  The Supreme Court has "expressly contemplated that the speech of *those participating before the courts* could be limited."  *Id.* at 1072.  Additionally, in the commercial context, the Supreme Court's "decisions dealing with a lawyer's right under the First Amendment to solicit business and advertise . . . have not suggested that lawyers are protected by the First Amendment to the same extent as those engaged in other business."  *Id.* at 1073 (collecting cases).

In contrast, Rule 8.4(g) does not limit its prohibition of "words . . . [that] manifest bias or prejudice" to the legal process, since it also prohibits these words or conduct "during activities that are required for a lawyer to practice law," including seminars or activities where legal education credits are offered. Pa.R.P.C. 8.4(g).  Rule 8.4(g) does not seek to limit attorneys' speech only when that attorney is in court, nor when that attorney has a pending case, nor even when that attorney seeks to solicit business and advertise.  Rule 8.4(g) much more broadly prohibits attorneys' speech.

This Court also finds that Rule 8.4(g) does not cover "professional speech" that is entitled to less protection.  The Supreme Court "has not recognized 'professional speech' as a separate category of speech."  *NIFLA*, 138 S. Ct. at 2371

28

(finding petitioners were likely to succeed on merits of claim that act requiring clinics that primarily serve pregnant women to provide certain notices violated the First Amendment). "Speech is not unprotected merely because it is uttered by 'professionals.'" *Id.* at 2371-2372.

However, the Supreme Court "has afforded less protection for professional speech in two circumstances." *Id.* at 2372. "First, [Supreme Court] precedents have applied more deferential review to some laws that require professionals to disclose factual, noncontroversial information in their 'commercial speech.'" *Id.* (collecting cases). "Second, under [Supreme Court] precedents, States may regulate professional conduct, even though that conduct incidentally involves speech." *Id.* (collecting cases).

Rule 8.4(g) does not fall into either of these categories. First, Rule 8.4(g) does not relate specifically to commercial speech, nor does it require that professionals "disclose factual, noncontroversial information." *Id.*

Second, Rule 8.4(g) does not regulate professional conduct that incidentally involves speech. The plain language of Rule 8.4(g) explicitly prohibits "words" that manifest bias or prejudice. Furthermore, a comment included in a May 2018 proposal of Rule 8.4(g) "explains and illustrates" that Rule 8.4(g) was intended to regulate speech. Pa.R.P.C., Preamble and Scope ("The Comment accompanying

29

each Rule explains and illustrates the meaning and purpose of the Rule.")  This comment stated, "[e]xamples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics."[7]  48 Pa.B. 2936.  This proposed comment reveals that the drafters of Rule 8.4(g) intended to explicitly restrict offensive words in prohibiting an attorney from "manifest[ing] bias or prejudice."

Although the final version of Rule 8.4(g) does not include this comment, the fatal language, "by words . . . manifest bias or prejudice," remains.  Removing this candid comment about the intent of the Rule does not also remove the intent of those words.  That this language, "by words . . . manifest bias or prejudice," remained in the final version of Rule 8.4(g) illustrates the Rule's broad and chilling implications.  If the drafters wished to reform the Rule, they could have easily removed the offending language from the Rule as well the proposed comment.  Removing the comment alone did not rid Rule 4.8(g) of its language specifically targeting speech.

---

[7] This exact language also appears in Comment 2 to Rule 2.3 of Pennsylvania Code of Judicial Conduct.  Pa.C.J.C. Rule 2.3.  Both parties agree Pennsylvania Code of Judicial Conduct Rule 2.3 mirrors Pennsylvania Rule of Professional Conduct Rule 8.4(g). *See* ECF No. 15 at 28; ECF No. 25 at 7.

