IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY GREENBERG,<br><br>*Plaintiff*,<br><br>v.<br><br>JOHN P. GOODRICH, in his official capacity as Board Chair of The Disciplinary Board of the Supreme Court of Pennsylvania, *et al.*<br><br>*Defendants*. | No. 2:20-cv-03822-CFK |

STIPULATED LIST OF FACTS
FOR PURPOSES OF SUMMARY JUDGMENT MOTIONS

WHEREAS, Plaintiff Zachary Greenberg filed the Complaint in this matter on August 6, 2020; and

WHEREAS, the Court issued a preliminary injunction enjoining enforcement of the initial version of Pa. R. Prof. Cond. 8.4(g) ("Old 8.4(g)") on December 8, 2020; and

WHEREAS, Defendants appealed the preliminary injunction order to the Third Circuit, but subsequently voluntarily dismissed their appeal in March 2021; and

WHEREAS, the Supreme Court of Pennsylvania adopted a revised version of Rule 8.4(g) ("New 8.4(g)" or just "8.4(g)") on July 26, 2021; and

WHEREAS, Greenberg filed an amended complaint (Dkt. 49) challenging New 8.4(g) on August 19, 2021; and

WHEREAS, Defendants filed an answer (Dkt. 50) to Greenberg's amended complaint on September 3, 2021; and

1

WHEREAS, the Court's operative scheduling order (Dkt. 52) allows the parties to submit a stipulated list facts and declarations for purposes of adjudicating upcoming summary judgment motions.

NOW, THEREFORE, the parties stipulate to the following facts for the purposes of deciding the parties' cross-motions for summary judgment.

The inclusion of a fact in this list of stipulated facts or in a declaration is not an admission that it is legally relevant, and the parties reserve the right to dispute the legal relevance of any stipulated fact or declaration.

In addition to this stipulation, Greenberg is filing one declaration and Defendants are filing two declarations contemporaneous with this joint stipulation. These declarations may be controverted through discovery that will be completed by November 1, 2021, in accordance with the operative scheduling order.

## STIPULATED LIST OF FACTS

### THE PLAINTIFF

1. Plaintiff Zachary Greenberg is a citizen of Pennsylvania.

2. Greenberg graduated with a Juris Doctor degree from Syracuse University College of Law in 2016.

3. Greenberg sat for and passed the Pennsylvania Bar Exam in February 2019 and was admitted to the Pennsylvania Bar in May 2019.

4. Greenberg is an attorney who is currently a member of the Pennsylvania Bar in good standing and of active status.

5. Greenberg works and resides in the City and County of Philadelphia.

6. Greenberg works as a Senior Program Officer for the Foundation for Individual Rights in Education ("FIRE"), a non-profit organization that advocates on behalf of students' and faculty members' constitutional rights.

7. Greenberg's job responsibilities include speaking, writing, publishing, and educating about a variety of topics relevant to FIRE's mission of defending and sustaining the individual rights of students and faculty members at America's colleges and universities. These rights include freedom of speech, freedom of association, due process, legal equality, religious liberty, and sanctity of conscience—essential liberties guaranteed by the United States Constitution at public universities and by contract at private universities.

8. Greenberg is currently the National Secretary of the First Amendment Lawyers Association ("FALA"), a not-for-profit, nationwide association of hundreds of attorneys devoted to the protection of Free Expression under the First Amendment.

9. FALA regularly conducts CLE events for its members.

10. Greenberg has spoken at Continuing Legal Education ("CLE") events on a variety of legal issues, including the constitutionality of hate speech regulation, campaign finance speech restrictions, university regulation of hateful expression online, and attorney free speech rights.

11. Greenberg has presented four CLE seminars—one in 2017, two in 2018, and one in 2021—to attorney and non-attorney observers on the First Amendment's limits on rules of professional conduct, legal ethics, campaign finance restrictions, and university punishment of hateful student speech.

12. In 2017, at a CLE at a FALA conference in San Diego, California, Greenberg spoke to dozens of attorneys about *Citizens United v. FEC*, 558 U.S. 310 (2010).

13. In 2018, Greenberg spoke to dozens of attorneys about the First Amendment limitations on rules of professional conduct and legal ethics related to the practice of law at a CLE at a FALA conference in Denver, Colorado.

14. In 2018, at a CLE in Villanova, Pennsylvania, Greenberg spoke to attorneys, parents, and students on his interpretation of the legal limits of a university's power to punish student online expression deemed offensive, prejudiced and hateful.

