**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ZACHARY GREENBERG | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 2:20-CV-3822 |
| v. | : | |
| | : | |
| JOHN P. GOODRICH, in his | : | |
| official capacity as Board Chair of the | : | Hon. Chad F. Kenney |
| Disciplinary Board of the Supreme | : | |
| Court of Pennsylvania, et al. | : | |
| | : | |
| *Defendants* | : | |

## <u>Declaration of Laura K. Mohney, Esquire</u>

I, Laura K. Mohney, Esquire, declare:

1.      I am Counsel to the Disciplinary Board of the Supreme Court of Pennsylvania, and have been in my position since 2000.

2.      As part of my official duties, I am familiar with the process by which Rules of Professional Conduct are drafted, reviewed, and approved by the Disciplinary Board and the Supreme Court of Pennsylvania, which includes the receipt of comments regarding proposed rules and amendments.

3.      I am familiar with the proposed amendments to Rule of Professional Conduct 8.4 to add paragraph (g) and two comments.

4.      As part of the process for the Rule 8.4 amendments, the Board received the attached letters following the August 31, 2019, Notice of Proposed Rulemaking (49 Pa.B. 4941), which were provided to the Board's Rules Committee and the Supreme Court for consideration :

        ●      September 13, 2019, letter from the Pennsylvania Bar

Association (Exhibit A);

- September 26, 2019, letter from the Philadelphia Bar
  Association (Exhibit B); and

- September 20, 2019, letter from the Allegheny County Bar
  Association (Exhibit C).

5.      The letters were received in and kept in the Board's regular course of business.

Pursuant to 28 U.S.C. §1746, I verify under penalty of perjury that the foregoing is true and correct.

_____
Laura K. Mohney
Counsel to the Disciplinary Board of
the Supreme Court of Pennsylvania

September 20, 2021

# Exhibit A



OFFICE
OF THE
PRESIDENT                  100 SOUTH STREET • P.O. BOX 186 • HARRISBURG, PA 17108-0186 • (717) 238-6715 or (800) 932-0311 • FAX (717) 238-1204

ANNE N. JOHN

September 13, 2019

Jesse G. Hereda
Executive Director
Disciplinary Board of the
 Supreme Court of Pennsylvania
601 Commonwealth Avenue, Suite 5600
P. O. Box 62625
Harrisburg, PA  17106-2625

> **Re:  Proposal to Adopt Rule of Professional Conduct 8.4(g) Prohibiting Harassment
> or Discrimination in the Practice of Law**

Dear Mr. Hereda:

The Disciplinary Board has issued a Notice of Proposed Rulemaking dated August 31, 2019 (49 Pa.B. 4941) relating to a proposed amendment to Rule 8.4 of the Pennsylvania Rules of Professional Conduct ("RPC").   Proposed RPC 8.4(g) is intended to make it professional misconduct for a lawyer, in the practice of law, to knowingly manifest bias or prejudice, or engage in harassment or discrimination.

In November 2016, the PBA House of Delegates approved a recommendation that the Supreme Court adopt a version of Model Rule 8.4(g) developed after extensive consideration by the PBA Legal Ethics and Professional Responsibility Committee and the Commission on Women in the Profession. By letter dated December 2, 2016, then President Sara A. Austin conveyed the approved recommendation to Chief Justice Thomas G. Saylor, a copy of which, with the enclosures, is included for your convenience.  Pages 3 through 5 of Ms. Austin's December 2, 2016 letter also expressed certain concerns regarding the version of RPC 8.4(g) that had been proposed by the Disciplinary Board on November 16, 2016.

The Disciplinary Board's current proposed version of RPC 8.4(g) is substantially in conformance with the recommendations approved by the PBA House of Delegates in November 2016, and addresses the key concerns previously expressed regarding the Disciplinary Board's initial proposal. In particular, the Board's current recommendation ties the offending conduct to harassment or discrimination as those terms are defined in applicable federal, state or local law, a component of the PBA recommendation that should provide useful guidance to lawyers as to the scope of application of the new rule. The Board's recommended rule language also is consistent with the PBA recommendation in that it imposes a "knowingly" mens rea requirement to trigger application of the rule. In addition, the Board recommends that the rule apply in circumstances where lawyers are engaged in bar association meetings, conferences and continuing legal education seminars, all of which comports with the PBA recommendation.

The Board's notice correctly explains by way of background that the majority of states already have anti-harassment and anti-discrimination Rules of Professional Conduct in place. Inasmuch as the Board's pending recommendation comports with the PBA's approved policy in this regard, the PBA, through unanimous approval of the Board of Governors, acting in lieu of the House of Delegates on September 12, 2019, expresses strong support of the Disciplinary Board's pending proposed amendments to Rule 8.4 and is prepared to again urge the Supreme Court to accept and adopt the rule change.

Thank you for the opportunity to comment on this matter and we commend the Board for its further evaluation of the issues raised by the PBA and other bar associations concerning this important rule change.  Please do not hesitate to contact us if you have any questions concerning the foregoing or if we can be of assistance in facilitating the rule change.


Respectfully yours,

Anne N. John, Esquire
PBA President


Enclosures

cc:     Barry M. Simpson, Esq.
        Francis O'Rourke
        Melissa M. Leininger, Esq.
        Renee Mattei Myers, Esq.
        Jennifer S. Coatsworth, Esq.
        Stephanie F. Latimore, Esq.
        Daniel Q. Harrington, Esq.
        Daniel J. Siegel, Esq.
        Amy J. Coco, Esq.
        Thomas G. Wilkinson, Jr., Esq.



OFFICE
OF THE
PRESIDENT                    100 SOUTH STREET • P.O. BOX 186 • HARRISBURG, PA 17108-0186 • (717) 238-6715 or (800) 932-0311 • FAX (717) 238-1204

SARA A. AUSTIN

December 2, 2016

The Honorable Thomas G. Saylor
Chief Justice
Supreme Court of Pennsylvania
Fulton Building, 16th Floor
200 North Third Street
Harrisburg, PA  17101

**Re:  Recommendation to Adopt Rule of Professional Conduct 8.4(g)**

Dear Chief Justice Saylor:

We enclose the Pennsylvania Bar Association recommendation to amend Rule of Professional Conduct 8.4 (Misconduct) to include a prohibition on harassment and discrimination in the practice of law in substantial conformity with the Model Rule amendment approved by the American Bar Association House of Delegates in August.  This letter will provide background on this important recommendation, and summarize the several enclosures.

In 1996, twenty years ago, the PBA approved a recommendation to amend Rule 8.4 of the Pennsylvania Rules of Professional Conduct to include sexual harassment as a form of professional misconduct and requested the Supreme Court to adopt the amendment.  The PBA renewed its request in 1999 and suggested that the rule also prohibit discrimination on the basis of ethnicity, gender or race.  The Court did not act on those proposals.  In 1988, the ABA adopted Comment [3] to Model Rule 8.4, which explained that certain conduct may be considered "conduct prejudicial to the administration of justice," in violation of Rule 8.4(d), including when a lawyer knowingly manifests, by words or conduct, bias or prejudice against certain groups of persons, while in the course of representing a client. That Comment also was not adopted in Pennsylvania.

In furtherance of PBA's long-standing mission to promote justice, respect for the rule of law, professional excellence, and betterment of the legal profession, the PBA Board of Governors and House of Delegates in November overwhelmingly approved a Recommendation proposing an amendment to Rule 8.4 of the Pennsylvania Rules of Professional Conduct prohibiting harassment and discrimination in conduct related to the practice of law (Attachment A).  The Recommendation was sponsored by the PBA Women in the Profession Committee ("WIP") and Legal Ethics and Professional Responsibility Committee ("Ethics Committee") and supported by various other interested committees and sections.

The Honorable Thomas G. Saylor
December 2, 2016
Page 2

The PBA's Recommendation follows the adoption by the ABA of new Model Rule 8.4(g) and new Comments [3], [4] and [5] as discussed in ABA Revised Resolution 109 (Attachment B). The product of two years of work by the ABA Standing Committee on Ethics and Professional Responsibility, Model Rule 8.4(g) makes it professional misconduct for a lawyer to "engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law." The new Model Rule provides that it "does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16" or "preclude legitimate advice or advocacy consistent with these Rules."

The WIP's original Recommendation was to adopt the ABA Model Rule amendment and accompanying Comments without change. However, after thoughtful collaboration with the Ethics Committee, a determination was made to submit a revised Recommendation that met the concerns and objectives of both Committees and also incorporated helpful input from the Professional Liability Committee. The revised Recommendation proposes an amendment to Rule 8.4 which provides that it is professional misconduct for a lawyer to "engage in conduct that the lawyers knows is harassment or discrimination as those terms are defined in applicable federal, state or local statute or ordinance, on the basis of on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law." The proposed amendment "does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16" or "preclude legitimate advice or advocacy consistent with these Rules."

The PBA's proposed Rule 8.4(g) differs from its Model Rule counterpart in the following respects: (1) it limits prohibited activity to harassment or discrimination as those terms are defined in applicable federal, state or local statue or ordinance; and (2) it eliminates the "reasonably should know" standard and relies on "knows," which requires actual knowledge, as defined in Rule 1.0(f). Requiring "knowing" conduct assures that lawyers will not be exposed to discipline under this Rule for inadvertent conduct or mere negligence. The Committees further agreed that it was appropriate to incorporate language that would clarify the scope of the Model Rule to conform to governing substantive law addressing harassment and discrimination.

As noted in the Ethics Committee's Report (Attachment C), the PBA's proposed new Comments, while in substantial conformity with ABA Comments [3], [4] and [5], include additional language in Comment [3] to make clear that the Rule "does not serve to expand upon or limit a claimant's available rights or remedies under other law governing harassment or discrimination." This sentence confirms that a disciplinary complaint may be filed against a lawyer by a claimant who may also happen to have access to a substantive law damages remedy for the harassment or discrimination and neither forum is intended to be exclusive. In addition, Comment [5] includes a sentence that reads, "This Rule does not require a lawyer to accept or reject the representation of any prospective client who is a member of any of the referenced classifications." The foregoing sentence makes clear that the rule does not undermine the lawyer's traditional discretion to choose not to undertake the representation of a particular client who happens to be in a protected group.

The Honorable Thomas G. Saylor
December 2, 2016
Page 3

To date, twenty-five jurisdictions have adopted some form of anti-bias and/or anti-harassment provisions in their Rules of Professional Conduct and 13 have the above-referenced Model Rule comment language.   The PBA strongly believes, as it did over twenty years ago, that now is the time to establish in the black letter of Rule 8.4 that harassment and discrimination have no place in the practice of law.  The proposed amendment is broad enough to prohibit various forms of illegal harassment and discrimination but narrow enough to avoid exposing a lawyer to discipline unless the lawyer knows the conduct constitutes harassment or discrimination directed to one or more persons in a protected category, and we respectfully request that the Court give the PBA's Recommendation careful consideration.

We also note that, on November 16, 2016, the Disciplinary Board issued a Notice of Proposed Rulemaking with respect to a proposed version of Rule 8.4(g).  We convey below a series of serious concerns with the version of the Rule reflected in the published Notice:

1.      The Board's proposal was copied from the current Illinois Rule 8.4(j), adopted in 1993, some 23 years before Model Rule 8.4(g), and is, therefore, not drawn from the Model Rule adopted by the ABA in August 2016. No other state has adopted the Illinois version of the Rule. Illinois is currently taking comments on Model Rule 8.4(g), with an eye toward replacing its Rule 8.4(j).

2.      The Board acknowledges that its proposed amendment "is narrow in scope compared to the ABA Model Rule, because of the requirement of a judicial or administrative finding of discriminatory conduct."  In addition, the Board proposal lacks any prohibition against harassment or discrimination based on several protected categories (*i.e.*, ethnicity, gender identity and marital status) in both the Model Rule and the PBA proposal. There are also severe restrictions on the permissible means of establishing misconduct, as compared to either the ABA Model Rule or the PBA recommendation.   The Disciplinary Board explains that these restrictions and limitations are due to its "resource-strapped" status, implying that it will be besieged with harassment and discrimination complaints but without any assessment of the additional resources that may reasonably be necessary to evaluate complaints that are yet to be filed.

3.      The PBA maintains that appropriate standards for professional conduct of attorneys in this Commonwealth should be established on the basis of values and norms independent of the transient issue of availability of funding or staffing.[1]  In any event, as explained in the attached approved PBA Recommendation and supporting documents, the PBA recommendation includes several modifications to the Model Rule and its Comments which significantly clarify the scope and application of the rule, and, correspondingly, should limit the enforcement burden.

---

[1] Despite limited resources, the Unified Judicial System of Pennsylvania has adopted both a Code of Conduct for Employees prohibiting "any form of discrimination, harassment, or retaliation against any person as prohibited by law or court policy," and a Policy on Non-Discrimination and Equal Employment Opportunity specifically prohibiting discrimination or harassment on the basis of race, color, sex, sexual orientation, national origin, age, disability or religion.

