# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZACHARY GREENBERG | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | No. 2:20-CV-3822 |
| v. | : | |
| | : | |
| JOHN P. GOODRICH, in his | : | |
| official capacity as Chair of the | : | Hon. Chad F. Kenney |
| Disciplinary Board of the Supreme | : | |
| Court of Pennsylvania, *et al.* | : | |
| | : | |
| *Defendants* | : | |

## Order

**AND NOW,** this _____ day of _____ 202__, upon

consideration of Defendants John P. Goodrich, Jerry M. Lehocky, Celeste L. Dee,

Christopher M. Miller, Gretchen A. Mundorff, John C. Rafferty, Dion G. Rassias,

Robert L. Repard, Eugene F. Scanlon, Jr., David S. Senoff, Robert J. Mongeluzzi,

Shohin H. Vance, Thomas J. Farrell, and Raymond S. Wierciszewski's Motion for

Summary Judgment, and Plaintiff's response, it is hereby **ORDERED** that the

Motion is **GRANTED.**

**JUDGMENT IS ENTERED IN FAVOR** of Defendants and against Plaintiff

on all counts.

BY THE COURT:

_____
J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZACHARY GREENBERG | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | No. 2:20-CV-3822 |
| v. | : | |
| | : | |
| JOHN P. GOODRICH, in his | : | |
| official capacity as Chair of the | : | Hon. Chad F. Kenney |
| Disciplinary Board of the Supreme | : | |
| Court of Pennsylvania, *et al.* | : | |
| | : | |
| *Defendants* | : | |

## Defendants' Motion for Summary Judgment

Defendants John P. Goodrich, Jerry M. Lehocky, Celeste L. Dee, Christopher M. Miller, Gretchen A. Mundorff, John C. Rafferty, Dion G. Rassias, Robert L. Repard, Eugene F. Scanlon, Jr., David S. Senoff, Robert J. Mongeluzzi, Shohin H. Vance, Thomas J. Farrell, and Raymond S. Wierciszewski move for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds set forth in their accompanying Brief.

1.     The parties filed a Stipulated List of Facts for Purposes of Summary Judgment Motions (ECF Doc. 53), along with Declarations from Plaintiff Zachary Greenberg, Esquire, (ECF Doc. 54), Thomas J. Farrell, Esquire, (ECF Doc. 56), and Laura K. Mohney, Esquire, (ECF 55).

2.     The parties also exchanged written discovery, which Defendants are filing with the Court as their Brief will rely on the discovery in addition to the Stipulated Facts and Declarations.

**WHEREFORE**, Defendants respectfully request that this Honorable Court grant judgment in their favor and against Plaintiff on all claims.

Respectfully submitted,

**s/Michael Daley**
Michael Daley, Esquire
Attorney I.D. No. PA 77212
Megan L. Davis, Esquire
Attorney I.D. No. PA 321341
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215)560-6326, Fax (215)560-5486
***Attorneys for Defendants***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ZACHARY GREENBERG :
                              :    CIVIL ACTION
                *Plaintiff*   :
                              :    NO. 2:20-CV-3822
            v.                :
                              :
JOHN P. GOODRICH, in his      :
official capacity as Chair of the    :    Hon. Chad F. Kenney
Disciplinary Board of the Supreme    :
Court of Pennsylvania, *et al.*    :
                              :
                *Defendants*  :

### Certificate of Service

The undersigned certifies that on November 16, 2021, he caused the

foregoing *Motion for Summary Judgment* via CM/ECF on all counsel of record

/s/ **Michael Daley**
MICHAEL DALEY, ESQUIRE
Attorney I.D. No. PA 77212
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZACHARY GREENBERG | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | No. 2:20-CV-3822 |
| v. | : | |
| | : | |
| JOHN P. GOODRICH, in his | : | |
| official capacity as Chair of the | : | Hon. Chad F. Kenney |
| Disciplinary Board of the Supreme | : | |
| Court of Pennsylvania, *et al.* | : | |
| | : | |
| *Defendants* | : | |

## Brief in Support of Defendants' Motion for Summary Judgment

## I.     Statement of the Case

This case concerns whether Pennsylvania, through its Rules of Professional

Conduct,[1] may prevent attorneys from engaging in harassing and discriminatory

**conduct** in the practice of law **directed at other individuals**. *See* Pa.R.P.C.

8.4(g).[2]

---

[1] *See* 204 Pa. Code § 81.4.

[2] The current Rule 8.4(g) at issue in this case was promulgated by the Supreme Court of Pennsylvania on July 26, 2021. *See* 51 Pa.B. 5190 (Aug. 21, 2021); http://www.pacodeandbulletin.gov/Display/pacode?file=/secure/pacode/data/204/chapter81/s8.4.html (last accessed Nov. 16, 2021). In that rulemaking, the Supreme Court amended the original form of Rule 8.4(g), which the Supreme Court had adopted on June 8, 2020. *See* 50 Pa.B. 3011 (June 20, 2020). As discussed more fully *infra*, it was the 2020 version of the rule, **not** the current Rule 8.4(g), that this Court on December 8, 2020, preliminarily enjoined the defendants from enforcing. *See Greenberg v. Haggerty*, 491 F.Supp.3d 12 (E.D. Pa. 2020).

The kind of conduct prohibited by Rule 8.4(g) demeans all nature of individuals who interact with the court system – *e.g.*, attorneys, court and office staff, witnesses, litigants and other observers – and distracts from civil discourse and the resolution of disputes through the legal system. Harassment and discrimination exclude able lawyers from their place in the practice of law and, when directed at them, shuts down the law-based and relevant-evidence-based debate that is essential to the functioning of our legal system.

The Supreme Court's effort to regulate the conduct of the attorneys it licenses through Rule 8.4(g) serves the compelling interests of ensuring the efficient and law-based resolution of disputes and guaranteeing that its judicial system is equally accessible to all.

This is not a case about offensive language. Or about whether some people may find a CLE presentation "offensive." This case is not about what attorneys may do outside the practice of law. It is not about advocating that certain laws or cases are unconstitutional or wrongly decided, no matter how controversial that advocacy may be. Rather, this case is about whether Pennsylvania may enact regulations to curb the serious issue of targeted discrimination and harassment against others in the legal profession.

As the American Bar Association recognizes:

> Discriminatory and harassing conduct, when engaged in by lawyers in connection with the practice of law, engenders skepticism and distrust of those charged with ensuring justice and fairness. Enforcement of Rule 8.4(g) is therefore critical to maintaining the public's confidence in the impartiality of the legal system and its trust in the legal profession as a whole.

ABA Formal Opinion 492 (July 20, 2020).[3]

**Pennsylvania's efforts to ensure that the judicial system and practice of law is free from discrimination and harassment.**

The Supreme Court of Pennsylvania has long recognized the vital importance in a judicial system free from bias and invidious discrimination, as well as equal access for all those having business with the court system. For instance, in 1999 it appointed a Committee on Racial and Gender Bias in the Justice System to determine whether racial or gender bias played a role in the justice system.[4] This led to the Interbranch Commission on Gender, Racial and Ethnic Fairness, which seeks to reduce or eliminate bias and discrimination in the legal profession and all branches of government. In 2008, the Supreme Court adopted a Policy of Non-

---

[3] Many courts have spoken to the corrosive and negative effect that discrimination and harassment cause to the legal system, including *Principe v. Assay Partners*, 586 N.Y.S.2d 182, 185 (N.Y. Sup. Ct. 1992)("[D]iscriminatory conduct on the part of an attorney is inherently and palpably adverse to the goals of justice and the legal profession . . .."); *Cruz-Aponte v. Caribbean Petroleum Corp.*, 123 F.Supp.3d 276, 280 (D.P.R. 2015)("When an attorney engages in discriminatory behavior, it reflects not only on the attorney's lack of professionalism, but also tarnishes the image of the entire legal profession and disgraces our system of justice."); *In re Thomsen*, 837 N.E.2d 1011, 1012 (Ind. 2005)("Interjecting race into proceedings where it is not relevant is offensive, unprofessional and tarnishes the image of the profession as a whole."); *In re Charges of Unprofessional Conduct*, 597 N.W.2d 563, 568 (Minn. 1999)(maintaining that "it is especially troubling" when a lawyer engages in "race-based misconduct" and, if not addressed, "undermines confidence in our system of justice").