Despite this, Defendants tell us to look away from the clearly drafted language of the Rule and focus rather on the conduct component. Plaintiff agrees that if we were looking at conduct, the government has a right to regulate conduct of its licensed attorneys. *See* ECF No. 25 at 21. Defendants try to deflect our attention away from the clear speech regulation in the Rule because they themselves had to know in drafting the Rule they were venturing into the narrowest of channels that permit government to regulate speech. They merge "words" into "conduct" by blithely arguing that the shoal that confronts us is a mere illusion to be ignored and is simply nothing but part of the deep, blue channel. Yet, when the reality of the shoal hits the ship, it will not be the government left ensnared and churning in the sand, it will be the individual attorney and the attorney's practice embedded in an inquisition regarding the manifestation of bias and prejudice, and an exploration of the attorney's character and previously expressed viewpoints, to determine if such manifestation was "knowing."

Defendants cite *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, to support their contention that Rule 8.4(g) is intended to prohibit "conduct carried out by words," and not speech. Transcript of Oral Argument at 25; ECF No. 15 at 17 (citing *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006)). In *Rumsfeld*, the Supreme Court held that speech was incidental to the challenged law's requirement that law schools afford equal access to military

31

recruiters. 547 U.S. at 62. The challenged law denied federal funding to an institution of higher education that prohibited the military from recruiting on its campus. *Id.* at 47. The plaintiffs brought suit, seeking to deny the military from recruiting on their campuses because of "disagreement with the Government's policy on homosexuals in the military," and arguing that the law violated law schools' freedom of speech. *Id.* at 51, 60. The Supreme Court held that the law did not regulate speech, nor did the expressive nature of the conduct regulated bring it under the First Amendment's protection. *Id.* at 65. The Court held, "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Id.* at 62 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)).

The Supreme Court's holding in *Rumsfeld* is inapplicable to the case before this Court. Whereas the challenged law in *Rumsfeld* required the plaintiffs to provide equal campus access to military recruiters, a law that clearly regulates conduct, the Amendments explicitly limit what Pennsylvania attorneys may say in the practice of law. Rule 8.4(g)'s prohibition against using "words" to "manifest bias or prejudice" does not regulate conduct "carried out by means of language." *Rumsfeld*, 547 U.S. at 62. It simply regulates speech. Even if the Rule was *intended* to prohibit "harassment and discrimination . . . carried out by words,"

Transcript of Oral Argument at 25, Rule 8.4(g) plainly prohibits "words . . . manifest[ing] bias or prejudice," which regulates a much broader category of speech than supposedly intended.

"Outside of the two contexts discussed above—disclosures under [attorney advertising] and professional conduct—[the Supreme] Court's precedents have long protected the First Amendment rights of professionals." *NIFLA*, 138 S. Ct. at 2374. "The dangers associated with content-based regulations of speech are also present in the context of professional speech." *Id*. "As with other kinds of speech, regulating the content of professionals' speech 'pose[s] the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information.'" *Id*. (quoting *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994)). "States cannot choose the protection that speech receives under the First Amendment [by imposing a licensing requirement], as that would give them a powerful tool to impose 'invidious discrimination of disfavored subjects.'" *Id*. (quoting *City of Cincinnati v. Discovery Network, Inc*., 507 U.S. 410, 423-424 (1993)) (additional citations omitted). Defendants may not impinge upon Pennsylvania attorneys' First Amendment rights simply because Rule 8.4(g) regulates speech by professionals.

Furthermore, in *In re Primus*, quoted by Defendants to establish that states have "broad power" to regulate attorneys, the Court ultimately concluded that the