15. In 2020 Greenberg was scheduled to speak at an accredited CLE hosted by FIRE again on the topic of the *Citizens United v. FEC*, 558 U.S. 310 (2010), but this event was cancelled due to the COVID-19 pandemic.

16. In 2021, at a virtual CLE hosted by FALA, Greenberg spoke on the conflict between government ethics rules and attorneys' First Amendment rights.

17. Greenberg intends and expects to continue speaking at similar events on similar topics for the foreseeable future.

18. Greenberg intends and expects to speak at future CLE events on topics relating to his work at FIRE, including the constitutionality of hate speech regulation, Title IX's effect on the Due Process rights of individuals accused of sexual assault, campaign finance speech restrictions, university policies on fraternity and sorority misconduct, professorial academic freedom, religious freedom on campuses, university regulation of hateful expression online, attorney free speech rights, and alleged abusive public records requests.

## THE DEFENDANTS AND THE DISCIPLINARY PROCESS

19. Defendants John P. Goodrich, Esquire, Jerry M. Lehocky, Esquire, Celeste L. Dee, Christopher M. Miller, Esquire, Gretchen A. Mundorff, Esquire, John C. Rafferty, Esquire, Dion G. Rassias, Esquire, The Honorable Robert L. Repard, The Honorable Eugene F. Scanlon, Jr., David S. Senoff, Esquire, Shohin H. Vance, Esquire, and Robert J. Mongeluzzi, Esquire, are the members of the Disciplinary Board of the Supreme Court of Pennsylvania (the "Board").

20. Goodrich is Board Chair.

21. Lehocky is Board Vice-Chair.

22. The Pennsylvania Constitution, Article V, § 10(c), vests authority in the Supreme Court of Pennsylvania to prescribe general rules for practice and procedures of law within the Commonwealth.

23. The Pennsylvania Supreme Court established the Board in 1972 to regulate attorney conduct.

24. One of the Board's functions is to adjudicate actions prosecuted by the Office of Disciplinary Counsel ("ODC"), which is charged with investigating complaints against Pennsylvania-licensed attorneys for violating the Pennsylvania Rules of Professional Conduct and, if necessary, charging and prosecuting attorneys under the Pennsylvania Rules of Disciplinary Enforcement. *See* Pa.R.D.E. 205-08; Pa.D.Bd.R. §§ 93.21, 93.61.

25. Defendant Thomas J. Farrell, Esquire, is Chief Disciplinary Counsel of ODC.

26. Defendant Raymond S. Wierciszewski, Esquire, is Deputy Chief Disciplinary Counsel of ODC.

27. The Chief Disciplinary Counsel and the Deputy Chief Disciplinary Counsel supervise ODC.

28. Upon receipt of a complaint involving an attorney, ODC conducts an investigation. The complaint is not a charging document, but a request to investigate an attorney.

29. If ODC determines that a complaint is frivolous or that policy or prosecutorial discretion warrant dismissal, it may dismiss the complaint without issuing a DB-7 letter to the attorney, which is a Request for Statement of Respondent's Position.

30. If ODC issues a DB-7 letter, the attorney has thirty days to respond and offer a statement of position. *See* Pa.D.B.R. 87.7(b). Failure to respond without good cause is grounds for discipline. *See* Pa.R.D.E. 203(a)(7).

31. For calendar years 2016 to 2018, ODC received 11,822 complaints, which resulted in 1,527 DB-7 letters, meaning that 87.1% of complaints did not result in a DB-7 letter that required a formal response from the attorney. These numbers do not distinguish between complaints made by laypersons and complaints made by attorneys.

32. Submitting a complaint requires filling out a two-page form and submitting it on the Board's website (padisciplinaryboard.org) or in paper form.

33. The online complaint form states that ODC and the Board "are required to maintain the confidentiality of complaints and related investigations and proceedings unless and until one of the exceptions to confidentiality, as set forth in Enforcement Rule 402, applies. ODC

staff may interview the respondent-attorney or other persons who may have information that is relevant to your complaint, and may disclose information when disclosure is permitted or required by Court or Board Rules."

34. The online complaint form states that "Enforcement Rule 209(a) provides that any person who communicates with Disciplinary Counsel or the Board relating to misconduct by a respondent-attorney or gives testimony before a hearing committee or special master in a proceeding conducted pursuant to the Enforcement Rules, shall be immune from civil suit based upon such communication or testimony."

35. As part of its investigation of a complaint, Disciplinary Counsel may obtain a subpoena to compel the respondent-attorney to produce records and documents. *See* Pa.R.D.E. 213.