The Honorable Thomas G. Saylor
December 2, 2016
Page 4

4.  Aspects of the Disciplinary Board proposal, including most prominently the requirement of exhaustion of other administrative or civil remedies prior to pursuit of a disciplinary complaint in most cases, would not achieve the stated goal of limiting the burden on the disciplinary system, but would have other adverse consequences. A potential grievant in disciplinary matters would be forced to pursue all available remedies through the administrative or judicial process, even in circumstances where the grievant would not otherwise wish to do so, merely in order to be able to preserve the ability to pursue disciplinary action against a Pennsylvania lawyer. This would impose unnecessary additional burdens on the administrative agencies involved, as well as on the judiciary. Even more importantly, it would require the grievant to retain counsel, incur legal fees and expenses and await the outcome of proceedings that could take years before the disciplinary process even moves forward.

5.  The Board proposal allows lawyers to avoid discipline for professional misconduct within the scope of the Rule merely because an aggrieved party failed in some technical fashion to pursue successfully their administrative or civil remedies, such as by missing a time deadline. (Filing deadlines in such administrative matters can be as short as 180 days).

6.  Because the Disciplinary Board proposal would require such administrative or judicial matters to be pursued to a conclusion as a condition prerequisite to initiating the disciplinary process, it would provide a significant disincentive to the prompt resolution of the proceeding, further aggravating the burden on the affected administrative agencies and on the judiciary. The Board proposal would also afford lawyers an opportunity to effectively buy their way out of potential exposure for professional discipline via a negotiated settlement -- a tactic that in any other context would be deemed unethical.

7.  Even as to those complaints pursued to a final resolution through a civil or administrative proceeding, a finding of harassment or discrimination would not materially reduce the burden on the Office of Disciplinary Counsel or the Disciplinary Board in connection with an ensuing disciplinary matter. Professional misconduct must be established by "clear and convincing" evidence, as distinguished from the lesser "preponderance of the evidence" standard applicable to civil and administrative matters. Therefore, even a final order finding a lawyer has committed harassment or discrimination following an administrative or civil matter would not eliminate the need for the disciplinary authorities to evaluate a complaint anew under the heightened "clear and convincing" standard applicable to disciplinary proceedings.

8.  The Notice of Proposed Rulemaking also contains the restriction that the harassment or discrimination involve "conduct that reflects adversely on the lawyer's fitness as a lawyer." Unfortunately, this phrase borrows from language appearing in Rule 8.3 (Reporting Professional Misconduct) and would, therefore, arguably trigger the mandatory reporting rule each and every time another lawyer "knows" of a violation. This is likely an unintended consequence. Moreover, it is conceivable that the conduct of a lawyer who knowingly engages in harassment or discrimination in connection with the practice of law may not reflect adversely on that lawyer's ongoing fitness to practice law,

The Honorable Thomas G. Saylor
December 2, 2016
Page 5

but may be deserving of some appropriate disciplinary sanction, ranging from an informal admonition to some form of public discipline.

9.    Under the version of Rule 8.4(g) proposed by the PBA, the disciplinary counsel would still have the discretion to defer action, pending resolution of any parallel or related administrative or court proceedings. The Board already follows this practice in the fee dispute context and could do the same here where it deems appropriate without imposing a per se rule prohibiting it from investigating even the most egregious (and potentially ongoing) harassment and/or discrimination. If such parallel proceedings were resolved adversely to the grievant, then this would likely have dispositive effect on a disciplinary claim involving the same circumstances.

For at least the foregoing reasons the Disciplinary Board's Notice of Proposed Rulemaking issued without consideration of the Pennsylvania Bar Association recommendation on this important subject presents an unsatisfactory approach to addressing harassment or discrimination in the practice of law. We have copied the Board Chair and Secretary on this letter to ensure they are aware of the foregoing concerns.

On behalf of the Pennsylvania Bar Association, we appreciate the Court's consideration of this recommendation and would be happy to answer any questions concerning the foregoing.

Respectfully yours,

Sara A. Austin, Esquire
PBA President

Enclosures

cc:    Barry M. Simpson, PBA Executive Director
       Francis J. O'Rourke, PBA Deputy Executive Director
       Jane G. Penny, Disciplinary Board Chair
       Paul J. Killion, Chief Disciplinary Counsel
       Julia M. Frankston-Morris, Secretary of the Disciplinary Board
       Daniel Q. Harrington, Co-Chair, PBA Legal Ethics and Prof'l. Resp. Comm.
       Samuel D. Miller, III, Co-Vice Chair, PBA Legal Ethics and Prof'l. Resp. Comm.
       Daniel J. Siegel, Co-Vice Chair, PBA Legal Ethics and Prof'l. Resp. Comm.
       Thomas G. Wilkinson, Jr., Past PBA President
       Mary Kate Coleman, WIP Co-Chair
       Jessie L. Smith, WIP Co-Chair
       Kathleen D. Wilkinson, Zone 1 Governor and Past WIP Co-Chair
       Amy J. Coco, Member of WIP and Legal Ethics and Prof'l. Resp. Comm.

Attachment A

**PENNSYLVANIA BAR ASSOCIATION**
**WOMEN IN THE PROFESSION COMMISSION**
**AMENDED RECOMMENDATION AND REPORT**

**Recommendation**

That the Pennsylvania Bar Association (PBA) urges the Supreme Court of Pennsylvania to adopt the amendment to Rule 8.4 of the ABA Model Rules of Professional Conduct which adds section (g), as follows: "It is professional misconduct for a lawyer to: (g) engage in conduct that the lawyer knows is harassment or discrimination as those terms are defined in applicable federal, state or local statute or ordinance, on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules."

The WIP recommends that the additional Comments to ABA Model Rule 8.4 accompanying subpart (g) be adopted with the following amendments:

[3] Discrimination and harassment by lawyers in violation of paragraph (g) undermine confidence in the legal profession and the legal system. Such discrimination includes harmful verbal or physical conduct that manifests bias or prejudice towards others. Harassment includes sexual harassment and derogatory or demeaning verbal or physical conduct. Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other unwelcome verbal or physical conduct of a sexual nature. The substantive law of antidiscrimination and anti-harassment statutes and case law may guide application of paragraph (g). This Rule does not serve to expand upon or limit a claimant's available rights or remedies under other law governing harassment or discrimination.

[4] Conduct related to the practice of law includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or social activities in connection with the practice of law. Lawyers may engage in conduct undertaken to promote diversity and inclusion without violating this Rule by, for example, implementing initiatives aimed at recruiting, hiring, retaining and advancing diverse employees or sponsoring diverse law student organizations.

[5] A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of paragraph (g). A lawyer does not violate paragraph (g) by limiting the scope or subject matter of the lawyer's practice or by limiting the lawyer's practice to members of underserved populations in accordance with these Rules and other law. A lawyer may charge and collect reasonable fees and expenses for a representation. Rule 1.5(a). Lawyers also should be mindful of their professional obligations under Rule 6.1 to provide legal services to those who are unable to pay, and their obligation under Rule 6.2 not to avoid appointments from a tribunal except for good cause. See Rule 6.2(a), (b) and (c). This Rule does not require a lawyer to accept or reject the representation of any prospective client who is a member of any of the referenced classifications. A lawyer's representation of a client does not constitute an endorsement by the lawyer of the client's views or activities. *See* Rule 1.2(b).

That the President and/or the President's designee(s) shall communicate its position to the Supreme Court of Pennsylvania, the legal profession and the public and take such other action as may be necessary to effectuate this Recommendation.

*Unanimously approved, as amended, by the Board of Governors November 16, 2016.*
**Approved, as amended, by the House of Delegates November 18, 2016.*

## Report

The PBA Women in the Profession Commission makes this Recommendation because:

The PBA has recognized its commitment to equal justice for all, the responsibility to the public good, the promotion of diversity in the legal profession and has historically maintained that diversity and inclusion are core values of the PBA. On May 3, 1996, the PBA House of Delegates approved an amendment to Rule 8.4 proposed by the PBA Gender Education Committee that would make it professional misconduct for a lawyer to "engage in sexual harassment in the practice of law." The proposed amendment, which was fully supported by the PBA Women in the Profession and the Joint Task Force to Ensure Gender Fairness in the Courts, was transmitted to the Supreme Court of Pennsylvania for consideration and adoption in October 1996. In 1999, the PBA renewed its request to the Supreme Court for an amendment to Rule 8.4 that would expand the prohibition to include other discrimination on the basis of sex, race or ethnicity in the practice of law.

The PBA has maintained a policy of not discriminating in employment and its activities. In April of 2006 it reaffirmed its non-discrimination policy and specifically adopted a written policy promoting diversity throughout the Association in a Resolution approved by the PBA House of Delegates on June 9, 2006.

The PBA has developed a Diversity and Inclusion Plan with its stated goal of a genuine, sustainable diverse and inclusive environment within the PBA and throughout its membership. Reflecting its steadfast commitment to the achievement of diversity and inclusion, the Plan demonstrates the goals, metrics and reporting mechanisms to ensure the Association fulfills its commitment to advancing diversity and inclusion in the legal profession.

The PBA has many active committees devoted to diversity and inclusion, including the Minority Bar Committee, the GLBT Rights Committee, the Civil and Equal Rights Committee, the Women in the Profession Commission, and the Diversity Team.

The PBA Women in the Profession Commission's Mission Statement provides:

The Commission on Women in the Profession shall assess the current status of women in the legal profession and identify barriers that prevent them from full participation in the work, responsibilities and rewards of the profession; make recommendations to the PBA Board of Governors and House of Delegates for action to solve problems the commission identifies and develop educational programs to address discrimination against women lawyers and the unique problems they encounter in pursuing their professional careers.

2

The PBA Minority Bar Committee Mission Statement provides:

The mission of the Minority Bar Committee…is to assure full and equal participation of minorities in the PBA, the legal profession, and the justice system in general. In order to achieve this mission, the Minority Bar Committee will:

1.      Identify and promote opportunities that allow minorities within the legal profession to participate fully in the work, responsibilities, and rewards of the PBA and the legal profession in general. Included in this objective are matters relating to the advancement of minorities within law firms and other professional and business entities, job opportunities for minorities, elimination of racial discrimination in the legal profession and within the broader community, and effective avenues for minority lawyers and judges to avail themselves of opportunities within the PBA to address issues of special interest to minority lawyers.

2.      Monitor the current status of minorities in the legal profession and the justice system in general, identify their career paths and goals, and actively promote their advancement and achievement.

3.      Develop educational programs in the way of seminars and surveys, among other measures, to address discrimination against minorities within the legal profession, and the justice system in general.

4.      Make recommendations to the PBA Board of Governors and House of Delegates for action on issues affecting minorities within the legal profession and the justice system in general.

5.      Make recommendations to the judicial, legislative, and executive branches of government, and other groups within the justice system on issues affecting racial minorities and their communities in accordance with the PBA Bylaws.

The PBA GLBT Rights Committee Mission Statement provides:

The GLBT Rights Committee shall study matters pertaining to the recognition and protection of the legal rights of the gay, lesbian, bisexual and transgender (GLBT) community. The committee will monitor and make recommendations on issues and developments in the law impacting GLBT people in the public and the legal profession.

The PBA Civil and Equal Rights Committee Mission Statement provides:

The Civil and Equal Rights Committee shall promote and defend civil rights and responsibilities, fair treatment and equal opportunity for all individuals and the avoidance and elimination of wrongful discrimination and unfair bias by (a) monitoring actual and proposed legislation, litigation, rules of conduct and procedures and other relevant developments; (b) educating the legal community and the public; and (c) making proposals and recommendations to advance and effect the goals of the  committee.

In 1994, the Civil and Equal Rights Committee (CERC) was formed from two pre-existing PBA Committees - the Civil Rights and Responsibilities Committee and the Equal Rights Committee. The Equal Rights Committee dealt with issues affecting women. The Civil Rights Committee focused on issues involving "protected classes" and Section 1983 actions. Because there was overlap of membership and substantive issues, and due to budgetary constraints, the two committees were combined into the present-day CERC.

The PBA Diversity Team mission statement provides:

The PBA Diversity Team establishes resources and forums for enhanced communication among PBA groups with diversity initiatives. The Diversity Team is committed to work collaboratively with PBA leadership, staff and all other PBA-related groups and entities, including the Pennsylvania Bar Foundation, the Pennsylvania Bar Insurance Fund and Trust Fund, PABAR-PAC and the Pennsylvania Bar Institute, to promote and enhance diversity. Each member of the Diversity Team (Diversity Ambassadors) works collaboratively with PBA groups to promote and enhance their existing diversity initiatives and/or assist with creating new opportunities.

The American Bar Association has long recognized its responsibility to represent the legal profession and promote the public's interest in equal justice for all. Since 1983, when the Model Rules of Professional Conduct ("Model Rules") were first adopted by the Association, they have been an invaluable tool through which the Association has met these dual responsibilities and led the way toward a more just, diverse and fair legal system. Lawyers, judges, law students and the public across the country and around the world look to the ABA for this leadership.