[4] *See* http://www.pa-interbranchcommission.com/index.php (last accessed Nov. 4, 2021).

Discrimination and Equal Opportunity Employment Opportunity that covers all individuals having business with the judiciary.[5]

In 2016, the American Bar Association ("ABA") amended its Model Rules of Professional Conduct to add a new paragraph (g) and two new comments to Rule 8.4 addressing discrimination and harassment.[6] That same year, the Disciplinary Board of the Supreme Court of Pennsylvania ("Board") proposed initial amendments to Pennsylvania's Rule 8.4, which varied from the ABA's Model Rule. *See* 46 Pa.B. 7519 (Dec. 3, 2016). Based on comments, two more versions were proposed. *See* 48 Pa.B. 2936 (May 19, 2018); 49 Pa.B. 4941 (Aug. 31, 2019).[7]

During the amendment process, the Board and Supreme Court had input from the Pennsylvania Bar Association, the Philadelphia Bar Association, and the

---

[5] *See* https://www.pacourts.us/Storage/media/pdfs/20210515/213216-file-214.pdf (last accessed Nov. 4, 2021).

[6] The ABA Rule is at https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_8_4_misconduct/ (retrieved Nov. 1, 2021). *See also* ABA Formal Opinion 492 (July 20, 2020). The ABA Rule has generated numerous law review articles, including Robert N. Weiner, *"Nothing to See Here": Model Rule of Professional Conduct 8.4(g) and the First Amendment*, 41 Harv. J.L. & Pub. Pol'y 125 (2018); Stephen Gillers, *A Rule to Forbid Bias and Harassment in Law Practice: A Guide for State Courts Considering Model Rule 8.4(g)*, 30 Geo. J. Legal Ethics 195 (2017).

[7] Since the ABA adopted Model Rule 8.4(g), various states, including Colorado, Connecticut (effective in 2022), Maine, Missouri, New Mexico, and Vermont, have adopted some form of the Model Rule, either with or without modifications. As of August 2019, at least 39 of 56 jurisdictions have anti-discrimination and anti-harassment provisions in their rules of professional conduct. *See* 49 Pa.B. 4941 n.1 (Aug. 31, 2019).

Allegheny County Bar Association, as well as additional comments. (Mohney Declaration, Exh. A-C, ECF Doc. 55.) The Board not only reviewed the ABA Model Rule and related materials, but also had the benefit of the ABA's Standing Committee on Ethics and Professional Responsibility's Report, bar association input, and knowledge of how other states were proceeding. *Id.*

In its August 2019 publication, the Board confirmed that the proposed amendments' purpose is to "promote[] the profession's goal of eliminating intentional harassment and discrimination, assure[] that the legal profession functions for all participants, and affirm[] that no lawyer is immune from the reach of law and ethics." 49 Pa.B. 4941. In 2020, the Supreme Court of Pennsylvania approved the Old Amendments, to take effect on December 8, 2020. *See* 50 Pa.B. 3011 (June 20, 2020).

Following this Court's December 8, 2021 Order (Doc. 30) enjoining the Old Amendments, *see Greenberg v. Haggerty*, 491 F.Supp.3d 12 (E.D. Pa. 2020), the Supreme Court revised Rule 8.4(g) by Order of July 25, 2021. *See* 51 Pa.B. 5190 (Aug. 21, 2021).[8] The revised Rule states:

> It is professional misconduct for a lawyer to:
>
> * * *
>
> (g) in the practice of law, knowingly engage in conduct constituting harassment or discrimination based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status. This paragraph

---

[8] The Amendments that the Court enjoined are referred to as the "Old Rule" or "Old Amendments." The current Amendments at issue are referred to as the "Amendments."

does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude advice or advocacy consistent with these Rules.

Pa.R.P.C. 8.4. Comments Three through Five pertain to section (g):

[3] For the purposes of paragraph (g), conduct in the practice of law includes (1) interacting with witnesses, coworkers, court personnel, lawyers, or others, while appearing in proceedings before a tribunal or in connection with the representation of a client; (2) operating or managing a law firm or law practice; or (3) participation in judicial boards, conferences, or committees; continuing legal education seminars; bench bar conferences; and bar association activities where legal education credits are offered. The term "the practice of law" does not include speeches, communications, debates, presentations, or publications given or published outside the contexts described in (1)-(3).

[4] "Harassment" means conduct that is intended to intimidate, denigrate or show hostility or aversion toward a person on any of the bases listed in paragraph (g). "Harassment" includes sexual harassment, which includes but is not limited to sexual advances, requests for sexual favors, and other conduct of a sexual nature that is unwelcome.

[5] "Discrimination" means conduct that a lawyer knows manifests an intention: to treat a person as inferior based on one or more of the characteristics listed in paragraph (g); to disregard relevant considerations of individual characteristics or merit because of one or more of the listed characteristics; or to cause or attempt to cause interference with the fair administration of justice based on one or more of the listed characteristics.

Pa.R.P.C. 8.4, cmts.[9]

Notably, in addition to the three new Comments, the Amendments

made the following changes from the Old Rule:

---

[9] Defendants agreed to forebear enforcing revised Rule 8.4(g) pending this Court's disposition of cross-motions for summary judgment. (ECF Doc. 46.)

- Removed from the Old Rule the phrases, "by words or conduct," and "manifest bias or prejudice."

- Added to the New Rule the words, "conduct constituting."

- Removed from the Old Rule the clause, "as those terms are defined in applicable federal, state or local statutes or ordinances, including but not limited to bias, prejudice, harassment or discrimination."

*See* 51 Pa.B. 5190.

**Plaintiff.**

Plaintiff Zachary Greenberg is an attorney who is licensed to practice law in New York as of 2017 and in Pennsylvania since 2019. (Greenberg Response to Interrogatories No. 5, ECF Doc. 62, Ex. C.) As an attorney, his job is to make presentations and write for the Foundation for Individual Rights in Education ("FIRE"), a position he has had since graduating from law school in 2017. (Stipulated List of Facts ¶¶ 6, 10, ECF Doc. 53; Greenberg Response to Interrogatories No. 4-5, ECF Doc. 62, Ex. C.)[10]

In the four CLE presentations he had given since 2017, Plaintiff has sometimes quoted what he describes as "hateful speech" from court opinions. (Stipulation ¶¶ 63-65, ECF Doc. 53.) One time, after he spoke at a CLE in 2018, one attorney approached him and told him he found Plaintiff's presentation "offensive." (Greenberg Response to Interrogatories No. 6, ECF, Doc. 62, Ex. C.) That attorney never reported Greenberg to any bar disciplinary authority, so far as Greenberg

---

[10] The Stipulated List of Facts will be referred to as "Stipulation."

knows or the record shows. (Greenberg Response to Admissions No. 1-2, ECF Doc. 62, Ex. D.)

While Plaintiff asserts that he intends to speak at future CLEs, the only scheduled CLE was on October 27, 2021. (Greenberg Response to Interrogatories No. 2, ECF Doc. 62, Ex. C.) No further CLEs are currently scheduled.

Plaintiff has not been accused of intentionally targeting an individual for harassment or discrimination. (Greenberg Response to Interrogatories No. 9, ECF Doc. 62, Ex. C.) And Plaintiff has not and does not intend to engage in such conduct. (Greenberg Response to Admissions No. 3-4, ECF Doc. 62, Ex. D.)