state's application of the disciplinary rules violated the First and Fourteenth Amendments, showing the limits to that "broad" regulation power.  436 U.S. 412, 438 (1978).  In *In re Primus*, a lawyer informed a prospective client via letter that free legal assistance was available from a nonprofit organization with which this lawyer worked.  *Id*. at 414.  Based on this activity, the state disciplinary board charged the lawyer with soliciting a client in violation of the disciplinary rules and administered a private reprimand.  *Id*. at 421.  The state supreme court then adopted the board's findings and increased the sanction to a public reprimand.  *Id*. The Supreme Court found that the "State's special interest in regulating members whose profession it licenses, and who serve as officers of its courts, amply justifies the application of *narrowly drawn* rules to proscribe solicitation that in fact is misleading, overbearing, or involves other features of deception or improper influence."  *Id*. at 438 (emphasis added).  Even though the state had argued that the regulatory program was aimed at preventing undue influence "and other evils that are thought to inhere generally in solicitation by lawyers of prospective clients," the Court found that "that '[b]road prophylactic rules in the area of free expression are suspect,' and that '[p]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms.'"  *Id*. at 432 (quoting *Button*, 371 U.S., at 438).  "Because of the danger of censorship through selective enforcement of broad prohibitions, and '[b]ecause First Amendment freedoms need breathing

space to survive, government may regulate in [this] area only with narrow specificity.'" *Id*. at 432-433 (quoting *Button*, 371 U.S., at 433) (alteration in original).  This case does not, therefore, ultimately support Defendants' conclusion nor indicate that Defendants have broad power in this context to regulate attorneys' words.

Rule 8.4(g) does not regulate the specific types of attorney speech or professional speech that the Supreme Court has identified as warranting a deferential review.  The speech that Rule 8.4(g) regulates is entitled to the full protection of the First Amendment.

### 2.  Viewpoint-Based Discrimination

The Court finds that the Amendments, Rule 8.4(g) and Comments 3 and 4, are viewpoint-based discrimination in violation of the First Amendment.

"[L]aws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 193 (3d Cir. 2008) (quoting *Turner Broadcasting*, 512 U.S. at 643) (alteration in original).  Content-based restrictions "are subject to the 'most exacting scrutiny,' . . . because they 'pose the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information or manipulate the public

35

debate through coercion rather than persuasion.'" *Id.* (quoting *Turner Broadcasting*, 512 U.S. at 641-642).

Viewpoint discrimination is "[w]hen the government targets not subject matter, but particular views taken by speakers on a subject." *Id.* (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). "Viewpoint discrimination is thus an egregious form of content discrimination." *Id.* (quoting *Rosenberger*, 515 U.S. at 829). "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* (quoting *Rosenberger*, 515 U.S. at 829).

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). "[T]hat is viewpoint discrimination: Giving offense is a viewpoint." *Matal*, 137 S. Ct. at 1763. The Supreme Court has "said time and again that 'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.'" *Id.* (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)) (additional citations omitted).

In *Matal v. Tam*, the Supreme Court considered the constitutionality of "a provision of federal law prohibiting the registration of trademarks that may 'disparage . . . or bring . . . into contemp[t] or disrepute' any 'persons, living or dead.'" 137 S. Ct. at 1751.  The Court concluded that the provision violated the Free Speech Clause of the First Amendment because "[s]peech may not be banned on the ground that it expresses ideas that offend."  *Id*.  The Court noted that when the government creates a limited public forum for private speech "some content- and speaker-based restrictions may be allowed," but, "even in such cases . . . 'viewpoint discrimination' is forbidden."  *Id*. (citing *Rosenberger*, 515 U.S. at 830- 831).  The Court clarified that the term "viewpoint" discrimination is to be used in a broad sense and, even if the provision at issue "evenhandedly prohibits disparagement of all group," it is still viewpoint discrimination because "[g]iving offense is a viewpoint."  *Id*. at 1763.

In a concurring opinion, Justice Kennedy stated that "[t]he First Amendment guards against laws 'targeted at specific subject matter,' [a] form of speech suppression known as content based discrimination."  *Id*. at 1765-1766 (Kennedy, J., concurring) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015)).  "This category includes a subtype of laws that go further, aimed at the suppression of 'particular views . . .  on a subject.'"  *Id*. (Kennedy, J., concurring) (quoting *Rosenberger*, 515 U.S. at 829) (alteration in original).  "A law found to

37

discriminate based on viewpoint is an 'egregious form of content discrimination,' which is 'presumptively unconstitutional.'" *Id*. (Kennedy, J., concurring) (quoting *Rosenberger*, 515 U.S. at 829–830).