36. If, after an investigation and serving a DB-7 letter, ODC determines that some form of discipline is appropriate, multiple layers of review exist. ODC drafts a Form DB-3, a "Referral of Complaint to Reviewing Hearing Committee Member." The DB-3 recommends either private discipline, public reprimand, or the filing of a petition for discipline.

37. The DB-3 summarizes the results of the investigation and describes the respondent attorney's response to the charges in the DB-7 (the Request for Statement of Respondent's Position). It cites the applicable rules of professional conduct and how the investigation demonstrates that the respondent violated specific rules. After considering the severity of the misconduct as compared to precedent, the respondent's history of prior discipline, and any other aggravating or mitigating circumstances, the DB-3 concludes with a recommendation of private discipline or a public reprimand or the filing of a petition for discipline (which is used only for seeking suspension or disbarment).

38. The Counsel in Charge of the District reviews the recommendation and, if they concur, drafts a recommendation to accompany the DB-3, which is reviewed by ODC's Chief Disciplinary Counsel, Thomas Farrell, Esquire, prior to seeking discipline.

39. Unless an attorney consents to discipline or resigns, if the DB-3 is approved, a hearing committee member reviews and approves or disapproves of the proposed disposition. *See* Pa.R.D.E. 208(a)(3). A three-member Disciplinary Board panel reviews recommendations for private and public reprimands. *See* Pa.R.D.E. 208(a)(5); Pa.D.B.R. § 87.34.

40. If the matter is approved for informal admonition, private or public reprimand, the attorney is notified. If the attorney does not consent to the disposition, they have the right to insist on the filing of a petition for discipline, which then proceeds to a hearing before a hearing committee and review by the Disciplinary Board and possibly the Supreme Court of Pennsylvania. *See* Pa.R.D.E. 208(a)(6).

41. If the reviewing Hearing Committee member approves the filing of a petition for discipline, ODC Disciplinary Counsel drafts the petition and sends it to the District's Counsel in Charge and Deputy Chief Disciplinary counsel for review and approval. In cases where ODC seeks a suspension or the respondent-attorney chooses to contest a lesser form of discipline, the petition for discipline is then served on the attorney. The petition for discipline and answer become public when the attorney answers the petition or when the time to answer expires without the filing of an answer. Pa. R.D.E. 402(a)(1), (2). The case proceeds to a hearing before a Hearing Committee and then *de novo* review by the Disciplinary Board and the Supreme Court of Pennsylvania. *See* Pa.R.D.E. 208(b).

## PENNSYLVANIA RULE OF PROFESSIONAL CONDUCT 8.4(G)

42. In November 2016, the Pennsylvania Bar Association House of Delegates, after consideration by the PBA Legal Ethics and Professional Responsibility Committee and the Commission on Women in the Profession, approved a recommendation that the Supreme Court of Pennsylvania adopt an anti-discrimination and anti-harassment rule of professional conduct.

43. In December 2016, the Board published for comment proposed amendments to Pennsylvania's Rule 8.4. *See* 46 Pa.B. 7519 (Dec. 3, 2016).

44. Following comments and further review, the Board revised the proposed amendments to Rule 8.4. The Board published its revised proposal for comment in 2018. *See* 48 Pa.B. 2936 (May 19, 2018).

45. In August 2019, the Board again revised its proposed amendment, which it published for comment. *See* 49 Pa.B. 4941 (Aug. 31, 2019).

46. The Board stated in its August 2019 notice that "it is in the best interests of the profession and the public" to "formally disapprove" of a lawyer's conduct in the practice of law that "knowingly manifests bias or prejudice, or engages in harassment or discrimination." *Id.* The Board further stated that "[t]he proposed rule promotes the profession's goal of eliminating intentional harassment and discrimination, assures that the legal profession functions for all participants, and affirms that no lawyer is immune from the reach of law and ethics." *Id.*

47. After the final iterative process of notice and comment, the Supreme Court of Pennsylvania on June 8, 2020, approved the recommendation of the Board and ordered that Pennsylvania Rule of Professional Conduct 8.4 be amended to include Old 8.4(g), along with Comments Three and Four, to take effect on December 8, 2020. *See* 50 Pa.B. 3011 (June 20, 2020).

48. Justice Mundy dissented from the adoption of Old 8.4(g).

49. On December 8, 2020, this Court issued a preliminary injunction enjoining enforcement of Old 8.4(g). Dkts. 29, 31.

50. Defendants appealed the preliminary injunction order to the Third Circuit, but subsequently voluntarily dismissed their appeal in March 2021.