Since 1983, the ABA has also spearheaded other efforts to promote diversity and fairness. In 2008 the ABA reformulated its objectives into four major "Goals" that were adopted by the House of Delegates.  Goal III is entitled, "Eliminate Bias and Enhance Diversity." It includes the following two objectives: 1. Promote full and equal participation in the association, our profession, and the justice system by all persons. 2. Eliminate bias in the legal profession and the justice system.

In February 1998, the Criminal Justice Section and SCEPR (Standing Committee on Ethics and Professional Responsibility) of the ABA developed separate proposals to add a new anti-discrimination provision into the ABA Model Rules. These proposals were then combined into Comment [3] to Model Rule 8.4, which was adopted by the House of Delegates at the ABA's Annual Meeting in August 1998.

Comments are not Rules; they have no authority as such. Authority is found only in the language of the Rules. The Comments are intended as guides to interpretation, but the text of each Rule is authoritative.

The ABA House of Delegates resoundingly passed Resolution 109 at its meeting on August 8, 2016, which added (g) to Rule 8.4: Misconduct, which provides as follows:

"RESOLVED, That the American Bar Association amends Rule 8.4 and Comment of the ABA Model Rules of Professional Conduct as follows:

Rule 8.4: Misconduct

4

It is professional misconduct for a lawyer to:

(g) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline, or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these rules."

**[The WIP recommends that the]** ~~The~~ additional Comments to ABA Model Rule 8.4 accompanying subpart (g) **[be adopted with the following amendments]** ~~provide as follows~~:

[3] Discrimination and harassment by lawyers in violation of paragraph (g) undermine confidence in the legal profession and the legal system. Such discrimination includes harmful verbal or physical conduct that manifests bias or prejudice towards others. Harassment includes sexual harassment and derogatory or demeaning verbal or physical conduct. Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other unwelcome verbal or physical conduct of a sexual nature. The substantive law of antidiscrimination and anti-harassment statutes and case law may guide application of paragraph (g). **[This Rule does not serve to expand upon or limit a claimant's available rights or remedies under other law governing harassment or discrimination.]**

[4] Conduct related to the practice of law includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or social activities in connection with the practice of law. Lawyers may engage in conduct undertaken to promote diversity and inclusion without violating this Rule by, for example, implementing initiatives aimed at recruiting, hiring, retaining and advancing diverse employees or sponsoring diverse law student organizations.

[5] A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of paragraph (g). A lawyer does not violate paragraph (g) by limiting the scope or subject matter of the lawyer's practice or by limiting the lawyer's practice to members of underserved populations in accordance with these Rules and other law. A lawyer may charge and collect reasonable fees and expenses for a representation. Rule 1.5(a). Lawyers also should be mindful of their professional obligations under Rule 6.1 to provide legal services to those who are unable to pay, and their obligation under Rule 6.2 not to avoid appointments from a tribunal except for good cause. See Rule 6.2(a), (b) and (c). **[This Rule does not require a lawyer to accept or reject the representation of any prospective client who is a member of any of the referenced classifications.]** A lawyer's representation of a client does not constitute an endorsement by the lawyer of the client's views or activities. *See* Rule 1.2(b).

On October 26, 2016, acting on the recommendation of its Women in the Profession and Professional Responsibility Committees, the Philadelphia Bar Association Board of Governors

unanimously adopted a "Resolution Supporting Adoption by the Pennsylvania Supreme Court of the Amendment to ABA Model Rule 8.4." **[Leadership of WIP has conferred with leadership of the Legal Ethics and Professional Responsibility Committee.  Both Committees agree with the proposed amendment to Rule 8.4 and its accompanying Comments as set forth herein.]**

The Pennsylvania Bar Association has repeatedly stated that diversity and inclusion are core values of the Pennsylvania Bar Association through the Diversity and Inclusion Plan and elsewhere.

The PBA has expressed its support of the diversity mission which is stated in Goal III of the ABA and its inclusion in this Association's Statement of Diversity Principles.

Respectfully Submitted,

Mary Kate Coleman, Esq.
Jessie L. Smith
Co-Chairs
PBA Women in the Profession Commission
*Revised November 14, 2016*

**Attachment B**

The views expressed herein have not been approved by the House of Delegates or the Board of Governors of the American Bar Association and, accordingly, should not be construed as representing the policy of the American Bar Association.

# REVISED 109

## AMERICAN BAR ASSOCIATION

### STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY
### SECTION OF CIVIL RIGHTS AND SOCIAL JUSTICE
### COMMISSION ON DISABILITY RIGHTS
### DIVERSITY & INCLUSION 360 COMMISSION
### COMMISSION ON RACIAL AND ETHNIC DIVERSITY IN THE PROFESSION
### COMMISSION ON SEXUAL ORIENTATION AND GENDER IDENTITY
### COMMISSION ON WOMEN IN THE PROFESSION

### REPORT TO THE HOUSE OF DELEGATES

### REVISED RESOLUTION

1  RESOLVED, That the American Bar Association amends Rule 8.4 and Comment of the ABA
2  Model Rules of Professional Conduct as follows (insertions <u>underlined</u>, deletions ~~struck through~~):
3
4  Rule 8.4: Misconduct
5
6  It is professional misconduct for a lawyer to:
7
8  (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or
9  induce another to do so, or do so through the acts of another;
10
11  (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness
12  or fitness as a lawyer in other respects;
13
14  (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
15
16  (d) engage in conduct that is prejudicial to the administration of justice;
17
18  (e) state or imply an ability to influence improperly a government agency or official or to
19  achieve results by means that violate the Rules of Professional Conduct or other law; ~~or~~
20
21  (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable
22  rules of judicial conduct or other law<u>; or</u>
23
24  <u>(g)</u> <u>engage in conduct that the lawyer knows or reasonably should know is harassment or</u>
25  <u>discrimination</u> ~~harass or discriminate~~ on the basis of race, sex, religion, national origin, ethnicity,
26  disability, age, sexual orientation, gender identity, marital status or socioeconomic status in
27  conduct related to the practice of law. This ~~Rule~~ <u>paragraph</u> does not limit the ability of a lawyer
28  to accept, decline or withdraw from a representation in accordance with Rule 1.16. <u>This paragraph</u>
29  <u>does not preclude legitimate advice or advocacy consistent with these Rules.</u>

1

The views expressed herein have not been approved by the House of Delegates or the Board of Governors of the American Bar Association and, accordingly, should not be construed as representing the policy of the American Bar Association.

# REVISED 109

30  Comment
31
32  [1] Lawyers are subject to discipline when they violate or attempt to violate the Rules of
33  Professional Conduct, knowingly assist or induce another to do so or do so through the acts of
34  another, as when they request or instruct an agent to do so on the lawyer's behalf. Paragraph (a),
35  however, does not prohibit a lawyer from advising a client concerning action the client is legally
36  entitled to take.
37
38  [2] Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses
39  involving fraud and the offense of willful failure to file an income tax return. However, some kinds
40  of offenses carry no such implication. Traditionally, the distinction was drawn in terms of offenses
41  involving "moral turpitude." That concept can be construed to include offenses concerning some
42  matters of personal morality, such as adultery and comparable offenses, that have no specific
43  connection to fitness for the practice of law. Although a lawyer is personally answerable to the
44  entire criminal law, a lawyer should be professionally answerable only for offenses that indicate
45  lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty,
46  breach of trust, or serious interference with the administration of justice are in that category. A
47  pattern of repeated offenses, even ones of minor significance when considered separately, can
48  indicate indifference to legal obligation.
49
50  [3] A lawyer who, in the course of representing a client, knowingly manifests by words or conduct,
51  bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation
52  or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the
53  administration of justice. Legitimate advocacy respecting the foregoing factors does not violate
54  paragraph (d). A trial judge's finding that peremptory challenges were exercised on a
55  discriminatory basis does not alone establish a violation of this rule.
56
57  [3] Discrimination and harassment by lawyers in violation of paragraph (g) undermines confidence
58  in the legal profession and the legal system. Such discrimination includes harmful verbal or
59  physical conduct that manifests bias or prejudice towards others because of their membership or
60  perceived membership in one or more of the groups listed in paragraph (g). Harassment includes
61  sexual harassment and derogatory or demeaning verbal or physical conduct towards a person who
62  is, or is perceived to be, a member of one of the groups. Sexual harassment includes unwelcome
63  sexual advances, requests for sexual favors, and other unwelcome verbal or physical conduct of a
64  sexual nature. The substantive law of antidiscrimination and anti-harassment statutes and case law
65  may guide application of paragraph (g).
66
67  [4] Conduct related to the practice of law includes representing clients; interacting with witnesses,
68  coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or
69  managing a law firm or law practice; and participating in bar association, business or social
70  activities in connection with the practice of law. Paragraph (g) does not prohibit conduct
71  undertaken to promote diversity. Lawyers may engage in conduct undertaken to promote diversity
72  and inclusion without violating this Rule by, for example, implementing initiatives aimed at

The views expressed herein have not been approved by the House of Delegates or the Board of Governors of the American Bar Association and, accordingly, should not be construed as representing the policy of the American Bar Association.

# REVISED 109

73  recruiting, hiring, retaining and advancing diverse employees or sponsoring diverse law student
74  organizations.
75
76  [5] Paragraph (g) does not prohibit legitimate advocacy that is material and relevant to factual or
77  legal issues or arguments in a representation. A trial judge's finding that peremptory challenges
78  were exercised on a discriminatory basis does not alone establish a violation of paragraph (g).  A
79  lawyer does not violate paragraph (g) by limiting the scope or subject matter of the lawyer's
80  practice or by limiting the lawyer's practice to members of underserved populations in
81  accordance with these Rules and other law.  A lawyer may charge and collect reasonable fees
82  and expenses for a representation.  Rule 1.5(a).  Lawyers also should be mindful of their
83  professional obligations under Rule 6.1 to provide legal services to those who are unable to pay,
84  and their obligation under Rule 6.2 not to avoid appointments from a tribunal except for good
85  cause.  *See* Rule 6.2(a), (b) and (c).  A lawyer's representation of a client does not constitute an
86  endorsement by the lawyer of the client's views or activities. *See* Rule 1.2(b).
87
88  [4] [6] A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief
89  that no valid obligation exists. The provisions of Rule 1.2(d) concerning a good faith challenge to
90  the validity, scope, meaning or application of the law apply to challenges of legal regulation of the
91  practice of law.
92
93  [5] [7] Lawyers holding public office assume legal responsibilities going beyond those of other
94  citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role
95  of lawyers. The same is true of abuse of positions of private trust such as trustee, executor,
96  administrator, guardian, agent and officer, director or manager of a corporation or other
97  organization.

**REVISED 109**

## REPORT

> *"Lawyers have a unique position in society as professionals responsible for making our society better. Our rules of professional conduct require more than mere compliance with the law. Because of our unique position as licensed professionals and the power that it brings, we are the standard by which all should aspire. Discrimination and harassment . . . is, and unfortunately continues to be, a problem in our profession and in society. Existing steps have not been enough to end such discrimination and harassment."*

ABA President Paulette Brown, February 7, 2016 public hearing on amendments to ABA Model Rule 8.4, San Diego, California.

### I.      Introduction and Background

The American Bar Association has long recognized its responsibility to represent the legal profession and promote the public's interest in equal justice for all. Since 1983, when the Model Rules of Professional Conduct ("Model Rules") were first adopted by the Association, they have been an invaluable tool through which the Association has met these dual responsibilities and led the way toward a more just, diverse and fair legal system. Lawyers, judges, law students and the public across the country and around the world look to the ABA for this leadership.

Since 1983, the Association has also spearheaded other efforts to promote diversity and fairness. In 2008 ABA President Bill Neukum led the Association to reformulate its objectives into four major "Goals" that were adopted by the House of Delegates.[1] Goal III is entitled, "Eliminate Bias and Enhance Diversity." It includes the following two objectives:

1.  Promote full and equal participation in the association, our profession, and the justice system by all persons.
2.  Eliminate bias in the legal profession and the justice system.

A year before the adoption of Goal III the Association had already taken steps to address the second Goal III objective. In 2007 the House of Delegates adopted revisions to the Model Code of Judicial Conduct to include Rule 2.3, entitled, "Bias, Prejudice and Harassment." This rule prohibits judges from speaking or behaving in a way that manifests, "bias or prejudice," and from engaging in harassment, "based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation." It also calls upon judges to require lawyers to refrain from these activities in proceedings before the court.[2] This current proposal now before the House will further implement the Association's Goal III objectives by placing a similar provision into the Model Rules for lawyers.

---

[1] ABA MISSION AND GOALS, http://www.americanbar.org/about_the_aba/aba-mission-goals.html (last visited May 9, 2016).

[2] Rule 2.3(C) of the ABA Model Code of Judicial Conduct reads: "A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others."