**The disciplinary process.**

When a complaint is submitted against an attorney, the Office of Disciplinary Counsel ("ODC") conducts an investigation. (Stipulation ¶ 28, ECF Doc. 53.) *See* Pa.D.B.R. § 87.6.[11] The complaint is not a charging document, but a request to investigate an attorney. (Stipulation ¶ 28, ECF Doc. 53.) If ODC determines that a complaint is frivolous or that policy or prosecutorial discretion warrant dismissal, it may dismiss the complaint without issuing a DB-7 letter, which is a Request for Statement of the attorney's position. (Stipulation ¶ 29, ECF Doc. 53.) *See* Pa.R.D.E. 208(a)(2)[12]; Pa.D.B.R. § 87.8(a). For calendar years 2016 to 2018, ODC received

---

[11] The Disciplinary Board Rules ("Pa.D.B.R.") are published at 204 Pa. Code §§ 85.1-95.3. Chapter 87 contains the rules governing investigations and informal proceedings.

[12] The Pennsylvania Rules of Disciplinary Enforcement ("Pa.R.D.E") are published at 204 Pa. Code Ch. 83.

11,822 complaints, which resulted in 1,527 DB-7 letters. (Stipulation ¶ 31, ECF
Doc. 53.) Thus, 87.1% of complaints did not result in a DB-7 letter that required a
formal response from the attorney. (Stipulation ¶ 31, ECF Doc. 53.)

If ODC issues a DB-7 letter, the attorney has thirty days to respond.
(Stipulation ¶ 30, ECF Doc. 53.) *See* Pa.D.B.R. § 87.7(b), (c). At that point, ODC may
dismiss the complaint without any further action by the attorney. Pa.D.B.R. §
87.9(a), (b). If, after an investigation and serving a DB-7 letter, ODC determines
that some form of discipline is appropriate, ODC drafts a "Referral of Complaint to
Reviewing Hearing Committee Member," which recommends either private
discipline, public reprimand, or the filing of a petition for discipline. (Stipulation ¶
36, ECF Doc. 53.)[13]

Prior to the recommendation being approved, there are multiple layers of
review, including the Counsel in Charge of the District and ODC's Chief
Disciplinary Counsel. (Stipulation ¶¶ 38-39, ECF Doc. 53.) Next, if both approve, a
single hearing committee member or a three-member panel also reviews the
proposed disposition. (Stipulation ¶ 39, ECF Doc. 53.) *See* Pa.R.D.E. 208(a)(3), (5);
Pa.D.B.R. § 87.34.

If ODC does not file a petition for discipline for a complaint, the Board cannot
review or otherwise adjudicate the complaint. (Defendant's Response to Request for
Admissions No. 7, ECF Doc. 62, Ex. B.)

---

[13] A DB-7 letter is a prerequisite to a recommendation of discipline. Pa.D.B.R. §
87.7(a).

9

**ODC's interpretation of the current Amendments to Rule 8.4(g).**

ODC's Chief Disciplinary Counsel, Thomas J. Farrell, Esquire, has provided

a Declaration on behalf of ODC regarding ODC's position on and interpretation of

the Amendments. (ECF Doc. 56.) Chief Counsel Farrell has authority to direct how

ODC interprets the Rules of Professional Conduct and ODC's polices on handling

complaints, including those raising First Amendment issues. (Farrell Declaration ¶

6, ECF Doc. 56.) As stated in the Declaration:

- ODC interprets Rule 8.4(g) as encompassing only conduct that targets individuals by harassing or discriminating against an identifiable person. The ODC does not interpret Rule 8.4(g) as prohibiting general discussions of case law or "controversial" positions or ideas (Farrell Declaration ¶ 7, ECF Doc. 56).

- Plaintiff's presentations, speeches, writings, and similar actions described in the Amended Complaint do not violate Rule 8.4(g), and ODC would not pursue discipline for them (Farrell Declaration ¶ 8-9, ECF Doc. 56).

- "Offensive" language or an allegation that someone was offended by a speech or writing that does not target individuals by harassing or discriminating against an identifiable person, does not come within Rule 8.4(g), and ODC would not seek discipline for it (Farrell Declaration ¶ 16, ECF Doc. 56).

- ODC would not pursue discipline for discussing and quoting from cases with "offensive" or "controversial" language; speaking and writing about "hot-button legal issues" such as hate speech, an individual's due process rights related to sexual assault and misconduct allegations, campaign finance speech restrictions; discussing or advocating a position on hate speech regulations, student due process rights, monetary contributions in politics, and the right to express intolerant religious views (Farrell Declaration ¶¶ 10-13, ECF Doc. 56).

"Targeting individuals" includes conduct that "results in invidiously

disparate treatment and abusive or predatory behavior." (Defendants' Answers to

10

Interrogatories No. 7, ECF Doc. 62, Ex. A.) Targeting is not based on the listener's perception, but whether the conduct "actually targets a person for discrimination or harassment." (Defendants' Answers to Interrogatories No. 7, ECF Doc. 62, Ex. A.)

In deciding whether a complaint under Rule 8.4(g) is frivolous, the complaint is reviewed with "reasonable and measured deliberation," including First Amendment concerns and whether the alleged conduct rises to targeting an individual for discrimination or harassment. (Defendants' Answers to Interrogatories No. 15, ECF Doc. 62, Ex. A.)

The Declaration is binding on ODC and estops it from taking a different position. (Defendants' Answers to Interrogatories No. 12, ECF Doc. 62, Ex. A; Response to Request for Admissions No. 5, ECF Doc. 62, Ex. B.)

**Claims and requested relief.**

Plaintiff claims that the Amendments are facially unconstitutional because they are overbroad and a content- and viewpoint-based infringement of the First Amendment. (Amended Complaint, Count I.) He also asserts that the Amendments are vague, which would violate Fourteenth Amendment due process. (Amended Complaint, Count II.) Plaintiff seeks a declaratory judgment and an injunction to prevent Defendants from enforcing Rule 8.4(g).[14]

---

[14] Defendants are sued in their official capacities only. An official capacity suit against a public official is really against the government entity of which the person is a part. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). In this case, that is ODC and the Board.

**This Court's enjoining Old Rule 8.4(g).**

In enjoining Old Rule 8.4(g), this Court held that it consisted of viewpoint discrimination. First, the Court focused on the Old Rule's description of professional misconduct through "words . . . manifest[ing] bias or prejudice" (words missing in the new Amendments), which the Court held "simply regulates speech." *Greenberg v. Haggerty*, 491 F.Supp.3d 12, 29 (E.D. Pa. 2020). Thus, the Court concluded that the Old Rule was not directed only to "conduct" or "professional speech," but simply to speech. *Id.* at 30.

Next, the Court held that the Old Rule engaged in viewpoint discrimination because it "explicitly prohibits words manifesting bias or prejudice, *i.e.*, 'offensive words.'" *Id.* at 31. The Court concluded that the Old Rule, on its face, allowed "what is bias and prejudice based on whether the viewpoint expressed is socially and politically acceptable and within the bounds of permissible cultural parlance." *Id.* at 32.

## II.   Statement of Questions

1.      Does Plaintiff lack standing to bring a pre-enforcement facial challenge when his claimed injury is supported only by his subjective belief based on a guess that unknown third parties will be offended, which may cause them to file a complaint, and that ODC may move to enforce Rule 8.4(g), despite ODC's position that his conduct would not violate the Amendments and there is no credible threat of prosecution?

Answer: Yes.

12

2.      Do Plaintiff's viewpoint-based and content-based claims fail because the Amendments regulate conduct, not speech, and are not directed at particular views or ideas, and, further, the Amendments are narrowly tailored to serve the "compelling interest" in regulating attorneys' professional conduct?

Answer: Yes.

3.      Has Plaintiff met his heavy burden in establishing that the Amendments are impermissibly overbroad where they regulate professional conduct involving discrimination and harassment, do not prohibit a substantial amount of protected expression, and there are no historic or likely impermissible applications?

Answer: No.

4.      Do the Amendments, which are composed of well-known terms and phrases, provide fair warning to an objective attorney about what conduct is encompassed and in what circumstance, thereby rendering Plaintiff's vagueness claim meritless?

Answer: Yes.