"At its most basic, the test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Id*. at 1766 (Kennedy, J., concurring) (citation omitted).  Justice Kennedy further stated that even though the provision at issue applied in "equal measure to any trademark that demeans or offends," it was not viewpoint neutral: "To prohibit all sides from criticizing their opponents makes a law more viewpoint based, not less so." *Id*. at 1766 (Kennedy, J., concurring) (citation omitted).

Similarly, Rule 8.4(g) states that it is professional misconduct for a lawyer, "in the practice of law, by **words** or conduct, to knowingly **manifest bias** or **prejudice** . . . . " Pa.R.P.C. 8.4(g) (emphasis added).  While Rule 8.4(g) restricts Pennsylvania attorneys' ability to express bias or prejudice "based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status," it allows Pennsylvania attorneys to express tolerance or respect based on these same statuses. *Id*.  Defendants have "singled out a subset of message," those words that manifest bias

or prejudice, "for disfavor based on the views expressed."  *Matal*, 137 S. Ct. at 1766 (Kennedy, J., concurring) (citation omitted).

As in *Matal*, Defendants seek to remove certain ideas or perspectives from the broader debate by prohibiting *words* that manifest bias or prejudice.  The American Civil Liberties Union defines censorship as "the suppression of words, images, or ideas that are 'offensive,' [which] happens whenever some people succeed in imposing their personal political or moral values on others."  *What is censorship?*, ACLU, https://www.aclu.org/other/what-censorship (last visited December 7, 2020).  This is exactly what Defendants attempt to do with Rule 8.4(g).  Although Defendants contend that Rule 8.4(g) "was enacted to address discrimination, equal access to justice, [and] the fairness of the judicial system," the plain language of Rule 8.4(g) does not reflect this intention.  Transcript of Oral Argument at 3.  Rule 8.4(g) explicitly prohibits words manifesting bias or prejudice, i.e., "offensive" words.  In short, Defendants seek to impose their personal moral values on others by censoring all opposing viewpoints.

"A law found to discriminate based on viewpoint is an 'egregious form of content discrimination,' which is 'presumptively unconstitutional.'"  *Id*. at 1766 (Kennedy, J., concurring) (quoting *Rosenberger*, 515 U.S. at 829-830).  Therefore,

"[t]he Court's finding of viewpoint bias end[s] the matter." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019).[8]

The irony cannot be missed that attorneys, those who are most educated and encouraged to engage in dialogues about our freedoms, are the very ones here who are forced to limit their words to those that do not "manifest bias or prejudice." Pa.R.P.C. 8.4(g). This Rule represents the government restricting speech outside of the courtroom, outside of the context of a pending case, and even outside the much broader playing field of "administration of justice." Even if Plaintiff makes a good faith attempt to restrict and self-censor, the Rule leaves Plaintiff with no guidance as to what is in bounds, and what is out, other than to advise Plaintiff to scour every nook and cranny of each ordinance, rule, and law in the Nation. Furthermore, the influence and insight of the May 2018 comments on this self-

---

[8] Even if the Court were to weigh the competing interests involved, Rule 8.4(g) would not pass either strict scrutiny or intermediate scrutiny. "To survive strict scrutiny analysis, a statute must: (1) serve a compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest." *ACLU v. Mukasey*, 534 F.3d 181, 190 (3d Cir. 2008). The compelling interest provided by Defendants is "ensuring that those who engage in the practice of law do not knowingly discriminate or harass someone so that the legal profession 'functions for all participants,' ensures justice and fairness, and maintains the public's confidence in the judicial system." ECF No. 15 at 22-23. However, as addressed at length in this Memorandum, by also prohibiting "words . . . [that] manifest bias or prejudice," the Amendments are neither narrowly tailored nor the least restrictive means of advancing that interest. Pa.R.P.C. 8.4(g). In the same way, the Amendments would not survive intermediate scrutiny as they are not "narrowly tailored to serve a significant governmental interest." *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335, 2356 (2020) (Sotomayor, J., concurring) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

censorship will loom large as guidance as to the intent of the Rule.  *See supra* p. 29.