51. After their April 13, 2021 meeting, Defendants forwarded to the Pennsylvania Supreme Court recommendations regarding amendments to Old 8.4(g).

52. On July 26, 2021, the Pennsylvania Supreme Court adopted amendments and approved New 8.4(g), superseding Old 8.4(g). *See* Dkt. 45-1.

53. Justice Mundy dissented from the adoption of New 8.4(g).

54. New 8.4(g) did not go through a public notice and comment procedure. The amendments were adopted under Pa.R.J.A. 103(a)(3).

55. New 8.4(g) was set to take effect on August 25, 2021.

56. Pursuant to stipulation of the parties, Defendants have agreed to forebear from enforcement of New 8.4(g) until this Court has rendered a decision on the cross-motions for summary judgment and to not retroactively enforce Rule 8.4(g) against alleged violations during that forbearance period. Dkt. 46 at 2.

57. New 8.4(g) reads as follows:

> It is professional misconduct for a lawyer to:
>
> * * *
>
> > (g) in the practice of law, knowingly engage in conduct constituting harassment or discrimination based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude advice or advocacy consistent with these Rules.

58. Comment 3 to New 8.4(g) reads as follows:

> For the purposes of paragraph (g), conduct in the practice of law includes (1) interacting with witnesses, coworkers, court personnel, lawyers, or others, while appearing in proceedings before a tribunal or in connection with the representation of a client; (2) operating or managing a law firm or law practice; or (3) participation in judicial boards conferences, or committees; continuing legal education seminars; bench bar conferences; and bar association activities where legal education credits are offered. The term "the practice of law" does not include speeches, communications, debates, presentations, or publications given or published outside the contexts described in (1)-(3).

9

59. Comment 4 to New 8.4(g) reads as follows:

> "Harassment" means conduct that is intended to intimidate, denigrate or show hostility or aversion toward a person on any of the bases listed in paragraph (g). "Harassment" includes sexual harassment, which includes but is not limited to sexual advances, requests for sexual favors, and other conduct of a sexual nature that is unwelcome.

60. Comment 5 to New 8.4(g) reads as follows:

> "Discrimination" means conduct that a lawyer knows manifests an intention: to treat a person as inferior based on one or more of the characteristics listed in paragraph (g); to disregard relevant considerations of individual characteristics or merit because of one or more of the listed characteristics; or to cause or attempt to cause inference with the fair administration of justice based on one or more of the listed characteristics.

## PLAINTIFF'S FUTURE PLANS

61. Greenberg plans to remain a member of the Pennsylvania Bar for the foreseeable future.

62. Greenberg plans to continue speaking at CLE events on topics like those discussed above in ¶¶ 10-18, pursuant to the expectations of his employer, his professional organization memberships, and his personal interests.

63. During his CLE presentations, Greenberg provides a detailed summation of what some consider hateful speech that courts have held to be protected by the First Amendment, including a walkthrough of prominent, precedential First Amendment cases.

64. This summation covers, among other cases: *Matal v. Tam*, 137 S. Ct. 1744 (2017) (addressing trademark protection for the band called the "Slants"—a common racial epithet for persons of Asian descent); *Snyder v. Phelps*, 562 U.S. 443 (2011) (considering the right of picketers carrying such signs as "God Hates Fags" and "Priests Rape Boys"); *Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667, 667-68 (1973) (upholding as protected speech a student newspaper's front-page use of the vulgar headline "Motherfucker Acquitted"

and a "political cartoon . . . depicting policemen raping the Statue of Liberty and the Goddess of Justice."); *Dambrot v. Central Michigan University*, 55 F.3d 1177 (6th Cir. 1995) (invalidating campus speech code in a case involving the coach's utterance of a racial epithet in a college basketball locker room). The *Dambrot* opinion uses the racial epithet nineteen times.

65. These walkthroughs analyze the facts of the cases with explicit reference to, and mention of the exact speech at issue. They also discuss the outcome of the case, including a discussion of whether the cases were correctly decided, and the larger societal implications of the decisions.

Dated: October 1, 2021

Respectfully submitted,

*/s/ Adam E. Schulman*
Adam E. Schulman (PA Bar No. 309749)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
adam.schulman@hlli.org
(610) 457-0856

*Attorney for Plaintiff Zachary Greenberg*


*/s/Michael Daley*
Michael Daley, Esquire
Attorney I.D. PA77212
Megan L. Davis, Esquire
Attorney I.D. PA321341
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486

*Attorneys for Defendants*.

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case.


DATED: October 1, 2021

<u>*(s) Adam Schulman*</u>
Adam Schulman