# REVISED 109

When the Model Rules were first adopted in 1983 they did not include any mention of or reference to bias, prejudice, harassment or discrimination. An effort was made in 1994 to correct this omission; the Young Lawyers Division and the Standing Committee on Ethics and Professional Responsibility (SCEPR") each proposed language to add a new paragraph (g) to Rule 8.4, "Professional Misconduct," to specifically identify bias and prejudice as professional misconduct. However, in the face of opposition these proposals were withdrawn before being voted on in the House. But many members of the Association realized that something needed to be done to address this omission from the Model Rules. Thus, four years later, in February 1998, the Criminal Justice Section and SCEPR developed separate proposals to add a new antidiscrimination provision into the Model Rules. These proposals were then combined into Comment [3] to Model Rule 8.4, which was adopted by the House at the Association's Annual Meeting in August 1998. This Comment [3] is discussed in more detail below. Hereinafter this Report refers to current Comment [3] to 8.4 as "the current provision."

It is important to acknowledge that the current provision was a necessary and significant first step to address the issues of bias, prejudice, discrimination and harassment in the Model Rules. But it should not be the last step for the following reasons. It was adopted before the Association adopted Goal III as Association policy and does not fully implement the Association's Goal III objectives. It was also adopted before the establishment of the Commission on Sexual Orientation and Gender Identity, one of the co-sponsors of this Resolution, and the record does not disclose the participation of any of the other Goal III Commissions—the Commission on Women in the Profession, Commission on Racial and Ethnic Diversity in the Profession, and the Commission on Disability Rights—that are the catalysts for these current amendments to the Model Rules.

Second, Comments are not Rules; they have no authority as such. Authority is found only in the language of the Rules. "The Comments are intended as guides to interpretation, but the text of each Rule is authoritative."[3]

Third, even if the text of the current provision were in a Rule it would be severely limited in scope: It applies (i) only to conduct by a lawyer that occurs in the course of representing a client, and (ii) *only* if such conduct is also determined to be "prejudicial to the administration of justice." As the Association's Goal III Commissions noted in their May 2014 letter to SCEPR:

> It [the current provision] addresses bias and prejudice only within the scope of legal representation and only when it is prejudicial to the administration of justice. This limitation fails to cover bias or prejudice in other professional capacities (including attorneys as advisors, counselors, and lobbyists) or other professional settings (such as law schools, corporate law departments, and employer-employee relationships within law firms). The comment also does not address harassment at all, even though the judicial rules do so.

In addition, despite the fact that Comments are not Rules, a false perception has developed over the years that the current provision is equivalent to a Rule. In fact, this is the only example in the Model Rules where a Comment is purported to "solve" an ethical issue that otherwise would require resolution through a Rule. Now—thirty-three years after the Model Rules were first

---

[3] MODEL RULES OF PROF'L CONDUCT, Preamble & Scope [21] (2016).

# REVISED 109

adopted and eighteen years after the first step was taken to address this issue—it is time to address this concern in the black letter of the Rules themselves. In the words of ABA President Paulette Brown: "The fact is that skin color, gender, age, sexual orientation, various forms of ability and religion still have a huge effect on how people are treated."[4] As the Recommendation and Report of the Oregon New Lawyers to the Assembly of the Young Lawyers Division at the Annual Meeting 2015 stated: "The current Model Rules of Professional Conduct (the "Model Rules"), however, do not yet reflect the monumental achievements that have been accomplished to protect clients and the public against harassment and intimidation."[5] The Association should now correct this omission. It is in the public's interest. It is in the profession's interest. It makes it clear that discrimination, harassment, bias and prejudice do not belong in conduct related to the practice of law.

## II.    Process

Over the past two years, SCEPR has publicly engaged in a transparent investigation to determine, first whether, and then how, the Model Rules should be amended to reflect the changes in law and practice since 1998. The emphasis has been on open discussion and publishing drafts of proposals to solicit feedback, suggestions and comments. SCEPR painstakingly took that feedback into account in subsequent drafts, until a final proposal was prepared.

This process began on May 13, 2014 when SCEPR received a joint letter from the Association's four Goal III Commissions: the Commission on Women in the Profession, Commission on Racial and Ethnic Diversity in the Profession, Commission on Disability Rights, and the Commission on Sexual Orientation and Gender Identify. The Chairs of these Commissions wrote to the SCEPR asking it to develop a proposal to amend the Model Rules of Professional Conduct to better address issues of harassment and discrimination and to implement Goal III. These Commissions explained that the current provision is insufficient because it "does not facially address bias, discrimination, or harassment and does not thoroughly address the scope of the issue in the legal profession or legal system."[6]

In the fall of 2014 a Working Group was formed under the auspices of SCEPR and chaired by immediate past SCEPR chair Paula Frederick, chief disciplinary counsel for the State Bar of Georgia. The Working Group members consisted of one representative each from SCEPR, the Association of Professional Responsibility Lawyers ("APRL"), the National Organization of Bar Counsel ("NOBC") and each of the Goal III Commissions. The Working Group held many teleconference meetings and two in-person meetings. After a year of work Chair Frederick

---

[4] Paulette Brown, *Inclusion Not Exclusion: Understanding Implicit Bias is Key to Ensuring An Inclusive Profession*, ABA J. (Jan. 1, 2016, 4:00 AM),
http://www.abajournal.com/magazine/article/inclusion_exclusion_understanding_implicit_bias_is_key_to_ensuring.
[5] In August 2015, unaware that the Standing Committee on Ethics and Professional Responsibility was researching this issue at the request of the Goal III Commissions, the Oregon State Bar New Lawyers Division drafted a proposal to amend the Model Rules of Professional Conduct to include an anti-harassment provision in the black letter. They submitted their proposal to the Young Lawyers Division Assembly for consideration. The Young Lawyers Division deferred on the Oregon proposal after learning of the work of the Standing Committee on Ethics and Professional Responsibility and the Goal III Commissions.
[6] Letter to Paula J. Frederick, Chair, ABA Standing Committee on Ethics and Professional Responsibility 2011-2014.

# REVISED 109

presented a memorandum of the Working Group's deliberations and conclusions to SCEPR in May 2015. In it, the Working Group concluded that there was a need to amend Model Rule 8.4 to provide a comprehensive antidiscrimination provision that was nonetheless limited to the practice of law, in the black letter of the rule itself, and not just in a Comment.

On July 8, 2015, after receipt and consideration of this memorandum, SCEPR prepared, released for comment and posted on its website a Working Discussion Draft of a proposal to amend Model Rule of Professional Conduct 8.4. SCEPR also announced and hosted an open invitation Roundtable discussion on this Draft at the Annual Meeting in Chicago on July 31, 2015.

At the Roundtable and in subsequent written communications SCEPR received numerous comments about the Working Discussion Draft. After studying the comments and input from the Roundtable, SCEPR published in December 2015 a revised draft of a proposal to add Rule 8.4(g), together with proposed new Comments to Rule 8.4. SCEPR also announced to the Association, including on the House of Delegates listserv, that it would host a Public Hearing at the Midyear Meeting in San Diego in February 2016.[7] Written comments were also invited.[8] President Brown and past President Laurel Bellows were among those who testified at the hearing in support of adding an antidiscrimination provision to the black letter Rule 8.4.

After further study and consideration SCEPR made substantial and significant changes to its proposal, taking into account the many comments it received on its earlier drafts.

### III.    Need for this Amendment to the Model Rules

As noted above, in August 1998 the American Bar Association House of Delegates adopted the current provision: Comment [3] to Model Rule of Professional Conduct 8.4, *Misconduct,* which explains that certain conduct may be considered "conduct prejudicial to the administration of justice," in violation of paragraph (d) to Rule 8.4, including when a lawyer knowingly manifests, by words or conduct, bias or prejudice against certain groups of persons, while in the course of representing a client *but only* when those words or conduct are also "prejudicial to the administration of justice."

Yet as the Preamble and Scope of the Model Rules makes clear, "Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules."[9] Thus, the ABA did not squarely and forthrightly address prejudice, bias, discrimination and harassment as would have been the case if this conduct were addressed in the text of a Model Rule. Changing the Comment to a black letter rule makes an important statement to our profession and the public that the profession does not tolerate prejudice, bias, discrimination and harassment. It also clearly puts lawyers on notice that refraining from such conduct is more than an illustration in a comment to a rule about the administration of justice. It is a specific requirement.

---

[7] *American Bar Association Public Hearing* (Feb. 7, 2016),
http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/aba_model_rule%208_4_c
omments/february_2016_public_hearing_transcript.authcheckdam.pdf.

[8] MODEL RULE OF PROFESSIONAL CONDUCT 8.4 DEC. 22 DRAFT PROPOSAL COMMENTS RECEIVED,
http://www.americanbar.org/groups/professional_responsibility/committees_commissions/ethicsandprofessionalresp
onsibility/modruleprofconduct8_4.html (last visited May 9, 2016).

[9] MODEL RULES OF PROF'L CONDUCT, Preamble & Scope [14] & [21] (2016).

# REVISED 109

Therefore, SCEPR, along with its co-sponsors, proposes amending ABA Model Rule of Professional Conduct 8.4 to further implement Goal III by bringing into the black letter of the Rules an antidiscrimination and anti-harassment provision. This action is consistent with other actions taken by the Association to implement Goal III and to eliminate bias in the legal profession and the justice system.

For example, in February 2015, the ABA House of Delegates adopted revised *ABA Standards for Criminal Justice: Prosecution Function and Defense Function,* which now include anti-bias provisions. These provisions appear in Standards 3-1.6 of the Prosecution Function Standards, and Standard 4.16 of the Defense Function Standards.[10] The Standards explain that prosecutors and defense counsel should not, "manifest or exercise, by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, gender identity or socioeconomic status." This statement appears in the black letter of the Standards, not in a comment. And, as noted above, one year before the adoption of Goal III, the Association directly addressed prejudice, bias and harassment in the black letter of Model Rule 2.3 in the 2007 Model Code of Judicial Conduct.

Some opponents to bringing an antidiscrimination and anti-harassment provision into the black letter of the Model Rules have suggested that the amendment is not necessary—that the current provision provides the proper level of guidance to lawyers. Evidence from the ABA and around the country suggests otherwise. For example:

- Twenty-five jurisdictions have not waited for the Association to act. They have already concluded that the current Comment to an ABA Model Rule does not adequately address discriminatory or harassing behavior by lawyers. As a result, they have adopted antidiscrimination and/or anti-harassment provisions into the black letter of their rules of professional conduct.[11] By contrast, only thirteen jurisdictions have decided to address this

---

[10] ABA FOURTH EDITION CRIMINAL JUSTICE STANDARDS FOR THE PROSECUTION FUNCTION, http://www.americanbar.org/groups/criminal_justice/standards.html (last visited May 9, 2016); ABA FOURTH EDITION CRIMINAL JUSTICE STANDARDS FOR THE DEFENSE FUNCTION, http://www.americanbar.org/groups/criminal_justice/standards/DefenseFunctionFourthEdition.html (last visited May 9, 2016).

[11] *See* California Rule of Prof'l Conduct 2-400; Colorado Rule of Prof'l Conduct 8.4(g); Florida Rule of Prof'l Conduct 4-8.4(d); Idaho Rule of Prof'l Conduct 4.4 (a); Illinois Rule of Prof'l Conduct 8.4(j); Indiana Rule of Prof'l Conduct 8.4(g); Iowa Rule of Prof'l Conduct 8.4(g); Maryland Lawyers' Rules of Prof'l Conduct 8.4(e); Massachusetts Rule of Prof'l Conduct 3.4(i); Michigan Rule of Prof'l Conduct 6.5; Minnesota Rule of Prof'l Conduct 8.4(h); Missouri Rule of Prof'l Conduct 4-8.4(g); Nebraska Rule of Prof'l Conduct 8.4(d); New Jersey Rule of Prof'l Conduct 8.4(g); New Mexico Rule of Prof'l Conduct 16-300; New York Rule of Prof'l Conduct 8.4(g); North Dakota Rule of Prof'l Conduct 8.4(f); Ohio Rule of Prof'l Conduct 8.4(g); Oregon Rule of Prof'l Conduct 8.4(a)(7); Rhode Island Rule of Prof'l Conduct 8.4(d); Texas Rule of Prof'l Conduct 5.08; Vermont Rule of Prof'l Conduct 8.4(g); Washington Rule of Prof'l Conduct 8.4(g); Wisconsin Rule of Prof'l Conduct 8.4(i); D.C. Rule of Prof'l Conduct 9.1.