## III.   Argument

**A.      Plaintiff lacks standing because he does not have a certainly impending, imminent injury: his subjective belief of injury is based upon speculation that unknown third parties may be offended and file a disciplinary complaint, and that ODC may seek to enforce Rule 8.4(g) despite such conduct not coming within the scope of the Amendments.**

For Plaintiff to obtain the declaratory relief he seeks, he must carry the burden in establishing that he presents an "actual case or controversy" necessary to

13

invoke this Court's jurisdiction. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011), *cert. denied*, 566 U.S. 989 (2012). Hence, standing is not assumed.

Constitutional standing has three elements: 1) an injury in fact; 2) a causal connection between the injury and the conduct complained of; and 3) the likelihood that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To established injury in fact, Plaintiff must show an invasion of a protected interest that is: 1) "concrete and particularized"; and 2) "actual or imminent, not conjectural or hypothetical." *Id.* The United States Supreme Court requires that an injury must be "*certainly impending.*" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)(emphasis added).[15]

In the context of a pre-enforcement challenge to a statute or rule, a plaintiff must demonstrate a "realistic danger of sustaining a direct injury" if the challenged provision is enforced. *Pipito v. Lower Bucks Co. Joint Mun. Auth.*, 822 Fed.Appx. 161, 164 (3d Cir. 2020). Thus, Plaintiff has to show: 1) an intent to engage in conduct arguably affected with a constitutional interest that a statute proscribes; and 2) that there exists a "credible threat of prosecution[.]" *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). Plaintiff meets neither.

Here, because Plaintiff's claimed injury is based on an allegation that the Amendments chill his speech, he must present a "specific present objective harm or a threat of specific future harm." *Id.* Allegations of subjective chill and those based

---

[15] Despite the relaxed approach to standing for his overbreadth challenge, Plaintiff still must establish constitutional standing. *SEIU v. Municipality of Mt. Lebanon*, 446 F.3d 419, 424 (3d Cir. 2006).

on a "speculative series of conditions" do not suffice. *Id.* (citations omitted); *see also*

*Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

Notably, none of the conduct that Plaintiff has engaged in or plans to engage

in comes within Rule 8.4(g). Not only does it not come within the Amendments on

its face, but ODC has declared that such conduct does not violate the Amendments.

*See Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 793-93 (8th Cir.

2004)(affirming dismissal of First Amendment challenge for lack of standing

because the conduct was not proscribed by the challenged statute).

### 1. Plaintiff's claim is based on pure speculation.

The initial obstruction to standing is that Plaintiff's claimed risk is based on

a series of guesses regarding the unknowable actions of unknown parties. But,

when an injury depends on an "indefinite risk of future harms inflicted by unknown

third parties," standing is lacking. *Reilly*, 664 F.3d at 42; *see Clapper*, 568 U.S. at

414 (stating that there is a "usual reluctance to endorse standing theories that rest

on speculation about the decisions of independent actors"). Because Plaintiff's

theory of harm depends entirely on third party actions, he must sufficiently

demonstrate that such third persons "will take the action exposing the plaintiff to

harm." *Lujan*, 504 U.S. 564 n.2. Without such a demonstration, there is an

unacceptable risk of deciding a case in which "no injury would have occurred at

all." *Reilly*, 664 F.3d at 42 (internal quotation omitted).

Here, Plaintiff's purported injury is founded solely on abstract predictions

about unknown third parties who may attend his presentations where he discusses

First Amendment cases, who then might file a complaint, which possibly could result in ODC action – action that the ODC has confirmed it will not take based on Plaintiff's conduct. That is not enough.

Plaintiff's first guess is that he "believes" that at least some audience members will perceive his presentations where he discusses case law and advocates for certain positions as hateful and hostile towards certain groups. (Plaintiff's Declaration ¶¶ 28-29, ECF Doc. 54.)[16] But no evidence supports this belief.

Plaintiff asserts that one attendee at one of his CLEs three and a half years ago told him that his presentation was "offensive." (Plaintiff's Response to Interrogatories No. 6, ECF Doc. 62, Ex. C). This isolated incident is not enough, though. The attendees did not say that they felt targeted for harassment or discrimination, which is what the Amendments cover (not "offensive" speech). There is no evidence that the attendees ever filed a disciplinary complaint against Plaintiff based upon this CLE presentation – or any other.

Instead of specific instances where Plaintiff's CLE presentations led to disciplinary complaints or claims of discrimination or harassment, Plaintiff gathers up reports about "public accusations of bias and prejudice" to support his subjective fears. (Plaintiff's Declaration ¶¶ 44-87, ECF Doc. 54.) And how many of those involve disciplinary actions against attorneys or even rules of professional conduct? None. Instead, Plaintiff attempts to shift the focus from the lack of such incidents to

---

[16] Plaintiff's presentations outside of CLEs are not covered by the Amendments. *See* Rule 8.4(g), comment [3].

examples involving college professors, website articles, commentaries about judicial opinions, and even what someone tweeted on Twitter.[17] Thus, these "public accusations" have no relevance.

At this point, Plaintiff has attempted to build the required concrete, actual or imminent grievance upon two indefinite assumptions based on nothing more than his subjective beliefs. But the guesswork is not done: if a person were offended, and if that person files a disciplinary complaint, there is yet another speculative step – that ODC will not dismiss the complaint as frivolous and will require Plaintiff to provide a formal response and thereafter move to bring charges.

This step is equally imaginary: ODC does not consider "offensive" speech or someone being "offended" to come within the Amendments. Nor do the Amendments encompass presentations that cite cases or advocate for "controversial" positions. Thus, no basis exists to claim a "realistic danger of sustaining a direct injury."[18] Indeed, the conduct that Plaintiff engaged in does not come within the Amendments, and ODC would dismiss complaints about them as frivolous.

At bottom, Plaintiff cannot fashion standing merely by "inflicting harm" on himself based on fears of "hypothetical future harm that is certainly not

---

[17] The only attorney disciplinary case that Plaintiff cites is *In re Traywick*, 860 S.E.2d 358 (S.C. 2021). Yet, not only did that case not involve a rule similar to Rule 8.4(g), but the conduct at issue there does not come within the Amendments, and ODC would not pursue discipline for it. (Farrell Declaration ¶ 17, ECF Doc. 56.)

[18] Of the complaints filed with ODC, 87.1% do not require a formal response from the attorney. (Stipulation ¶ 31, ECF Doc. 53.) And even for those complaints for which a formal response is required, ODC dismisses a majority without recommending discipline.

impending." *Clapper*, 568 U.S. at 416. At its core, Plaintiff's case is built on "ifs" – "ifs" that depend solely on the unknowable actions of third parties. That cannot satisfy standing. *Reilly*, 664 F.3d at 43 (holding that an injury is too speculative when it cannot be described "without beginning our explanation with the word 'if'").

### 2. There is no credible threat of prosecution.

Next, even if Plaintiff's claims did not rest on conjecture, Plaintiff still cannot establish a credible threat of prosecution. *First*, ODC has not provided any reason to believe that Plaintiff would be charged with violating the Amendments based on the conduct he wants to engage in. To the contrary, ODC has disavowed any intention to do so: Plaintiff's conduct does not fall within the Amendments.

Thus, a complaint against Plaintiff based on his CLE presentations and advocacy would be frivolous. *See Jamal v. Kane*, 96 F.Supp.3d 447, 454 (M.D. Pa. 2015)(holding that no credible threat existed in a First Amendment case where district attorney disavowed intent to enforce statute); *see also Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010)("[W]e have held that plaintiffs did not demonstrate the necessary injury in fact where the enforcing authority expressly interpreted the challenged law as not applying to the plaintiffs' activities."), *cert. denied*, 563 U.S. 989 (2011).

Plaintiff may argue that a subsequent ODC chief could repudiate ODC's position set out in Chief Counsel Farrell's Declaration. Setting aside that the Declaration is binding on ODC and estops it from arguing otherwise should an attorney rely on it, it is "not necessary" for Defendants to "refute and eliminate all

possible risk that the statute might be enforced." *Winsness v. Yocom*, 433 F.3d 727, 733 (10th Cir. 2006). Instead, it is Plaintiff's burden to demonstrate an "actual or imminent, not conjectural or hypothetical" threat that the Amendments will be enforced against him. *Id.*

Here, though, the only evidence points to one conclusion: ODC, which is the only entity that can investigate and seek disciplinary action, has disavowed enforcement of the Amendments for Plaintiff's conduct.