There is no doubt that the government is acting with beneficent intentions. However, in doing so, the government has created a rule that promotes a government-favored, viewpoint monologue and creates a pathway for its handpicked arbiters to determine, without any concrete standards, who and what offends.  This leaves the door wide open for them to determine what is bias and prejudice based on whether the viewpoint expressed is socially and politically acceptable and within the bounds of permissible cultural parlance.  Yet the government cannot set its standard by legislating diplomatic speech because although it embarks upon a friendly, favorable tide, this tide sweeps us all along with the admonished, minority viewpoint into the massive currents of suppression and repression.  Our limited constitutional Government was designed to protect the individual's right to speak freely, including those individuals expressing words or ideas we abhor.

Therefore, the Court holds that the Amendments, Rule 8.4(g) and Comments 3 and 4, consist of unconstitutional viewpoint discrimination in violation of the First Amendment.  Because the Court finds that Plaintiff has standing and that the

Amendments constitute unconstitutional viewpoint discrimination, Defendants'

Motion to Dismiss is denied.[9]

As for Plaintiff's Motion for a Preliminary Injunction, for the foregoing

reasons, the Court finds Plaintiff has shown that the likelihood of success on the

merits of his constitutional claim is "significantly better than negligible." *Reilly*,

858 F.3d at 179.

Second, "[t]he loss of First Amendment freedoms, for even minimal periods

of time, unquestionably constitutes irreparable injury." *Stilp*, 613 F.3d at 409

(citing *Elrod*, 427 U.S. at 373).  Plaintiff alleged that he will be chilled in the

exercise of his First Amendment rights at CLE presentations and other speaking

events if the Amendments go into effect as planned on December 8, 2020.  ECF

No. 16-1 at 28 (citing ECF No. 1 at ¶ 60).  As the Court has found the

Amendments constitute unconstitutional viewpoint discrimination and Plaintiff has

alleged a chilling effect that is objectively reasonable in light of the plain language

in Rule 8.4(g), Plaintiff has shown he is more likely than not to suffer irreparable

harm in the absence of preliminary relief.  Plaintiff has thus met the threshold for

---

[9] The Court also denies Defendant's Motion to Dismiss as to Count II, alleging unconstitutional vagueness.

the "first two 'most critical' factors" in determining whether to grant a preliminary injunction.  *Reilly*, 858 F.3d at 179.

As the Court has found that the Amendments violate the First Amendment, the last two factors, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest, also favor preliminary relief.  On balance, and because Plaintiff has satisfied the first two factors, the factors favor granting the preliminary injunction.[10]  Therefore, the Court grants Plaintiff's Motion for Preliminary Injunction.

### D.    CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss and grants Plaintiff's Motion for Preliminary Injunction.

An appropriate order will follow.

DATE:   December 7, 2020

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**

---

[10] The parties agree that there should be no bond.  Transcript of Oral Argument at 50-51; ECF No. 21 at ¶ 50 ("The Defendants bear no risk of financial loss if they are wrongfully enjoined in this case.")

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ZACHARY GREENBERG | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 2:20-CV-3822 |
| v. | : | |
| | : | |
| JAMES C. HAGGERTY, in his | : | |
| official capacity as Board Chair of the | : | Hon. Chad F. Kenney |
| Disciplinary Board of the Supreme | : | |
| Court of Pennsylvania, et al. | : | |
| | : | |
| *Defendants* | : | |

**<u>Certificate of Service</u>**

The undersigned certifies that on *December 22, 2020*, he caused the foregoing

*Notice of Appeal* to be served via CM/ECF on all counsel of record

<u>**/S/ Michael Daley**</u>
MICHAEL DALEY, ESQUIRE
Attorney I.D. No. PA 77212
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486