# REVISED 109

issue in a Comment similar to the current Comment in the Model Rules.[12] Fourteen states do not address this issue at all in their Rules of Professional Conduct.[13]

- As noted above, the ABA has already brought antidiscrimination and anti-harassment provisions into the black letter of other conduct codes like the *ABA Standards for Criminal Justice: Prosecution Function and Defense Function* and the 2007 ABA Model Code of Judicial Conduct, Rule 2.3.
- The Florida Bar's Young Lawyer's Division reported this year that in a survey of its female members, 43% of respondents reported they had experienced gender bias in their career.[14]
- The supreme courts of the jurisdictions that have black letter rules with antidiscrimination and anti-harassment provisions have not seen a surge in complaints based on these provisions. Where appropriate, they are disciplining lawyers for discriminatory and harassing conduct.[15]

## IV.    Summary of Proposed Amendments

### A.  Prohibited Activity

SCEPR's proposal adds a new paragraph (g) to Rule 8.4, to prohibit conduct by a lawyer related to the practice of law that harasses or discriminates against members of specified groups. New Comment [3] defines the prohibited behavior.

---

[12] *See* Arizona Rule of Prof'l Conduct 8.4, cmt.; Arkansas Rule of Prof'l Conduct 8.4, cmt. [3]; Connecticut Rule of Prof'l Conduct 8.4, Commentary; Delaware Lawyers' Rule of Prof'l Conduct 8.4, cmt. [3]; Idaho Rule of Prof'l Conduct 8.4, cmt. [3]; Maine Rule of Prof'l Conduct 8.4, cmt. [3]; North Carolina Rule of Prof'l Conduct 8.4, cmt. [5]; South Carolina Rule of Prof'l Conduct 8.4, cmt. [3]; South Dakota Rule of Prof'l Conduct 8.4, cmt. [3]; Tennessee Rule of Prof'l Conduct 8.4, cmt. [3]; Utah Rule of Prof'l Conduct 8.4, cmt. [3]; Wyoming Rule of Prof'l Conduct 8.4, cmt. [3]; West Virginia Rule of Prof'l Conduct 8.4, cmt. [3].

[13] The states that do not address this issue in their rules include Alabama, Alaska, Georgia, Hawaii, Kansas, Kentucky, Louisiana, Mississippi, Montana, Nevada, New Hampshire, Oklahoma, Pennsylvania, and Virginia.

[14] The Florida Bar, *Results of the 2015 YLD Survey on Women in the Legal Profession* (Dec. 2015), http://www.floridabar.org/TFB/TFBResources.nsf/Attachments/13AC70483401E7C785257F640064CF63/$FILE/RESULTS%20OF%202015%20SURVEY.pdf?OpenElement.

[15] In 2015 the Iowa Supreme Court disciplined a lawyer for sexually harassing four female clients and one female employee. *In re* Moothart, 860 N.W.2d 598 (2015). The Wisconsin Supreme Court in 2014 disciplined a district attorney for texting the victim of domestic abuse writing that he wished the victim was not a client because she was "a cool person to know." On one day, the lawyer sent 19 text messages asking whether the victim was the "kind of girl who likes secret contact with an older married elected DA  . . . the riskier the better." One day later, the lawyer sent the victim 8 text messages telling the victim that she was pretty and beautiful and that he had a $350,000 home. *In re* Kratz, 851 N.W.2d 219 (2014). The Minnesota Supreme Court in 2013 disciplined a lawyer who, while acting as an adjunct professor and supervising law students in a clinic, made unwelcome comments about the student's appearance; engaged in unwelcome physical contact of a sexual nature with the student; and attempted to convince the student to recant complaints she had made to authorities about him. *In re* Griffith, 838 N.W.2d 792 (2013). The Washington Supreme Court in 2012 disciplined a lawyer, who was representing his wife and her business in dispute with employee who was Canadian.  The lawyer sent two ex parte communications to the trial judge asking questions like: are you going to believe an alien or a U.S. citizen? *In re* McGrath, 280 P.3d 1091 (2012).  The Indiana Supreme Court in 2009 disciplined a lawyer who, while representing a father at a child support modification hearing, made repeated disparaging references to the facts that the mother was not a U.S. citizen and was receiving legal services at no charge.  *In re* Campiti, 937 N.E.2d 340 (2009).  The Indiana Supreme Court in 2005 disciplined a lawyer who represented a husband in an action for dissolution of marriage.  Throughout the custody proceedings the lawyer referred to the wife being seen around town in the presence of a "black male" and that such association was placing the children in harm's way.  During a hearing, the lawyer referred to the African-American man as "the black guy" and "the black man."  *In re* Thomsen, 837 N.E.2d 1011 (2005).

# REVISED 109

Proposed new black letter Rule 8.4(g) does not use the terms "manifests . . . bias or prejudice"[16] that appear in the current provision. Instead, the new rule adopts the terms "harassment and discrimination" that already appear in a large body of substantive law, antidiscrimination and anti-harassment statutes, and case law nationwide and in the Model Judicial Code. For example, in new Comment [3], "harassment" is defined as including "sexual harassment and derogatory or demeaning verbal or physical conduct . . . . of a sexual nature." This definition is based on the language of Rule 2.3(C) of the ABA Model Code of Judicial Conduct and its Comment [4], adopted by the House in 2007 and applicable to lawyers in proceedings before a court.[17]

Discrimination is defined in new Comment [3] as "harmful verbal or physical conduct that manifests bias or prejudice towards others." This is based in part on ABA Model Code of Judicial Conduct, Rule 2.3, Comment [3], which notes that harassment, one form of discrimination, includes "verbal or physical conduct," and on the current rule, which prohibits lawyers from manifesting bias or prejudice while representing clients.

Proposed new Comment [3] also explains, "The substantive law of antidiscrimination and anti-harassment statutes and case law may guide application of paragraph (g)." This provision makes clear that the substantive law on antidiscrimination and anti-harassment is not necessarily dispositive in the disciplinary context. Thus, conduct that has a discriminatory impact alone, while possibly dispositive elsewhere, would not necessarily result in discipline under new Rule 8.4(g). But, substantive law regarding discrimination and harassment can also guide a lawyer's conduct. As the Preamble to the Model Rules explains, "A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs."[18]

## B. Knowledge Requirement

SCEPR has received substantial and helpful comment that the absence of a "mens rea" standard in the rule would provide inadequate guidance to lawyers and disciplinary authorities. After consultation with cosponsors, SCEPR concluded that the alternative standards "knows or reasonably should know" should be included in the new rule. Consequently, revised Rule 8.4(g) would make it professional misconduct for a lawyer to "engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination…."

Both "knows" and "reasonably should know" are defined in the Model Rules. Rule 1.0(f) defines "knows" to denote "actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances." The inference to be made in this situation is not what the lawyer should or might have known, but whether one can infer from the circumstances what the lawyer actually knew. Thus, this is a subjective standard; it depends on ascertaining the lawyer's actual state of mind. The evidence, or "circumstances," may or may not support an inference about what the lawyer knew about his or her conduct.

---

[16] The phrase, "manifestations of bias or prejudice" is utilized in proposed new Comment [3].

[17] ABA Model Code of Judicial Conduct Rule 2.3, Comment [4] reads: "Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome."

[18] MODEL RULES OF PROF'L CONDUCT, Preamble & Scope [5] (2016).

# REVISED 109

Rule 1.0(j) defines "reasonably should know" when used in reference to a lawyer to denote "that a lawyer of reasonable prudence and competence would ascertain the matter in question." The test here is whether a lawyer of reasonable prudence and competence would have comprehended the facts in question. Thus, this is an objective standard; it does not depend on the particular lawyer's actual state of mind. Rather, it asks what a lawyer of reasonable prudence and competence would have comprehended from the circumstances presented.

SCEPR believes that any standard for the conduct to be addressed in Rule 8.4(g) must include as alternatives, both the "knowing" and "reasonably should know" standards as defined in Rule 1.0. As noted, one standard is a subjective and the other is objective. Thus, they do not overlap; and one cannot serve as a substitute for the other. Taken together, these two standards provide a safeguard for lawyers against overaggressive prosecutions for conduct they could not have known was harassment or discrimination, as well as a safeguard against evasive defenses of conduct that any reasonable lawyer would have known is harassment or discrimination.

There is also ample precedent for using the "knows or reasonably should know" formulation in proposed Rule 8.4(g). It has been part of the Model Rules since 1983. Currently, it is used in Rule 1.13(f), Rule 2.3(b), Rule 2.4(b), Rule 3.6(a), Rule 4.3 [twice] and Rule 4.4(b).

"Harassment" and "discrimination" are terms that denote actual conduct. As explained in proposed new Comment [3], both "harassment" and "discrimination" are defined to include verbal and physical conduct against others. The proposed rule would not expand on what would be considered harassment and discrimination under federal and state law. Thus, the terms used in the rule— "harassment" and "discrimination"—by their nature incorporate a measure of intentionality while also setting a minimum standard of acceptable conduct. This does not mean that complainants should have to establish their claims in civil courts before bringing disciplinary claims. Rather, it means that the rule intends that these words have the meaning established at law.

The addition of "knows or reasonably should know" as a part of the standard for the lawyer supports the rule's focus on conduct and resolves concerns of vagueness or uncertainty about what behavior is expected of the lawyer.

## C. Scope of the Rule

Proposed Rule 8.4(g) makes it professional misconduct for a lawyer to harass or discriminate while engaged in "conduct related to the practice of law" when the lawyer knew or reasonably should have known the conduct was harassment or discrimination. The proposed rule is constitutionally limited; it does not seek to regulate harassment or discrimination by a lawyer that occurs outside the scope of the lawyer's practice of law, nor does it limit a lawyer's representational role in our legal system. It does not limit the scope of the legal advice a lawyer may render to clients, which is addressed in Model Rule 1.2. It permits legitimate advocacy. It does not change the circumstances under which a lawyer may accept, decline or withdraw from a representation. To the contrary, the proposal makes clear that Model Rule 1.16 addresses such conduct. The proposal also does not limit a lawyer's ability to charge and collect a reasonable fee for legal services, which remains governed by Rule 1.5.

Note also that while the provision in current Comment [3] limits the scope of Rule 8.4(d) to situations where the lawyer is representing clients, Rule 8.4(d) itself is not so limited. In fact, lawyers have been disciplined under Rule 8.4(d) for conduct that does not involve the representation of clients.[19]

Some commenters expressed concern that the phrase, "conduct related to the practice of law," is vague. "The definition of the practice of law is established by law and varies from one jurisdiction to another."[20] The phrase "conduct related to" is elucidated in the proposed new Comments and is consistent with other terms and phrases used in the Rules that have been upheld against vagueness challenges.[21] The proposed scope of Rule 8.4(g) is similar to the scope of existing antidiscrimination provisions in many states.[22]

Proposed new Comment [4] explains that conduct related to the practice of law includes, "representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or social activities *in connection with the practice of law*." (Emphasis added.) The nexus of the conduct regulated by the rule is that it is conduct lawyers are permitted or required to engage in because of their work as a lawyer.

The scope of proposed 8.4(g) is actually narrower and more limited than is the scope of other Model Rules. "[T]here are Rules that apply to lawyers who are not active in the practice of law or to practicing lawyers even when they are acting in a nonprofessional capacity."[23] For example, paragraph (c) to Rule 8.4 declares that it is professional misconduct for a lawyer to engage in conduct "involving dishonesty, fraud, deceit or misrepresentation." Such conduct need not be

---

[19] *See, e.g.*, Neal v. Clinton, 2001 WL 34355768 (Ark. Cir. Ct. Jan. 19, 2001).

[20] MODEL RULES OF PROF'L CONDUCT R. 5.5 cmt. [2].

[21] *See, e.g.*, Grievance Adm'r v. Fieger, 719 N.E.2d 123 (Mich. 2016) (rejecting a vagueness challenge to rules requiring lawyers to "treat with courtesy and respect all person involved in the legal process" and prohibiting "undignified or discourteous conduct toward [a] tribunal"); Chief Disciplinary Counsel v. Zelotes, 98 A.3d 852 (Conn. 2014) (rejecting a vagueness challenge to "conduct prejudicial to the administration of justice"); Florida Bar v. Von Zamft, 814 So. 2d 385 (2002); *In re* Anonymous Member of South Carolina Bar, 709 S.E.2d 633 (2011) (rejecting a vagueness challenge to the following required civility clause: "To opposing parties and their counsel, I pledge fairness, integrity, and civility . . . . "); Canatella v. Stovitz, 365 F.Supp.2d 1064 (N.D. Cal. 2005) (rejecting a vagueness challenge to these terms regulating lawyers in the California Business and Profession Code: "moral turpitude," "dishonesty," and "corruption"); Motley v. Virginia State Bar, 536 S.E.2d 97 (Va. 2000) (rejecting a vagueness challenge to a rule requiring lawyers to keep client's "reasonably informed about matters in which the lawyer's services are being rendered"); *In re* Disciplinary Proceedings Against Beaver, 510 N.W.2d 129 (Wis. 1994) (rejecting a vagueness challenge to a rule against "offensive personality").