*Second*, there is no history of past enforcement: the Amendments have yet to go into effect. Moreover, Plaintiff does not identify any attorney anywhere – let alone in Pennsylvania – who was charged with violating a provision similar to the Amendments based on engaging in activities akin to Plaintiff's presentations. *See Abbott v. Pastides*, 900 F.3d 160, 176-77 (4th Cir. 2018)(holding that no credible threat existed where plaintiffs pointed to no evidence of prior sanctions under a statute against them or anyone else), *cert. denied*, 139 S.Ct. 1292 (2019); *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 968 (6th Cir. 2009)(noting that plaintiffs failed to identify any other attorneys who had been disciplined for criticizing judges under the conduct rules at issue). The *In re Traywick* case Plaintiff cites did not involve a similar rule, but instead whether the attorney's conduct "tended to bring the legal profession into disrepute[.]" 860 S.E.2d at 360.

*Third*, even if ODC were to receive a complaint, there is no reason to believe that Plaintiff would even have to respond to it, much less be charged by ODC.

Instead, as noted above, ODC considers complaints about offensive language or other aspects of Plaintiff's presentations to not come within the Amendments.

Plaintiff may argue that a credible threat is present because anyone can file a complaint with ODC. *See Susan B. Anthony List*, 573 U.S. at 174. The problem with this argument, however, is that complainants do not institute disciplinary charges against an attorney: only ODC has that power – and only after approval by a Disciplinary Board hearing committee member. (Stipulation ¶¶ 28, 38-39, ECF Doc. 53.) *See* Pa.R.D.E. 208(a)(3); Pa.D.B.R. § 87.32.

A "complaint" is simply a claim that an attorney committed misconduct – one that ODC reviews to determine if any further action is needed, as described above. (Stipulation ¶ 28, ECF Doc. 53.) *See* Pa.D.B.R. § 87.2. That a citizen may make a complaint, or even past history of investigating complaints, does not make a credible threat. *See Abbott*, 900 F.3d at 177 (holding that a university's past inquiry into and ultimate dismissal of student complaints "does not by itself translate into a credible threat that the University would sanction the plaintiffs for engaging in protected speech in the future simply because others found it offensive"); *Ness v. City of Bloomington*, C.A. No. 19-2882, 2020 WL 4227156, at *7 (D. Minn. July 23, 2020)(holding that an "investigation of citizen complaints" is not "a credible threat of prosecution"); *Empower Texans, Inc. v. Nodolf*, 306 F.Supp.3d 961, 966 (W.D. Tex. 2018)(holding that "review of a private citizen's complaint" is not a credible threat of prosecution).

*Finally*, at an even more basic level, Plaintiff's purported injury stems from his intention to quote from cases with hateful language, as well as to advocate both that certain cases were wrongly decided and for "controversial" legal positions. That's it.

Plaintiff's subjective belief, however, ignores both the Amendments' plain language as well as ODC's position. It was the Old Rule's language prohibiting "words . . . manifest[ing] bias or prejudice" that the Court determined created a credible threat that Plaintiff's speeches and his quotation of opinions using "slurs, epithets, and any demeaning nicknames" might result in a disciplinary investigation and action. *Greenberg,* 491 F.Supp.3d at 22-24. ODC, the Board, and the Supreme Court of Pennsylvania heeded this Court's opinion. They eliminated that language and its references to the Code of Judicial Conduct and retooled the Rule to focus on harassing and discriminatory conduct that is knowingly targeted at individuals. And they stipulated that Plaintiff's speech, which the Court rightly aimed to protect, is protected from prosecution.[19]

Even more, to the extent that Plaintiff intends to advocate that certain cases were wrongly decided or to advance a different interpretation of relevant law, Rule 8.4(g) provides a safe harbor: "This paragraph does not preclude advice or advocacy

---

[19] That individual complainants might make frivolous allegations is of no moment for standing purposes. ODC would be obligated to dismiss them, as would a reviewing hearing committee member. The possibility of frivolous prosecutions, where there is no history or evidence that the government intends to pursue them, is not a credible, non-speculative threat sufficient to chill speech and confer standing.

consistent with these Rules." And ODC's position is that discussing and advocating for "controversial" positions does "not violate Rule 8.4(g), and the ODC would not pursue discipline on this basis." (Farrell Declaration ¶ 13, ECF Doc. 56.)

Given the Amendments' clear safe harbor for advocacy, coupled with ODCs averment that such conduct would not come within the Amendments, the threat of enforcement is not credible – it's incredible.[20]

At bottom, Plaintiff has not carried his burden to establish standing. There is no imminent, impending injury to Plaintiff. Rather, there is simply a worry without foundation about what attendees may think and then possible do, and how ODC ultimately might react. Yet Plaintiff's fear of enforcement is not the issue, but what evidence he marshals to support it. *See American Library Ass'n v. Barr*, 956 F.2d 1178, 1193 (D.C. Cir. 1992)(holding that the issue is how likely it is that the government will attempt to use a provision against a plaintiff – not how worried they are about potential enforcement).

Where this Court would have to engage in speculation upon speculation upon speculation before it could find any injury in fact here, there is no "realistic danger" that Plaintiff will sustain a direct injury. *Pipito*, 822 Fed.Appx. at 164. Thus, Plaintiff cannot meet his standing burden.

---

[20] Defendants dispute this Court's earlier conclusion that the advocacy provision is "plainly intended to protect those giving advice or advocacy in the context of representing a client," as opposed to Plaintiff's conduct in advocating legal positions at CLEs. *Greenberg*, 491 F.Supp.3d at 24. The Amendments contain no such limitation. In fact, ODC's position is that "discussing" and "advocating" a position does not come within the Amendments, regardless of whether an attorney is representing a client. (Farrell Declaration ¶¶ 13-14, ECF Doc. 56.)

**B.**     **The Amendments regulate conduct, not speech, and they are neither viewpoint nor content based.**

In making a facial attack on the Amendments, Plaintiff is requesting "strong medicine," which is used "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). The reason is that facial attacks "often rest on speculation," raise the "risk of premature interpretation," and run "contrary to the fundamental principle of judicial restraint[.]" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008)(citations omitted). For these reasons, facial invalidation of a statute is a remedy that courts employ "sparingly and only as a last resort." In fact, facial challenges are "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

In deciding whether the Amendments are facially invalid, this Court "must be careful not to go beyond the [Amendments'] facial requirements and speculate about hypothetical or imaginary cases." *Id.* at 449-50 (quotation omitted). Moreover, because Pennsylvania's disciplinary system has not yet applied the Amendments in "actual disputes," judicial restraint is called for. *Id.* at 450. Such restraint "frees the [c]ourt not only from unnecessary pronouncement on constitutional issues," but also from prematurely interpreting statutes in areas where their "constitutional application might be cloudy." *Id.*

Further, this Court "must . . . consider any limiting construction that a state court or enforcement agency has proffered," which Defendants have provided here

23

through the ODC Declaration and discovery responses. *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989).

Additionally, under the doctrine of constitutional avoidance, it has "long been a tenet of First Amendment law" when determining a facial challenge to a statute that if it is "readily susceptible to a narrowing construction that would make it constitutional, it will be upheld." *Bruni v. City of Pittsburgh*, 941 F.3d 73, 85 (3d Cir. 2019), *cert. denied*, 141 S.Ct. 578 (2021). The "elementary rule is that every reasonable construction" must be used to "save a statute from unconstitutionality." *Stretton v. Disciplinary Bd. of Supreme Ct. of Pa.*, 944 F.2d 137, 144 (3d Cir. 1991).

Before moving to the substance of Plaintiff's claims, it is important to recognize the long-standing, unbending line of cases upholding a state's broad powers to regulate attorneys. The Supreme Court holds that a state's "broad power to regulate the practice of professions within their boundaries" is "especially great" in "regulating lawyers" because "lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts." *In re Primus*, 436 U.S. 412, 422 (1978)(quotation omitted); *see also Middlesex v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982)(affirming that the states have an "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses"). Indeed, the state's interest is a "compelling interest." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995).