[22] *See* Florida Rule of Professional Conduct 4-8.4(d) which addresses conduct "in connection with the practice of law"; Indiana Rule of Prof'l Conduct 8.4(g) which addresses conduct a lawyer undertakes in the lawyer's "professional capacity"; Iowa Rule of Prof'l Conduct 8.4(g) which addresses conduct "in the practice of law"; Maryland Lawyers' Rules of Prof'l Conduct 8.4(e) with the scope of "when acting in a professional capacity"; Minnesota Rule of Prof'l Conduct 8.4(h) addressing conduct "in connection with a lawyer's professional activities"; New Jersey Rule of Prof'l Conduct 8.4(g) addressing when a lawyer's conduct is performed "in a professional capacity"; New York Rule of Prof'l Conduct 8.4(g) covering conduct "in the practice of law"; Ohio Rule of Prof'l Conduct 8.4(g) addressing when lawyer "engage, in a professional capacity, in conduct"; Washington Rule of Prof'l Conduct 8.4(g) covering "connection with the lawyer's professional activities"; and Wisconsin Rule of Prof'l Conduct 8.4(i) with a scope of conduct "in connection with the lawyer's professional activities."

[23] MODEL RULES OF PROF'L CONDUCT, Preamble [3].

**REVISED 109**

related to the lawyer's practice of law, but may reflect adversely on the lawyer's fitness to practice law or involve moral turpitude.[24]

However, insofar as proposed Rule 8.4(g) applies to "conduct related to the practice of law," it is broader than the current provision. This change is necessary. The professional roles of lawyers include conduct that goes well beyond the representation of clients before tribunals. Lawyers are also officers of the court, managers of their law practices and public citizens having a special responsibility for the administration justice.[25] Lawyers routinely engage in organized bar-related activities to promote access to the legal system and improvements in the law. Lawyers engage in mentoring and social activities related to the practice of law. And, of course, lawyers are licensed by a jurisdiction's highest court with the privilege of practicing law. The ethics rules should make clear that the profession will not tolerate harassment and discrimination in any conduct related to the practice of law.

Therefore, proposed Comment [4] explains that operating or managing a law firm is conduct related to the practice of law. This includes the terms and conditions of employment. Some commentators objected to the inclusion of workplace harassment and discrimination within the scope of the Rule on the ground that it would bring employment law into the Model Rules. This objection is misplaced. First, in at least two jurisdictions that have adopted an antidiscrimination Rule, the provision is focused entirely on employment and the workplace.[26] Other jurisdictions have also included workplace harassment and discrimination among the conduct prohibited in their Rules.[27] Second, professional misconduct under the Model Rules already applies to substantive areas of the law such as fraud and misrepresentation. Third, that part of the management of a law practice that includes the solicitation of clients and advertising of legal services is already subjects of regulation under the Model Rules.[28] And fourth, this would not be the first time the House of Delegates adopted policy on the terms and conditions of lawyer employment. In 2007, the House of Delegates adopted as ABA policy a recommendation that law firms should discontinue mandatory age-based retirement polices,[29] and earlier, in 1992, the House recognized that "sexual harassment is a serious problem in all types of workplace settings, including the legal profession, and constitutes a discriminatory and unprofessional practice that must not be tolerated in any work

---

[24] MODEL RULES OF PROF'L CONDUCT R. 8.4 cmt. [2].

[25] MODEL RULES OF PROF'L CONDUCT, Preamble [1] & [6].

[26] *See* D.C. Rule of Prof'l Conduct 9.1 & Vermont Rule of Prof'l Conduct 8.4(g). The lawyer population for Washington DC is 52,711 and Vermont is 2,326. Additional lawyer demographic information is available on the American Bar Association website: http://www.americanbar.org/resources_for_lawyers/profession_statistics.html.

[27] Other jurisdictions have specifically included workplace harassment and discrimination among the conduct prohibited in their Rules. Some jurisdictions that have included workplace harassment and discrimination as professional misconduct require a prior finding of employment discrimination by another tribunal. *See* California Rule of Prof'l Conduct 2-400 (lawyer population 167,690); Illinois Rule of Prof'l conduct 8.4(j) (lawyer population 63,060); New Jersey Rule of Prof'l Conduct 8.4(g) (lawyer population 41,569); and New York Rule of Prof'l Conduct 8.4(g) (lawyer population 175,195). Some jurisdictions that have included workplace harassment and discrimination as professional misconduct require that the conduct be unlawful. S*ee, e.g.*, Iowa Rule of Prof'l Conduct 8.4(g) (lawyer population of 7,560); Ohio Rule of Prof'l Conduct 8.4(g) (lawyer population 38,237); and Minnesota Rule of Prof'l Conduct 8.4(h) (lawyer population 24,952). Maryland has included workplace harassment and discrimination as professional misconduct when the conduct is prejudicial to the administration of justice. Maryland Lawyers' Rules of Prof'l Conduct 8.4(e), cmt. [3] (lawyer population 24,142).

[28] *See* MODEL RULES OF PROFESSIONAL CONDUCT R. 7.1 - 7.6.

[29] ABA HOUSE OF DELEGATES RESOLUTION 10A (Aug. 2007).

10

**REVISED 109**

environment."[30] When such conduct is engaged in by lawyers it is appropriate and necessary to identify it for what it is: professional misconduct.

This Rule, however, is not intended to replace employment discrimination law. The many jurisdictions that already have adopted similar rules have not experienced a mass influx of complaints based on employment discrimination or harassment. There is also no evidence from these jurisdictions that disciplinary counsel became the tribunal of first resort for workplace harassment or discrimination claims against lawyers. This Rule would not prohibit disciplinary counsel from deferring action on complaints, pending other investigations or actions.

Equally important, the ABA should not adopt a rule that would apply to lawyers acting outside of their own law firms or law practices but not to lawyers acting within their offices, toward each other and subordinates. Such a dichotomy is unreasonable and unsupportable.

As also explained in proposed new Comment [4], conduct related to the practice of law includes activities such as law firm dinners and other nominally social events at which lawyers are present solely because of their association with their law firm or in connection with their practice of law. SCEPR was presented with substantial anecdotal information that sexual harassment takes place at such events. "Conduct related to the practice of law" includes these activities.

Finally with respect to the scope of the rule, some commentators suggested that because legal remedies are available for discrimination and harassment in other forums, the bar should not permit an ethics claim to be brought on that basis until the claim has first been presented to a legal tribunal and the tribunal has found the lawyer guilty of or liable for harassment or discrimination.

SCEPR has considered and rejected this approach for a number of reasons. Such a requirement is without precedent in the Model Rules. There is no such limitation in the current provision. Legal ethics rules are not dependent upon or limited by statutory or common law claims. The ABA takes pride in the fact that "the legal profession is largely self-governing."[31] As such, "a lawyer's failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process," not the civil legal system.[32] The two systems run on separate tracks.

The Association has never before required that a party first invoke the civil legal system before filing a grievance through the disciplinary system. In fact, as a self-governing profession we have made it clear that "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached."[33] Thus, legal remedies are available for conduct, such as fraud, deceit or misrepresentation, which also are prohibited by paragraph (c) to Rule 8.4, but a claimant is not required as a condition of filing a grievance based on fraud, deceit or misrepresentation to have brought and won a civil action against the respondent lawyer, or for the lawyer to have been charged with and convicted

---

[30] ABA HOUSE OF DELEGATES RESOLUTION 117 (Feb. 1992).
[31] MODEL RULES OF PROFESSIONAL CONDUCT, Preamble & Scope [10].
[32] MODEL RULES OF PROFESSIONAL CONDUCT, Preamble & Scope [19].
[33] MODEL RULES OF PROFESSIONAL CONDUCT, Preamble & Scope [20].

of a crime.[34] To now impose such a requirement, only for claims based on harassment and discrimination, would set a terrible precedent and send the wrong message to the public.

In addition, the Model Rules of Professional Conduct reflect ABA policy. Since 1989, the ABA House of Delegates has adopted policies promoting the equal treatment of all persons regardless of sexual orientation or gender identity.[35] Many states, however, have not extended protection in areas like employment to lesbian, gay, or transgender persons.[36] A Model Rule should not be limited by such restrictions that do not reflect ABA policy. Of course, states and other jurisdictions may adapt ABA policy to meet their individual and particular circumstances.

### D. Protected Groups

New Rule 8.4(g) would retain the groups protected by the current provision.[37] In addition, new 8.4(g) would also include "ethnicity," "gender identity," and "marital status." The antidiscrimination provision in the ABA Model Code of Judicial Conduct, revised and adopted by the House of Delegates in 2007, already requires judges to ensure that lawyers in proceedings before the court refrain from manifesting bias or prejudice and from harassing another based on that person's marital status and ethnicity.  The drafters believe that this same prohibition also should be applicable to lawyers in conduct related to the practice of law not merely to lawyers in proceedings before the court.

"Gender identity" is added as a protected group at the request of the ABA's Goal III Commissions. As used in the Rule this term includes "gender expression", which is a form of gender identity. These terms encompass persons whose current gender identity and expression are different from their designations at birth.[38] The Equal Employment Opportunities Commission interprets Title VII as prohibiting discrimination against employees on the basis of sexual orientation and gender identity.[39] In 2015, the ABA House adopted revised Criminal Justice Standards for the Defense Function and the Prosecution Function. Both sets of Standards explains that defense counsel and prosecutors should not manifest bias or prejudice based on another's gender identity. To ensure notice to lawyers and to make these provisions more parallel, the Goal III Commission on Sexual

---

[34] *E.g.*, People v. Odom, 941 P.2d 919 (Colo. 1997) (lawyer disciplined for committing a crime for which he was never charged).

[35] A list of ABA policies supporting the expansion of civil rights to and protection of persons based on their sexual orientation and gender identity can be found here:
http://www.americanbar.org/groups/sexual_orientation/policy.html.

[36] For a list of states that have not extended protection in areas like employment to LGBT individuals see:
https://www.aclu.org/map/non-discrimination-laws-state-state-information-map.

[37] Some commenters advised eliminating references to any specific groups from the Rule. SCEPR concluded that this would risk including within the scope of the Rule appropriate distinctions that are properly made in professional life. For example, a law firm or lawyer may display "geographic bias" by interviewing for employment only persons who have expressed a willingness to relocate to a particular state or city. It was thought preferable to specifically identify the groups to be covered under the Rule.

[38] The U.S. Office of Personnel Management Diversity & Inclusion Reference Materials defines gender identity as "the individual's internal sense of being male or female. The way an individual expresses his or her gender identity is frequently called 'gender expression,' and may or may not conform to social stereotypes associated with a particular gender." *See Diversity & Inclusion Reference* Materials, UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, https://www.opm.gov/policy-data-oversight/diversity-and-inclusion/reference-materials/gender-identity-guidance/ (last visited May 9, 2016).

[39] https://www.eeoc.gov/eeoc/newsroom/wysk/enforcement_protections_lgbt_workers.cfm

12

# REVISED 109

Orientation and Gender Identity recommended that gender identity be added to the black letter of paragraph (g). New Comment [3] notes that applicable law may be used as a guide to interpreting paragraph (g). Under the Americans with Disabilities Act discrimination against persons with disabilities includes the failure to make the reasonable accommodations necessary for such person to function in a work environment.[40]

Some commenters objected to retaining the term "socioeconomic status" in new paragraph (g). This term is included in the current provision and also is in the Model Code of Judicial Conduct. An Indiana disciplinary case, *In re Campiti*, 937 N.E.2d 340 (2009), provides guidance as to the meaning of the term. In that matter, a lawyer was reprimanded for disparaging references he made at trial about a litigant's socioeconomic status: the litigant was receiving free legal services. SCEPR has found no instance where this term in an ethics rule has been misused or applied indiscriminately in any jurisdiction. SCEPR concluded that the unintended consequences of removing this group would be more detrimental than the consequences of keeping it in.

Discrimination against persons based on their source of income or acceptance of free or low-cost legal services would be examples of discrimination based on socioeconomic status. However, new Comment [5] makes clear that the Rule does not limit a lawyer's ability to charge and collect a reasonable fee and reimbursement of expenses, nor does it affect a lawyer's ability to limit the scope of his or her practice.

SCEPR was concerned, however, that this Rule not be read as undermining a lawyer's pro bono obligations or duty to accept court-appointed clients. Therefore, proposed Comment [5] does encourage lawyers to be mindful of their professional obligations under Rule 6.1 to provide legal services to those who are unable to pay, and their obligation under Rule 6.2 to not avoid appointments from a tribunal except for "good cause."

### E. Promoting Diversity

Proposed new Comment [4] to Rule 8.4 makes clear that paragraph (g) does not prohibit conduct undertaken by lawyers to promote diversity. As stated in the first Goal III Objective, the Association is committed to promoting full and equal participation in the Association, our profession and the justice system by all persons. According to the ABA Lawyer Demographics for 2016, the legal profession is 64% male and 36% female.[41] The most recent figures for racial demographics are from the 2010 census showing 88% White, 5% Black, 4% Hispanic, and 3% Asian Pacific American, with all other ethnicities less than one percent.[42] Goal III guides the ABA toward greater diversity in our profession and the justice system, and Rule 8.4(g) seeks to further that goal.