This substantial, compelling interest includes "protect[ing] the integrity and fairness of a State's judicial system," *Gentile v. State Bar of Nevada*, 501 U.S. 1030,

1075 (1991), and "protect[ing] the flagging reputations of . . . lawyers by preventing

them from engaging in conduct" that is "regarded as deplorable and beneath common

decency[.]" *Went For It*, 515 U.S. at 625 (quotations omitted). Because bar

membership is a "privilege burdened with conditions," and an attorney is "an officer

of the court," attorneys must "conduct themselves in a manner compatible with the

role of courts in the administration of justice." *In re Snyder*, 472 U.S. 634, 644-45

(1985).

    The preamble to Pennsylvania's Rules reiterates this: "A lawyer, as a

member of the legal profession, is a representative of clients, an officer of the legal

system and a public citizen having a special responsibility for the quality of justice."

Pa.R.P.C. Preamble and Scope [1].[21]

### 1.    The Amendments regulate conduct and do not target speech or expression.

    Plaintiff's challenge runs into two insurmountable obstacles. *First*, the

Supreme Court makes clear that antidiscrimination laws intended to ensure equal

access to society's benefits serve goals "unrelated to the suppression of expression"

and are neutral as to both content and viewpoint. *See Roberts v. U.S. Jaycees*, 468

U.S. 609, 623-24 (1984)(holding that a state law prohibiting discrimination on the

basis of race, religion, disability, national origin, and gender "does not aim at the

---

[21] While the Amendments here are directed towards conduct, many rules of professional conduct that curtail attorney speech are consistently understood to be proper regulatory measures. *See* Pa.R.P.C. 1.6, 3.5(d), 3.6, 4.1, 7.1. Indeed, some rules regulate speech and conduct even outside the courtroom and unrelated to client relationships. *See* Pa.R.P.C. 8.4(c).

suppression of speech [and] does not distinguish between prohibited and permitted activity on the basis of viewpoint"); *see also Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 572 (1995)(public accommodations law preventing discrimination on sexual orientation and other grounds did not, "on its face, target speech or discriminate on the basis of its content"); *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 801 (9th Cir. 2011)(holding that a college's nondiscrimination policy does not "target speech or discriminate on the basis of its content," but instead serves to remove access barriers imposed against groups that have historically been excluded), *cert. denied*, 565 U.S. 1260 (2012).

Pennsylvania's interest in regulating attorneys and the practice of law is compelling, and its power to do so is broad, as noted above. Here, the Amendments are directed towards discrimination and harassment that have detrimental effects on the judicial system, which is conduct that Pennsylvania has a compelling interest in eradicating. *See Roberts*, 468 U.S. at 623; *see also Matter of Abrams*, 488 P.3d 1043, 1053 (Colo. 2021)(rejecting a First Amendment challenge to Colorado's Rule 8.4(g) and stating, "There is no question that a lawyer's use of derogatory or discriminatory language that singles out individuals involved in the legal process damages the legal profession and erodes confidence in the justice system.").

The Amendments' purpose is the compelling interest to "promote[] the profession's goal of eliminating intentional harassment and discrimination" and assuring "that the legal profession functions for all participants[.]" 49 Pa.B. 4941. This interest couples with Pennsylvania's other compelling interests in "regulating

lawyers" and "protect[ing] the integrity and fairness" of the judicial system. *Gentile*, 501 U.S. at 1075.

*Second*, in a related argument, not only do the Amendments regulate conduct only, but they also regulate professional conduct. Thus, that they may incidentally burden speech is permissible. *See National Inst. of Family & Life Advocates*, 138 S.Ct. 2361, 2373 (2018)(collecting cases and reaffirming that the Court upholds professional conduct regulations, including those regarding attorneys, that incidentally burden speech: "the First Amendment does not prevent restrictions directed at . . . conduct from imposing incidental burdens on speech," and "professionals are no exception to this rule.").

Citing to the Supreme Court's decision, the Fourth Circuit correctly notes, "Many laws that regulate the conduct of a profession or business," like the Amendments at issue, "place incidental burdens on speech, yet the Supreme Court has treated them differently than restrictions on speech." *Capital Associated Indus., Inc. v. Stein*, 922 F.3d 198, 207-08 (4th Cir. 2019)(collecting cases where the Supreme Court has considered "[b]ans on discrimination" and analyzed them as conduct rules), *cert. denied*, 140 S.Ct. 666 (2019).

Although the Supreme Court did not clearly articulate the standard to apply for professional conduct regulations that incidentally burden speech, courts have used intermediate scrutiny review. *See id.* at 209. In order to survive intermediate scrutiny, the Amendments must serve a "significant, substantial, or important" government interest. *Drummond v. Robinson Twp.*, 9 F.4th 217, 230-31 (3d Cir. 2021). Second, the

fit between the asserted interest and the challenged regulation must be "reasonable." *Id.* The fit between the Amendments and Defendants' objectives need not be perfect, and the Amendments need not be the least restrictive means of serving the interest. *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010), *cert. denied*, 562 U.S. 1158 (2011).

For the first prong, the Amendments serve Pennsylvania's compelling interests in regulating the practice of law and eradicating discrimination and harassment as noted above. Next, the Amendments' prohibition on conduct in the practice of law that targets individuals for harassment and discrimination is a reasonable fit with Pennsylvania's compelling interests. The Amendments are not based on speech, offensive ideas, or whether someone is offended. Instead, the Amendments are directed towards conduct and allow for ample room for speech.

## 2. The Amendments are not viewpoint-based.

Because the Amendments regulate conduct, a viewpoint claim fails. Even if the Amendments regulated speech and not conduct though, they are not viewpoint-based. Viewpoint-based regulations target particular views taken by speakers on a subject. *Startzell v. City of Philadelphia*, 533 F.3d 183, 193 (3d Cir. 2008). On its face, the Amendments do not do that. Instead, they are directed to goals unrelated to the suppression of expression: the adverse effect that discriminatory and harassing conduct has on the practice of law. *See Boy Scouts of Am. v. Wyman*, 335 F.3d 80, 93 (2d Cir. 2003)(stating that Connecticut's Gay Rights Law regulates

membership and employment policies as conduct, not as expression and, "as such, is not obviously viewpoint discriminatory"), *cert. denied*, 541 U.S. 903 (2004).

The Amendments do not distinguish between which views one may take on a particular subject. It does not carve out one idea for favor or disfavor. The Amendments are unconcerned with, for instance, which cases one may quote from – or even which opinion in a case. For instance, whether one cites from the majority opinion in *Bowers v. Hardwick*, 478 U.S. 186 (1986)("No connection between family, marriage, or procreation on the one hand and homosexual activity on the other has been demonstrated, either by the Court of Appeals or by respondent."), then-Chief Justice Burger's concurrence ("To hold that the act of homosexual sodomy is somehow protected as a fundamental right would be to cast aside millennia of moral teaching."), or the dissent (The "assertion that 'traditional Judeo-Christian values proscribe' the conduct involved . . . cannot provide an adequate justification[.]"), is irrelevant for Rule 8.4.

Instead, the question is whether an attorney engaged in harassing or discriminative conduct – not what viewpoint they take on a particular issue. The Amendments also do not differentiate between which attorneys must comply with the Amendments based on viewpoint: they apply equally to all attorneys, regardless of their views. *See Barr v. Lafon*, 538 F.3d 554, 572 (6th Cir. 2008).

Further, the Amendments are not grounded on whether words may offend someone. In addition to the lack of language in Amendments directed toward offensive language, ODC does not consider the Amendments to cover being offended

or offensive language. (Farrell Declaration ¶ 16, ECF Doc. 56.) Thus, this Court's concern related to the Old Rule that it was intended to regulate offensive speech based on "words manifesting bias or prejudice" is absent in the Amendments. *See Greenberg*, 491 F.Supp.3d at 32.