---

[40]A reasonable accommodation is a modification or adjustment to a job, the work environment, or the way things usually are done that enables a qualified individual with a disability to enjoy an equal employment opportunity. Examples of reasonable accommodations include making existing facilities accessible; job restructuring; part-time or modified work schedules; acquiring or modifying equipment; changing tests, training materials, or policies; providing qualified readers or interpreters; and reassignment to a vacant position.

[41] American Bar Association, *Lawyer Demographics Year 2016* (2016),
http://www.americanbar.org/content/dam/aba/administrative/market_research/lawyer-demographics-tables-2016.authcheckdam.pdf.

[42] *Id.*

REVISED 109

### F. How New Rule 8.4(g) Affects Other Model Rules of Professional Conduct

When SCEPR released a draft proposal in December 2015 to amend Model Rule 8.4, some commenters expressed concern about how proposed new Rule 8.4(g) would affect other Rules of Professional Conduct. As a result, SCEPR's proposal to create new Rule 8.4(g) now includes a discussion of its effect on certain other Model Rules.

For example, commenters questioned how new Rule 8.4(g) would affect a lawyer's ability to accept, refuse or withdraw from a representation. To make it clear that proposed new Rule 8.4(g) is not intended to change the ethics rules affecting those decisions, the drafters included in paragraph (g) a sentence from Washington State's Rule 8.4(g), which reads: "This Rule does not limit the ability of a lawyer to accept, decline, or withdraw from a representation in accordance with Rule 1.16." Rule 1.16 defines when a lawyer shall and when a lawyer may decline or withdraw from a representation. Rule 1.16(a) explains that a lawyer shall not represent a client or must withdraw from representing a client if: "(1) the representation will result in violation of the rules of professional conduct or other law." Examples of a representation that would violate the Rules of Professional Conduct are representing a client when the lawyer does not have the legal competence to do so (*See* Rule 1.1) and representing a client with whom the lawyer has a conflict of interest (*See* Rules 1.7, 1.9, 1.10, 1.11, and 1.12).

To address concerns that this proposal would cause lawyers to reject clients with unpopular views or controversial positions, SCEPR included in proposed new Comment [5] a statement reminding lawyers that a lawyer's representation of a client does not constitute an endorsement by the lawyer of the client's views or activities, with a citation to Model Rule 1.2(b). That Rule reads: "A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities."

Also, with respect to this rule as with respect to all the ethics Rules, Rule 5.1 provides that a managing or supervisory lawyer shall make reasonable efforts to insure that the lawyer's firm or practice has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct. Such efforts will build upon efforts already being made to give reasonable assurance that lawyers in a firm conform to current Rule 8.4(d) and Comment [3] and are not manifesting bias or prejudice in the course of representing a client that is prejudicial to the administration of justice.

SCEPR has also agreed to develop a formal Ethics Opinion discussing Model Rule 5.3 and its relationship to the other ethics rules, including this new Rule.

### G. Legitimate Advocacy

Paragraph (g) includes the following sentence: "This paragraph does not preclude legitimate advice or advocacy consistent with these Rules." The sentence recognizes the balance in the Rules that exists presently in current Comment [3] to Rule 8.4. It also expands the current sentence in the existing comment by adding the word "advice," as the scope of new Rule 8.4(g) is now not limited to "the course of representing a client" but includes "conduct related to the practice of law."

14

### H. Peremptory Challenges

The following sentence appears in the current provision: "A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this rule." SCEPR and the other cosponsors agreed to retain the sentence in the comments.

### V.    CONCLUSION

As noted at the beginning of this Report the Association has a responsibility to lead the profession in promoting equal justice under law. This includes working to eliminate bias in the legal profession. In 2007 the Model Judicial Code was amended to do just that. Twenty-five jurisdictions have also acted to amend their rules of professional conduct to address this issue directly. It is time to follow suit and amend the Model Rules. The Association needs to address such an important and substantive issue in a Rule itself, not just in a Comment.

Proposed new paragraph (g) to Rule 8.4 is a reasonable, limited and necessary addition to the Model Rules of Professional Conduct. It will make it clear that it is professional misconduct to engage in conduct that the lawyer knows or reasonably should know constitutes harassment or discrimination while engaged in conduct related to the practice of law. And as has already been shown in the jurisdictions that have such a rule, it will not impose an undue burden on lawyers.

As the premier association of attorneys in the world, the ABA should lead antidiscrimination, anti-harassment, and diversity efforts not just in the courtroom, but wherever it occurs in conduct by lawyers related to the practice of law. The public expects no less of us. Adopting the Resolution will advance this most important goal.

Respectfully submitted,

Myles V. Lynk, Chair
Standing Committee on Ethics and Professional Responsibility
August 2016

**Attachment C**



*Your Other Partner*

## REPORT OF THE PENNSYLVANIA BAR ASSOCIATION
## COMMITTEE ON LEGAL ETHICS AND PROFESSIONAL RESPONSIBILITY

The PBA Legal Ethics and Professional Responsibility Committee (Ethics Committee) supports the Amended Recommendation and Report of the PBA Women in the Profession Commission (WIP) under House Agenda H "Revised." WIP's Amended Recommendation and Report requests that the Pennsylvania Bar Association recommend that the Supreme Court of Pennsylvania adopt an amended version of Model Rule 8.4(g) and its accompanying Comments as follows:

It is professional misconduct for a lawyer to:

. . .

(g) engage in conduct that the lawyer knows ~~or reasonably should know~~ is harassment or discrimination [as those terms are defined in applicable federal, state or local statute or ordinance,] on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

**Comment:**

. . .

[3] Discrimination and harassment by lawyers in violation of paragraph (g) undermine confidence in the legal profession and the legal system. Such discrimination includes harmful verbal or physical conduct that manifests bias or prejudice towards others. Harassment includes sexual harassment and derogatory or demeaning verbal or physical conduct. Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other unwelcome verbal or physical conduct of a sexual nature. The substantive law of antidiscrimination and anti-harassment statutes and case law may guide application of paragraph (g). [This Rule does not serve to expand upon or limit a claimant's

available rights or remedies under other law governing harassment or discrimination.]

[4] Conduct related to the practice of law includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or social activities in connection with the practice of law. Lawyers may engage in conduct undertaken to promote diversity and inclusion without violating this Rule by, for example, implementing initiatives aimed at recruiting, hiring, retaining and advancing diverse employees or sponsoring diverse law student organizations.

[5] A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of paragraph (g). A lawyer does not violate paragraph (g) by limiting the scope or subject matter of the lawyer's practice or by limiting the lawyer's practice to members of underserved populations in accordance with these Rules and other law. A lawyer may charge and collect reasonable fees and expenses for a representation. Rule 1.5(a). Lawyers also should be mindful of their professional obligations under Rule 6.1 to provide legal services to those who are unable to pay, and their obligation under Rule 6.2 not to avoid appointments from a tribunal except for good cause. See Rule 6.2(a), (b) and (c). [This Rule does not require a lawyer to accept or reject the representation of any prospective client who is a member of any of the referenced classifications.] A lawyer's representation of a client does not constitute an endorsement by the lawyer of the client's views or activities. See Rule 1.2(b)."

. . .

The WIP Report details the PBA's history and two decades old policy supporting the adoption of a Rule of Professional Conduct prohibiting sexual harassment in the practice of law and the PBA's deep commitment to promote diversity and inclusion in the legal profession. Ethics Committee has closely followed the developments concerning this proposed Model Rule change as it proceeded toward adoption by the ABA House of Delegates in August 2016. The Ethics Committee agrees with the WIP that adoption of a version of ABA Model Rule 8.4(g) would be consistent with and in furtherance of existing PBA policy and is warranted. The Ethics Committee is a standing committee specifically charged with "review[ing] and recommend[ing] any proposals in the rules governing professional responsibility." The Ethics Committee leadership has conferred with WIP leadership and confirmed that WIP is in agreement with recommending adoption of an amended version of Model Rule 8.4(g) and its accompanying Comments set forth above. The reasons for the suggested modifications are as follows:

2

**Rule 8.4(g)**

**A.    Text Amendment:**

Delete "or reasonably should know" and rely on "knows" and its definition in Rule 1.0(f) as the applicable mens rea requirement. The term "knows" denotes actual knowledge, which may be inferred from the circumstances. The term "reasonably should know when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question." Rule 1.0(j). The justification for the deletion would be that "reasonably should know" dilutes the mens rea requirement. In other words, there should be more than merely a negligence level involved in exposing a lawyer to discipline under this Rule.

By way of background, the thrust of this Model Rule amendment is to elevate to the black letter language that has been included in Model Rule Comment [3] since 1988, as follows: "A lawyer who, in the course of representing a client, *knowingly* manifests by words or conduct, bias or prejudice based upon race, sex, religion national origin, disability, age, sexual orientation or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the administration of justice…" (emphasis added.) The Pennsylvania Supreme Court did not adopt the foregoing comment, but as noted above the comment language expressly included "knowingly" as its mens rea standard. Some 25 jurisdictions already had in place some form of anti-discrimination/anti-harassment black letter rules, including 13 that have adopted the language from the previous Comment [3] of Model Rule 8.4.

RPC 4.2 and 8.3(a) and (b) also require "knowing" conduct in order to subject a lawyer to discipline. For example, Rule 4.2 concerning ex parte contacts prohibits communicating with a represented person the lawyer "knows" to be represented by another lawyer in the matter. The more expansive "reasonably should know" language was not included to avoid exposing lawyers to discipline for unintentionally not realizing the person is represented and to avoid imposing a duty to research the question first. The same caution may be applied here against disciplining lawyers unless they know the conduct constitutes harassment or discrimination directed to one or more of the prohibited categories.

Similarly, Rule 8.2 prohibits a lawyer from making a statement that the lawyer "knows to be false" concerning the qualifications or integrity of a judge. As with any rule that may either limit speech or constrain vigorous advocacy, there are potential First Amendment implications at play and caution should be exercised in imposing a standard for purposes of discipline. Moreover, while all citizens including lawyers are subject to federal, state and local laws concerning harassment or discrimination in the workplace, this Rule has more expansive application to lawyers in various settings that are law related, including certain social occasions, and thus a clear and definite mens rea requirement is preferable.[1]

---

[1] On December 22, 2015, the ABA Ethics Committee issued its draft proposal to amend Rule 8.4, providing, "It is professional misconduct for a lawyer to: (g) in conduct related to the practice of law, harass, or knowingly discriminate against persons on the basis of [protected classes]." The ABA Ethics Committee's accompanying Memorandum explained, "The word 'knowing' was retained [from the Model Rule Comment] when applied to discrimination because the Ethics Committee concluded that conduct which had a non-discriminatory intent, such as hiring decisions based on

3

For the foregoing reasons, deletion of the "reasonably should know" language in the recently adopted Model Rule version of 8.4(g) is more in keeping with the previous Model Rule Comment language, more consistent with the text of other rules containing a mens rea requirement and sets a clearer standard for practitioners to follow and disciplinary authorities to enforce.

The text of Model Rule 8.4(g) is also amended to incorporate the existing definitions of "harassment" and "discrimination" under applicable substantive law. This amendment is intended to provide greater clarity and guidance to lawyers and disciplinary authorities.

**B.    Additional Comment language consistent with the text:**

> [5] …"This Rule does not require a lawyer to accept or reject the representation of any prospective client who is a member of any of the referenced classifications."

> "This Rule does not serve to expand upon or limit a claimant's available rights or remedies under other law governing harassment or discrimination."

The foregoing Comment clarifications are intended to allay concerns expressed that the proposed rule might require lawyers to accept representations they may view as repugnant or in conflict with their religious or moral views. Others have expressed concern that the "socioeconomic status" prong of the new Rule might be construed to limit a lawyer's ability to decline a representation based on the perception that a prospective client will be unable to pay the requisite fees and expenses that may be incurred. While the ABA Standing Committee on Ethics and Professional Responsibility has issued statements assuring lawyers that the rule would not interfere with any lawyer's First Amendment rights or discretion to accept or reject prospective clients, the additional Comment language above would reinforce that position.

The second suggested Comment addition would make clear, in response to various concerns expressed, that the Rule amendment is not intended to alter in any way the rights or remedies available to claimants alleging harassment or discrimination. Nor would it alter the available defenses in such cases. A lawyer could be disciplined for misconduct in violation of the Rule and a lawyer could be sued for harassment or discrimination under governing law. A lawyer could be found liable under governing law for harassment or discrimination but not necessarily the subject of discipline under this rule, and a lawyer could be disciplined under the Rule without any predicate finding by a tribunal of a violation of substantive law.

---

class rank or the willingness of an applicant to relocate to a particular jurisdiction, should not be a basis for a finding of professional misconduct. In addition, 'knows' is a defined term in the Model Rules of Professional Conduct. The Rules define 'knows' as 'actual knowledge of the fact in question. A person's knowledge may be inferred from the circumstances.' Because this is the standard used throughout the Model Rules, it is appropriate to incorporate it here." This Committee agrees with that conclusion, i.e., that "knows" is a clear, distinct and sufficient mens rea requirement under this Rule that should not be diluted by injecting a more expansive and amorphous "reasonably should know" standard.