The *Matal v. Shiaol* case does not compel a different result. 137 S.Ct. 1744 (2017). First, *Matal* did not involve conduct, anti-discriminatory or antiharassment regulations, or the government's interest in addressing discrimination and harassment's immediate harms in professional conduct. Instead, the Court addressed government protection of speech from commercial infringement. In *Matal*, the government's reasoning for denying trademark protection to allegedly offensive terms relied on whether the speech "offended" the listener. *Id.* at 1766.

Conversely, in the instant case, whether someone is offended is irrelevant. Plus, unlike in *Matal*, the Amendments concern a compelling state interest in eradicating discrimination and harassment and ensuring that the legal profession functions for all participants. Even more fundamentally, the activity in *Matal* involved pure speech. Here, on the other hand, the Amendments address attorney conduct, not speech. *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 32 (2d Cir. 2018)(recognizing that *Matal* does not affect the government's ability to target ethnic slurs through anti-discriminatory regulations).

Further, no evidence exists that the Amendments were enacted to oppress speech as opposed to harmful conduct, let alone to suppress a particular viewpoint. *See Boy Scouts of America*, 335 F.3d at 93 (holding that Connecticut's Gay Rights

Law was not viewpoint discriminatory, even though it may have a viewpoint disparity, where there was no reason to doubt that the law's purpose was to discourage harmful conduct); *see also Make The Road by Walking, Inc. v. Turner*, 378 F.3d 133, 151 (2d Cir. 2004)(holding that a plaintiff offered no evidence that a policy was based on bias against its viewpoint rather than the conduct of discrimination and harassment). Instead, the evidence establishes the opposite: the Amendments were enacted to discourage harmful conduct, regardless of what view one has. *See Christian Legal Society Chapter of the Univ. of California, Hastings College of the Law v. Martinez*, 561 U.S. 661, 695 (2010)("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.").

In sum, the Amendments place no restriction on a particular viewpoint. They are directed towards conduct that has immediate, detrimental effects. The question is whether an attorney's conduct knowingly targeted an individual for harassment or discrimination.

### 3. The Amendments are not content based: they do not distinguish "favored" speech over "disfavored" speech.

Content-based provisions distinguish favored speech over disfavored speech based on the ideas expressed. *Startzell*, 533 F.3d at 193. As described above, the Amendments do not do that: they regulate conduct, not speech. Further, the content is irrelevant – what is relevant is whether an attorney knowingly targets an individual for harassment or discrimination.

Because the Amendments are content-neutral, they must be narrowly tailored, and must not "burden substantially more speech than is necessary" to further Pennsylvania's interests. *Turco v. City of Englewood, New Jersey*, 935 F.3d 155, 162 (3d Cir. 2019). Unlike a content-based speech restriction, however, the Amendments need not be the "least restrictive or least intrusive means of serving the government's interests." *Id.* To that point, narrowly tailored does not mean "perfectly tailored." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 454 (2015).

Pennsylvania has a compelling interest in eradicating discrimination and harassment, ensuring that the legal profession functions for all participants, maintaining the public confidence in legal system's impartiality, and its trust in the legal profession as a whole. *See id.* (stating that "impossibility of perfect tailoring is especially apparent when the State's compelling interest is as intangible as public confidence in the integrity of the judiciary").

The Amendments are narrowly tailored because they cover only conduct that takes place in the practice of law, and they allow attorneys to express their views on hate speech, due process rights, and other "controversial" topics. Indeed, attorneys may advocate for such positions in the practice of law, which includes at CLEs.[22]

Furthermore, even if the Amendments were content based, they may be justified if they are narrowly tailored to serve compelling state interests, which is what Pennsylvania has done here. *See Startzell*, 533 F.3d at 193. The Amendments

---

[22] For instance, a CLE program may have attorneys from opposite sides of an issue present and advocate for their position. That does not violate the Amendments.

apply to activities that are required to practice law, which ensures that those who are representing clients or taking mandated CLE credits are not harassed or discriminated against. The Amendments do not apply to activities outside those spheres, which allows attorneys ample opportunity to engage in conduct that would otherwise be subject to the Amendments.

When balancing an attorney's First Amendment rights against a state's ability to discipline attorneys for unethical conduct, courts are to "engage[ ] in a balancing process" that weighs the state's "interest in the regulation of a specialized profession against a lawyer's First Amendment interest in the kind of speech that was at issue." *Gentile*, 501 U.S. at 1073.

Thus, the Amendments serve the compelling state interests in eradicating discrimination and harassment, coupled with regulating the practice of law. Under either scrutiny standard, they pass constitutional muster.

**C.   The Amendments are not overbroad because any protected speech that they may incidentally encompass pales in comparison to the unprotected conduct to which they apply.**

The Amendments regulate conduct. The Supreme Court holds that "it has never been deemed an abridgment of freedom of speech" to make a "course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Rumsfeld v. Forum for Academic. & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006)(quotation omitted). To the point: "Congress, for example, can prohibit employers from discriminating in hiring on the basis of race. The fact that this will require an

employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." *Id.*

In deciding whether the Amendments are facially invalid, as noted above, this Court must not speculate about "hypothetical or imaginary cases" and must exercise "judicial restraint[.]" *Washington State Grange*, 552 U.S. at 449-50. Further, the "elementary rule is that every reasonable construction" must be used to "save a statute from unconstitutionality." *Stretton*, 944 F.2d at 144.

In order to establish that the Amendments are facially overbroad, Plaintiff has a "heavy burden[.]" *Free Speech Coalition, Inc. v. United States*, 974 F.3d 408, 429 (3d Cir. 2020). Plaintiff has to demonstrate, from "the text of [the Amendments] and from actual fact, that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003)(quotation omitted). In examining an overbreadth claim, the proper test is whether the provision "prohibits a substantial amount of protected expression." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002). Moreover, because the Amendments would at the most only incidentally burden speech as set forth above, such burdens are permissible. *See National Inst. of Family & Life Advocates*, 138 S.Ct. at 2373; *Capital Associated Indus., Inc.*, 922 F.3d at 207-08.

It is well-established that the overbreadth doctrine is "strong medicine," which should be used "sparingly and only as a last resort." *Free Speech Coalition, Inc.*, 974 F.3d at 429 (quoting *Broadrick*, 413 U.S. at 613). To determine whether the Amendments prohibit a substantial amount of protected expression, the Court

must look at four factors: 1) "the number of valid applications," 2) "the historic or likely frequency of conceivably impermissible applications," 3) "the nature of the activity or conduct sought to be regulated," and 4) "the nature of the state interest underlying the regulation." *Borden v. School Dist. of Twp. of East Brunswick*, 523 F.3d 153, 165 (3d Cir. 2008).

### 1. Valid applications.

The Amendments are directed to attorney conduct in the practice of law, and they serve the Pennsylvania Judiciary's compelling interest in preventing discrimination and harassment and regulating the practice of law, as laid out above.

### 2. Historic or likely impermissible applications.

Because the Amendments have not yet gone into effect, there is no historical application. Nor is there any likely impermissible application. The Amendments are limited to conduct "in the practice of law." Pa.R.P.C. 8.4(g). Comment Three lists both the activities that come within the "practice of law," and those that do not.

Perhaps in an attempt to carry his "heavy burden" that the Amendments prohibit a "substantial amount of protected expression," Plaintiff relies on incidents on college campuses, website commentaries, and even what "social media users" posted on Twitter. (Plaintiff's Declaration ¶¶ 44-87, ECF Doc. 54.) Conspicuously, not one example involves attorney discipline or rules of professional conduct – or attorneys engaged in the "practice of law" as set forth in the Amendments.

Additionally, the Amendments do not prohibit "offensive" language. The term is not in the Amendments, and ODC has affirmed that "offensive" speech and speech on controversial topics does not come within the Amendments' scope.

At bottom, based on the Amendments' plain language and ODC's averments, no likely impermissible applications exist.

### 3.     Nature of activity and Pennsylvania's interest.

As detailed above, regulating the practice of law is an interest in which states have an "especially great" and "extremely important" interest. As noted, hosts of provisions that regulate an attorney's speech and conduct already exist. These comport with the unwavering understanding that a state – and the federal courts – have a vital and compelling interest in regulating the practice of law, as well as preventing discrimination and harassment.