The Ethics Committee believes that its Recommendation is in keeping with the WIP Amended Recommendation and understands that the WIP leadership is amenable to the foregoing suggested modifications to the Rule and Comments [3] and [5].

Respectfully submitted,

Daniel Q. Harrington, Co-Chair
Samuel D. Miller, III, Co-Vice Chair
Daniel J. Siegel, Co-Vice Chair

November 14, 2016

5

# Exhibit B



# PHILADELPHIA BAR ASSOCIATION

**Rochelle M. Fedullo**
CHANCELLOR

Philadelphia Bar Association
1101 Market Street I 11th Floor I Philadelphia, PA 19107-2955
Phone: 215-238-6348 I Fax: 215-238-1159 I E-mail: chancellor@philabar.org

September 26, 2019

Jesse G. Hereda, Executive Director
The Disciplinary Board of the Supreme Court of Pennsylvania
601 Commonwealth Avenue, Suite 5600
PO Box 62625
Harrisburg, PA 17106-2625

**Re: Proposed Amendments to PA Rules of Professional Conduct, Rule 8.4(g)**

Dear Mr. Hereda:

I write on behalf of the Philadelphia Bar Association to express strong support for the adoption by the Supreme Court of Pennsylvania of Rule of Professional Conduct 8.4(g), as proposed by the Disciplinary Board.

Despite state and federal anti-discrimination laws which have been in existence for decades, it is unfortunate that harassment and discrimination persist in our profession. We are a diverse profession serving a diverse community. Lawyers, as officers of the court and advocates for fair and equal justice, have a special responsibility to ensure that harassment and discrimination have no place in the legal profession.

The current absence in the Pennsylvania Rules of Professional Conduct of a proscription on discrimination and harassment in the legal profession stands in stark contrast to Pennsylvania's Code of Judicial Conduct, adopted by the Supreme Court of Pennsylvania in 2014. Rule 2.3 of the Code of Judicial Conduct provides:

> **"Rule 2.3. Bias, Prejudice, and Harassment.**
>
> (A) A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.
>
> (B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.
>
> (C) A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based

**YOUR PARTNER FOR JUSTICE**

1101 Market Street I 11th Floor I Philadelphia, PA 19107-2955
215-238-6300 I Fax: 215-238-1159 I philadelphiabar.org

upon attributes including but not limited to race, sex, gender identity or
expression, religion, national origin, ethnicity, disability, age, sexual
orientation, marital status, socioeconomic status, or political affiliation,
against parties, witnesses, lawyers, or others.

(D)  The restrictions of paragraphs (B) and (C) do not preclude judges or
lawyers from making legitimate reference to the listed factors, or similar
factors, when they are relevant to an issue in a proceeding."

It is noteworthy that while Rule 2.3(C) mandates that judges require lawyers in proceedings
before the court to refrain from engaging in discriminatory and harassing behavior, such conduct
is not currently proscribed by the Rules of Professional Conduct.

Many states have already taken steps to address this problem. By 2016, twenty-five states
included anti-discrimination language in their rules of professional conduct.[1] An additional eleven
states included anti-discrimination language in the comments to their rules.[2] Pennsylvania was
one of only fourteen states that did not address discrimination and harassment in either our Rules
of Professional Conduct or in the Comments to the Rules.[3]

Until recently, the American Bar Association's Model Rules of Professional Conduct did not
provide any guidance to the states. In 2016, after considerable study and debate, the American
Bar Association sought to address this problem by adopting Model Rule 8.4 (g).[4]

Since then, concerns have been raised in some circles focusing on the extent to which the Model
Rule may impinge on free speech rights of lawyers. Critics of the Model Rule assert that the
phrase, "conduct related to the practice of law" is too vague, leading to uncertainty regarding the
extent of conduct being regulated and chilling free speech in social and political settings.

Rule 8.4(g) and Comments, as proposed by the Disciplinary Board for adoption in Pennsylvania,
include language that addresses these concerns. Proposed Rule 8.4(g) states:

"It is professional misconduct for a lawyer to:
…
(g)  in the practice of law, by words or conduct, knowingly manifest bias or
prejudice, or engage in harassment or discrimination, as those terms are defined
in applicable federal, state or local statutes or ordinances, including but not

---

[1] See AMERICAN BAR ASSOCIATION, STANDING COMMITTEE ON ETHICS, Revised Resolution
109 (Report p. 5), available online at
http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/final_re
vised_resolution_and_report_109.authcheckdam.pdf
[2] Id at 6, n. 12.
[3] Id at 6, n. 13.
[4] MODEL RULES PROF'L CONDUCT, R. 8.4(g) (2016) provides:
"It is professional misconduct for a lawyer to:
. . . .
(g) engage in conduct that the lawyer knows or reasonably should know is harassment or
discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual
orientation, gender identity, marital status or socioeconomic status in conduct related to the
practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw
from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate
advice or advocacy consistent with these Rules."

      1101 Market Street | 11th Floor | Philadelphia, PA 19107-2955
215-238-6300 | Fax: 215-238-1159 | philadelphiabar.org

limited to bias, prejudice, harassment or discrimination based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude advice or advocacy consistent with these Rules."

By opening with the clarifying words, "In the practice of law," it is immediately apparent that the proposed Rule would regulate the conduct of lawyers in the course of their law practice.

The power to regulate the way in which lawyers communicate with each other, their clients and the courts in the practice of law is squarely within the authority of the Supreme Court of Pennsylvania. In the practice of law, lawyers yield many free speech rights to obtain and keep their licenses to practice. Examples include restrictions on communication of services and advertising[5], prohibitions on a prosecutor from making extrajudicial comments about a defendant that could heighten public condemnation of the accused[6] and proscriptions on making false statements about the integrity and qualifications of judges and court officials[7].

The new comments further clarify the scope and application of proposed Rule 8.4(g), as follows:

"[3]  For the purposes of paragraph (g), conduct in the practice of law includes participation in activities that are required for a lawyer to practice law, including but not limited to continuing legal education seminars, bench bar conferences and bar association activities where legal education credits are offered.
[4]  The substantive law of antidiscrimination and anti-harassment statutes and case law guide application of paragraph (g) and clarify the scope of the prohibited conduct."

Proposed Comment [3] provides guidance to lawyers that the activities proscribed by Rule 8.4(g) fall well within the limits of conduct commonly regulated by disciplinary authorities and do not interfere with a lawyer's free speech rights in social, political or other settings.

Proposed Comment [4] provides lawyers with additional guidance regarding the activities that constitute prohibited conduct.

The clarifying language "In the practice of law" in proposed Rule 8.4(g), and the guidance provided in proposed Comments [3] and [4], ensure that lawyers will understand the parameters within which conduct described in proposed Rule 8.4(g) will be subject to discipline.

Further, the Supreme Court of Pennsylvania should reject any argument that the right to engage in discriminatory and harassing speech while engaged in the practice of law is conduct worthy of protection on free speech grounds.

As stated in Paragraph 12 of the Preamble to the Rules of Professional Conduct, "The legal profession's relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived in the public interest

---

[5] Pa. RPC 7.1 – 7.5.
[6] Pa. RPC 3.8(e).
[7] Pa. RPC 8.2.

and not in furtherance of parochial or self-interested concerns of the bar." Proposed Rule 8.4(g) furthers the public interest and embodies lawyers' special responsibility to uphold core values of the profession such as promoting respect for the rule of law, maintaining professionalism and public confidence in the legal system, and safeguarding the dignity of the profession.

Proposed Rule 8.4(g) is a reasonable and appropriate way to address the problem of harassment and discrimination in our profession and we urge this Honorable Court to adopt Rule 8.4(g) and Comments [3] and [4] as proposed.

Thank you for the opportunity to provide comments on a matter of vital concern to our members as well as the community we serve.

Respectfully,

Rochelle M. Fedullo
Chancellor, Philadelphia Bar Association

cc:   Chief Justice Thomas G. Saylor, Supreme Court of Pennsylvania
      Justice Max Baer
      Justice Christine Donahue
      Justice Kevin M. Dougherty
      Justice Sallie Updyke Mundy
      Justice Debra Todd
      Justice David N. Wecht

# Exhibit C

# Allegheny County Bar Association

400 Koppers Building, 436 Seventh Avenue, Pittsburgh, PA 15219  •  412-261-6161  •  www.acba.org

**Board of Governors**

**President**
Lori E. McMaster

**President-Elect**
Elizabeth L. Hughes

**Secretary**
Nicola Henry-Taylor

**Treasurer**
James R. Mall

**Immediate Past-President**
Bryan S. Neft

**Governors**
Dana L. Bacsi
Beverly A. Block
Laura C. Bunting
Kerri Lee Cappella
Amy J. Coco
Danielle Dietrich
Daniel E. Fitzsimmons
Erica L. Laughlin
Hon. Jeffrey A. Manning
Tyra Oliver
Lourdes Sanchez Ridge
James R. Schadel
Jay N. Silberblatt
Joseph R. Williams
Regina Wilson

**Ex Officio**

**Chief Judge –**
**U.S. District Court Western**
**District Pennsylvania**
Hon. Mark R. Hornak

**President Judge –**
**Court of Common Pleas**
**of Allegheny County**
Hon. Kim Berkeley Clark

**Zone 12 Governor – PBA**
Jacqueline B. Martinez

**HSBD Liaison**
Kellie S. Ware-Seabron

**WLD Liaison**
Jessica K. Albert

**YLD Liaisons**
Lacee C. Ecker
Andrew G. Rothey
Amanda Thomas

**Executive Director**
David A. Blaner

**Assistant Executive Director**
Diane K. McMillen

September 20, 2019

Jesse G. Hereda, Executive Director
Disciplinary Board of the
Supreme Court of Pennsylvania
601 Commonwealth Avenue, Ste 5600
P. O. Box 62625
Harrisburg PA  17106-2625

### Re: Proposal to Adopt Rule of Professional Conduct 8.4(g)

Dear Mr. Hereda:

The Allegheny County Bar Association ("ACBA") submits the following comments on the Disciplinary Board's proposed addition to the Pennsylvania Rule of Professional Conduct ("RPC") 8.4(g), published in the Pennsylvania Bulletin on August 31, 2019 (49 Pa. B. 4941).

The ACBA strongly supports the addition of Rule 8.4(g) to the Rules of Professional Conduct and agrees that it is in the best interests of the profession and the public for Pennsylvania to amend its rules to formally disapprove the conduct of any lawyer who, in the practice of law, knowingly manifests bias or prejudice, or engages in harassment or discrimination.

Previously, by letter dated January 19, 2017, to the Hon. Thomas G. Saylor, the ACBA urged the Supreme Court to adopt Rule 8.4(g) to the RPC. In June 2018, the ACBA submitted comments to the Board proposal published in the Pennsylvania Bulletin on May 19, 2018 (48 Pa.B.2936). The Disciplinary Board's current proposed version of RPC 8.4(g) substantially conforms with prior ACBA comments and recommendations and addresses the primary concerns previously expressed regarding the Disciplinary Board's initial proposal. The Board's recommended rule language follows the prior recommendation by imposing a "knowingly" *mens rea* requirement to trigger application of the rule. The ACBA supports the Board's use of substantive federal, state or local law to clarify the scope of prohibited conduct. This provides useful guidance to lawyers. Also, the Board recommends that the rule apply when lawyers participate in bar association meetings, conferences and continuing legal education seminars. This also comports with the ACBA's prior recommendations.

The ACBA also believes that, in conjunction with the adoption of Rule 8.4(g), the bar will greatly benefit from education to promote the goal of eliminating harassment and discrimination in the profession.  On September 6, 2016, the ACBA adopted a resolution which calls for the modification of Pennsylvania

{00104807.DOCX}

Jesse G. Hereda, Executive Director
September 20, 2019
Page Two

mandatory continuing legal education (MCLE) to include as a separate credit MCLE programs that address diversity and inclusion and eliminating bias in the legal profession. The ACBA sent a letter to Justice Saylor on September 12, 2016 recommending the creation of the mandatory separate credit. The ACBA believes that the modification of the RPC to include 8.4(g) and the adoption of mandatory CLE go hand in hand to move toward the goal of eliminating discrimination within the legal profession.

We include a courtesy copy of this to Justice Saylor to reiterate the ACBA position previously forwarded to the Court, particularly with respect to the need for education with this Rule change.

On behalf of the Allegheny County Bar Association, we appreciate the Board and Court's consideration of these comments, as well as those contained in our prior letters of January 19, 2017, September 6, 2016, and June 6, 2018, and their support in promoting the goal of eliminating intentional harassment and discrimination in our profession.

If you have any questions regarding this matter, I can be reached by calling (412) 648-2359 or by e-mail at mcmaster@pitt.edu.

Very truly yours,

Lori E. McMaster
President

LEM/jmd

cc:  The Honorable Chief Justice Thomas G. Saylor

{00104807.DOCX}