In sum, Plaintiff has not met his heavy burden that the Amendments sweep in a "substantial amount" of protected expressive activity. To the contrary, any such activity would be miniscule and not so substantial as to require invalidating them. Instead, as the Third Circuit holds, "any concern about overbreadth may instead 'be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.'" *Borden*, 523 F.3d at 166.

D.   **The Amendments are not vague because they use familiar, well-known terms that an objective attorney understands, and they provide fair warning of prohibited conduct.**

Plaintiff contends that the Amendments are vague. To the contrary, the Amendments set forth well-known terms and phrases that provide more than fair warning to attorneys about what discriminatory and harassing conduct means and in what circumstances the Amendments apply.

The vagueness inquiry is grounded in the Fourteenth Amendment's due process clause. *J.S. v. Blue Mt. Sch. Dist.*, 650 F.3d 915, 935 (3d Cir. 2011). Its purpose is to ensure that there is "fair warning of prohibited conduct." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992)(quotation omitted).

Even if a regulation restricts expressive activity, "[p]erfect clarity and precise guidance have never been required[.]" *Ward*, 491 U.S. at 794. Indeed, the Supreme Court acknowledges that "there are limitations in the English language with respect to being both specific and manageably brief," which may not "satisfy those intent on finding fault at any cost[.]" *San Filippo*, 961 F.2d at 1136 (quoting *U.S. v. Harris*, 347 U.S. 612, 618 (1954)). Moreover, because the Amendments do not involve criminal sanctions, a "greater tolerance" of imprecision is allowed. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982).

To determine whether the Amendments are vague, this Court must decide if they are "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *San Filippo*, 961 F.2d at 1136. Here, the objective question becomes

37

whether the ordinary attorney using ordinary common sense can sufficiently understand and comply with the Amendments, without sacrifice to the public interest. *See Howell v. State Bar of Texas*, 843 F.2d 205, 208 (5th Cir. 1988); *see also King v. Christie*, 981 F.Supp.2d 296, 327 (D.N.J. 2013).[23]

Prior to showing why the Amendments are not vague, it is worthwhile to review a selection of cases rejecting vagueness challenges to rules of professional conduct. These include, to name a few, *Villeneuve v. Connecticut*, C.A. No. 3:10cv296, 2010 WL 4976001, at *3 (D. Conn. Dec. 2, 2010)(provisions addressing conduct involving "dishonesty, fraud, deceit or misrepresentation," and conduct "prejudicial to the administration of justice" not vague); *Howell*, 843 F.2d at 206 ("prejudicial to the administration of justice" not vague); *Petersen v. Florida Bar*, 720 F.Supp.2d 1351, 1368 (M.D. Fla. 2010)("professionalism and ethics in the practice of law" not vague); *Canatella v. Stovitz*, 365 F.Supp.2d 1064, 1077 (N.D. Cal. 2005)("legal and just" in attorney disciplinary code not vague).

"Harassment" and "discrimination" are well-known terms to attorneys (and even to the layperson). There is a sea of case law, statutes, regulations, and other provisions that utilize these terms, with perhaps the leading law being Title VII of the Civil Rights Act of 1964 and the cases interpreting it.

---

[23] *See In re Snyder*, 472 U.S. at 645 ("case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct[,]"guide attorneys); Pa.R.P.C. Preamble [15] ("The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself.").

In examining the Amendments, it is important to note that they are "rules of reason," which "should be interpreted with reference to the purposes of legal representation and of the law itself." Pa.R.P.C. Preamble, [14]. Thus, in interpreting "harassment" and "discrimination," the Court must interpret the terms in a reasonable way. What is more, other provisions in the professional conduct rules use general language, including "significant risk," "significantly harmful," "substantial likelihood," "substantial purpose," and "reasonable possibility." Pa.R.P.C. 1.7, 1.8 cmt. 3, 1.10, 2.3 cmt. 5, 3.2 cmt. 1, 3.6, 3.8, 4.3, 4.4, 7.1 cmt. 2. The words "reasonably" or "unreasonable" (or variations of them) appear throughout the Amendments. Thus, attorneys are familiar with such terms as it pertains to their conduct.

### 1.    Harassment.

Comment Four tapers "harassment" to "conduct that is intended to intimidate, denigrate or show hostility or aversion toward a person on any of the basis listed in paragraph (g)." "Harassment" also includes sexual harassment, including sexual advances, request for sexual favors, and other unwelcome sexual conduct. *See* Rule 8.4(g), Comment Four.

"Harass" and "harassment" are common terms used in the law. For instance, the Rules of Professional Conduct use "harass" in multiple places. *See* Pa.R.P.C. Preamble, [5], 3.5(c)(3), 3.10 cmt. 4, 7.3(b)(2), 8.3 cmt. 4. Rule 11 of the Federal Rules of Civil Procedure uses "harass." Fed.R.Civ.P. 11(b)(1).

Black's Law Dictionary defines "harassment" as "[w]ords, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms,

or causes substantial emotional distress to that person and serves no legitimate purpose; purposeful vexation." HARASSMENT, Black's Law Dictionary (11th ed. 2019).

Not only do the Amendments provide sufficient notice to attorneys, but they also guide ODC in deciding whether to enforce the Amendments, thereby ensuring that ODC is aware of the Amendments' boundaries. Indeed, ODC's Declaration delineate those boundaries.

### 2.    Discrimination.

Comment Five defines "discrimination" as "conduct that a lawyer knows manifests an intention: to treat a person as inferior based on one or more of the characteristics listed in paragraph (g); to disregard relevant considerations of individual characteristics or merit because of one or more of the listed characteristics; or to cause or attempt to cause interference with the fair administration of justice based on one or more of the listed characteristics." *See* Rule 8.4(g), Comment Five.

"Discrimination" is also defined as "[t]he effect of a law or established practice that confers privileges on a certain class or that denies privileges to a certain class because of race, age, sex, nationality, religion, or disability." DISCRIMINATION, Black's Law Dictionary (11th ed. 2019).

### 3.    "In the practice of law."

The Amendments are clear what "in the practice of law" means: they provide a definition in Comment Three. They also state what "in the practice of law is not." If an

attorney questions whether conduct is in the practice of law, they need look only at Comment Three.

## IV.   Conclusion

In lieu of engaging in a litany of speculations, the correct approach to address Rule 8.4(g)'s constitutionality is – as the Supreme Court holds – to practice "judicial restraint" and wait for an actual as-applied case with real facts. Not imaginary, hypothetical cases. *See Borden*, 523 F.3d at 166. The First Circuit stated it succinctly: if a situation arises where the Amendments "are applied to conduct that is sufficiently expressive to implicate the First Amendment, we are confident that as-applied challenges will properly safeguard the rights that the First Amendment enshrines." *United States* v. *Ackell*, 907 F.3d 67, 77 (1st Cir. 2018), *cert. denied,* 139 S.Ct. 2012 (2019).

Thus, Defendants respectfully request this Honorable Court to grant judgment in their favor.

Respectfully submitted,

**s/Michael Daley**
MICHAEL DALEY, ESQUIRE
Attorney I.D. PA 77212
MEGAN L. DAVIS, ESQUIRE
Attorney I.D. PA 321341
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486

***Counsel for Defendants***

41

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZACHARY GREENBERG | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 2:20-CV-3822 |
| v. | : | |
| | : | |
| JOHN P. GOODRICH, in his | : | |
| official capacity as Chair of the | : | Hon. Chad F. Kenney |
| Disciplinary Board of the Supreme | : | |
| Court of Pennsylvania, *et al.* | : | |
| | : | |
| *Defendants* | : | |

## Certificate of Service

The undersigned certifies that on November 16, 2021, he caused the

foregoing *Brief in Support of Defendants' Motion for Summary Judgment* via

CM/ECF to all counsel of record

**/S/ Michael Daley**
MICHAEL DALEY, ESQUIRE
Attorney I.D. No. PA 77212
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486
