# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZACHARY GREENBERG | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | No. 2:20-CV-3822 |
| v. | : | |
| | : | |
| JOHN P. GOODRICH, in his | : | |
| official capacity as Chair of the | : | Hon. Chad F. Kenney |
| Disciplinary Board of the Supreme | : | |
| Court of Pennsylvania, *et al.* | : | |
| | : | |
| *Defendants* | : | |

## Defendants' Brief in Opposition
### to Plaintiff's Motion for Summary Judgment

## I.      Statement of the Case[1]

In reading Plaintiff's Brief supporting his Motion for Summary Judgment,

one would think that Pennsylvania's compelling interest in addressing

discrimination and harassment in the practice of law is irrelevant. Or that

Pennsylvania attorneys cannot express their opinions about "controversial topics."

In fact, according to Plaintiff, an attorney cannot even "advocate with utmost

conviction that, by divine precepts, same-sex marriage should not be condoned."

*Obergefell v. Hodges*, 576 U.S. 644, 679 (2015).

---

[1] Defendants' Brief in Support of Defendants' Motion for Summary Judgment
provides a comprehensive Statement of the Case. (Doc. 61.) In the interest of
brevity, Defendants will not fully restate either their Statement of the Case or the
legal arguments from that Brief, which the Court already has. Instead, Defendants
will focus on specific arguments Plaintiff makes in his Brief.

What is more, despite the Supreme Court of Pennsylvania's recognition of the vital interest in a judicial system free from discrimination and harassment and the steps it has taken to address this issue, Plaintiff tells us – without any evidence (indeed contrary to the evidence) – that the "Commonwealth's real aim is not to root out harassment or discrimination in the legal process, but to remove certain ideas or perspectives from the broader debate."

Neither the plain language of the Amendments nor the evidence in this case supports such far-reaching and embellished arguments. Despite Plaintiff's attempts to reframe the Amendments' purpose and scope, the purpose of the Amendments on their face is to regulate attorneys' conduct to foster the compelling interests of guaranteeing that its judicial system is equally accessible to all.

Furthermore, the undisputed factual evidence is that "offensive" language or whether a listener is offended is irrelevant. Simply put, the Amendments do not prohibit advocating, expressing opinions, and quoting from cases. (Farrell Declaration ¶¶ 10-13, ECF Doc. 56).[2]

---

[2] In deciding a summary judgment motion, the Court "should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007). Thus, the Court must credit Chief Counsel Farrell's Declaration and Defendants' discovery responses, which is the Office of Disciplinary Counsel's ("ODC") official position regarding the Amendments. (ECF Doc. 56.) Chief Counsel Farrell has authority to direct how ODC interprets the Rules of Professional Conduct and ODC's policies on handling complaints, including those raising First Amendment issues. (Farrell Declaration ¶ 6, ECF Doc. 56.)

A fundamental flaw of Plaintiff's argument is that it overlooks that the Amendments only pertain to targeted conduct, *i.e.*, conduct that targets a specified individual for harassment or discrimination. (Farrell Declaration ¶ 7, ECF Doc. 56). General discussions of controversial issues, even when "offensive," do not meet this targeting requirement. Plaintiff's attempts to avoid this fact are unconvincing.

## II.   Statement of Questions

1.   Does Plaintiff lack standing to bring a pre-enforcement facial challenge when his claimed injury is supported only by his subjective belief, based on a guess, that unknown third parties will be offended and file a complaint, and that ODC may move to enforce Rule 8.4(g) despite the uncontradicted evidence that Plaintiff's conduct would not violate the Amendments and there is no credible threat of prosecution?

Answer: Yes.

2.   Do Plaintiff's viewpoint-based and content-based claims fail because the Amendments regulate conduct, not speech, and are not directed at particular views or ideas, and further because the Amendments are narrowly tailored to serve the "compelling interest" in regulating attorneys' professional conduct?

Answer: Yes.

3.     Has Plaintiff met his heavy burden in establishing that the Amendments are impermissibly overbroad where they regulate professional conduct involving discrimination and harassment and do not prohibit a substantial amount of protected expression, and where there are no historic or likely impermissible applications?

Answer: No.

4.     Do the Amendments, which are composed of well-known terms and phrases, provide fair warning to an objective attorney about what conduct is encompassed and in what circumstance, thereby rendering Plaintiff's vagueness claim meritless?

Answer: Yes.

## III.   Argument

### A.   Plaintiff lacks standing because he does not have a certainly impending, imminent injury: his subjective belief of injury is based upon speculation that unknown third parties may be offended and file a disciplinary complaint, and that ODC may seek to enforce Rule 8.4(g) despite such conduct not coming within the scope of the Amendments.

Plaintiff fails to carry his burden of establishing standing: he cannot show both that he intends to engage in conduct that the Amendments proscribe and that a credible threat of prosecution exists. As explained in Defendants' Summary Judgment Brief, Plaintiff must show a "specific present objective harm or a threat of specific future harm." *Pipito v. Lower Bucks Co. Joint Mun. Auth.*, 822 Fed.Appx. 161, 164 (3d Cir. 2020).

4

Plaintiff's Brief largely skirts over the issue of standing. Instead, he erroneously contends that because standing is determined "at the outset," relying on Chief Counsel Farrell's Declaration and discovery responses turns the question of standing into one of mootness. This argument is unavailing.

It is well-settled that standing is a "jurisdictional requirement which remains open to review at all stages of the litigation." *National Organization for Women v. Scheidler*, 510 U.S. 249, 255 (1994). This is true even when the plaintiff's lack of standing is evidenced, as here, by way of a defendant's declaration or affidavit during litigation.

Courts regularly hold that standing is lacking where, during litigation, a defendant disavows an intention to prosecute the plaintiff. In *Jamal v. Kane*, the court relied on a district attorney's disavowals in his court filings to hold that there was no imminent threat of injury and, therefore, the plaintiff lacked standing. 96 F.Supp.3d 447, 454-55 (M.D. Pa. 2015). The Tenth Circuit holds that whether prosecutorial disavowals were provided "only after [plaintiff] filed his lawsuit" is of no moment for standing purposes, even where the prosecutors failed to respond to such requests by the plaintiff prior to suit. *Winsness v. Yocom*, 433 F.3d 727, 733 (10th Cir. 2006); *see also McKay v. Federspiel*, 823 F.3d 862, 870 (6th Cir. 2016)(holding that plaintiff did not establish a credible threat of enforcement and therefore lacked standing where the defendants submitted an affidavit at summary judgment stating that the challenged provision would not be enforced unless directed to do so by a judge), *cert. denied*, 137

S.Ct. 1229 (2017); *Harmon v. City of Kansas City, Mo.*, 197 F.3d 321, 327 (8th Cir. 1999)(holding that the plaintiff lacked standing for injunctive relief where the defendant city stated in a brief that the ordinance at issue did not prohibit plaintiff's future activities), *cert. denied*, 529 U.S. 1038 (2000).

Plaintiff's claim that the mootness standard applies is based on the voluntary cessation doctrine, which is inapplicable here: ODC never interpreted the Amendments any other way than it does now – let alone a way that covered Plaintiff's conduct. Nor have Defendants ever argued or stated that Plaintiff's conduct violated the Amendments. Thus, the prerequisite to voluntary cessation – ceasing a challenged practice or stopping wrongful conduct – is missing. *See Rendell v. Rumsfeld*, 484 F.3d 236, 243 (3d Cir. 2007)(stating that the purpose of the voluntary cessation exception is to prevent defendants from avoiding judicial review "by *ceasing the challenged practice*, only to resume it after the case [is] dismissed (emphasis added)).

ODC's interpretation of the Amendments is not akin to those cases in which voluntary cessation applied because a party may "return to its old ways" later. *Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 307 (3d Cir. 2020). Here, there are no "old ways" or practices for Defendants to return to: Defendants' position that Plaintiff's conduct does not violate the Amendments and the interpretations of the Amendments have been consistent.

What is more, as set forth more fully in Defendants' Summary Judgment Brief, even without Chief Counsel Farrell's Declaration, Plaintiff cannot establish standing:

6

his claim is based on pure speculation without a credible threat of enforcement, as detailed in Defendants' Summary Judgment Brief. Plaintiff tries to piece together an injury composed of hypothetical, subjective concerns about what third parties might possibly do someday, followed by what ODC might possibly do in response. Yet Plaintiff cannot fashion standing merely by "inflicting harm" on himself based on fears of "hypothetical future harm that is certainly not impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see Madstad Engineering, Inc. v. U.S. Patent & Trademark Office*, 756 F.3d 1366, 1380-81 (Fed. Cir. 2014)(holding that the plaintiff lacked standing where, "most importantly," its harm "depends upon speculation about the choices which might be made by third parties"), *cert. denied*, 574 U.S 1152 (2015); *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009)(holding that allegations that a statute *could* be manipulated or that the police *might* misuse the criminal justice system for retaliatory purposes was too speculative for standing purposes).

On top of this speculation, Plaintiff adds irrelevant incidents: highlighting "public accusations of bias and prejudice" regarding non-attorneys to support his subjective fears. (Plaintiff's Declaration ¶¶ 44-87, ECF Doc. 54.) Plaintiff's examples have nothing to do with whether ODC would subject Plaintiff to discipline or even an investigation, however. They do not involve attorneys or disciplinary rules or proceedings. Plaintiff's attempt to equate making "public accusations" the equivalent

of ODC investigating and charging an attorney who engages in conduct that does not come within the Amendments rings hollow.

Next, Plaintiff contends that because the Board Defendants did not "play a role in drafting the Farrell Declaration," this case may continue against them. (Plaintiff's Brief at 29.)[3] Yet, the Board is an adjudicatory body and an arbiter of the disciplinary cases that come before it. Like other adjudicatory bodies, the Board does not enforce the Amendments, conduct investigations, or propose discipline. ODC alone has the authority to investigate and seek discipline. Thus, it is ODC's intentions and interpretations that determine whether a credible threat of prosecution exists.

Plaintiff contends, based on a misreading of the disciplinary rules, that the Board may overrule ODC's decision not to prosecute. This is incorrect. First, Plaintiff's position is contradicted by the only evidence before the Court on this issue: ODC Chief Counsel's affirmation that the Board "cannot review complaints or otherwise adjudicate complaints that the ODC dismisses before a Petition for Discipline is filed." (Defendant's Response to Request for Admissions No. 7, ECF Doc. 62, Ex. B.) Next, as confirmed by Chief Counsel Farrell, a reading of the disciplinary rules confirms that the Board cannot review ODC's decision to dismiss where the complaint is dismissed

---

[3] Plaintiff's cite to *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454 (3d Cir. 1994), is of no moment here. In that case, the state disavowed any enforcement action against a pastor in his clerical role, but not as an individual. Thus, the state's representation did not remove a "real and substantial" threat of prosecution because the individual threat remained. *Id.* at 1468.

because it is frivolous or outside ODC's jurisdiction, based on Board policy or prosecutorial discretion, or for "any other reason." Pa.R.D.E. 208(a)(3); Pa.D.Bd.R. § 87.8(b)(1)-(5).[4]

As noted in Chief Counsel Farrell's Declaration and discovery responses, a complaint based on Plaintiff's intended conduct would be frivolous and not prosecuted, thereby falling within the reasons for which no further review can be had. So would a complaint based on "offensive" language or ideas or whether someone was offended.

Finally, Plaintiff's contention that ODC cannot be estopped from taking a position contrary to that set forth in Chief Counsel Farrell's Declaration and discovery responses is incorrect.[5] While generally estoppel as it applies to the government is treated differently than as to private litigants, that does not mean that the government may ignore promises and positions on which attorneys detrimentally rely. For example, the Supreme Court of Pennsylvania recently held that estoppel and detrimental reliance are valid defenses to prosecutorial actions. *See Commonwealth v. Cosby*, 252 A.3d 1092, 1135-44 (Pa. 2021)(recognizing that due process and

---

[4] Further, under Disciplinary Board Rule 87.9(a), while a complainant may seek reconsideration of ODC's dismissal of a complaint, ODC's decision regarding the reconsideration is final with no other right to appeal. Pa.D.Bd.R. § 87.9(a), (c)-(d).
[5] Chief Counsel Farrell's Declaration is binding on ODC and estops it from taking a different position than set forth in the Declaration. (Defendants' Answers to Interrogatories No. 12, ECF Doc. 62, Ex. A; Response to Request for Admissions No. 1, 5, ECF Doc. 62, Ex. B.)

9

fundamental fairness can warrant precluding prosecution where a defendant detrimentally relies on disavowals and related statements). Thus, attorneys who rely on ODC's position are protected. And Plaintiff provides no evidence to the contrary.

Not only did the Supreme Court of Pennsylvania apply due process and estoppel based on prosecutorial promises, but it did so against a succeeding district attorney who had not made any representations to the defendant. *See id.* at 1143. So, whether ODC's chief counsel is subsequently replaced does not vitiate estoppel, detrimental reliance, and due process concerns.[6]

In sum, Plaintiff has not met his standing burden. There is no imminent, impending injury to Plaintiff. Rather, there is only his worry about what attendees may think and then possibly do, and how ODC ultimately might react. All of which flies in face of the Amendments' plain language and the uncontradicted evidence that Plaintiff's conduct does not come within the Amendments and ODC would not seek discipline for it.

At bottom, Plaintiff's fear of enforcement is not what matters, but what evidence he marshals to support it. *See American Library Ass'n v. Barr*, 956 F.2d 1178, 1193 (D.C. Cir. 1992)(holding that the question is how likely it is that the government will attempt to use a provision against a plaintiff – not how worried they are about potential enforcement). Here he marshals none.

---

[6] Further, the only evidence is that successor chief counsels are "estopped from taking any enforcement actions in contravention" of Chief Counsel's Declaration. (Defendant's Response to Request for Admissions No. 7, ECF Doc. 62, Ex. B.)

10

**B.     The Amendments are neither viewpoint nor content based.**

Plaintiff relies heavily on *Matal v. Shiaol* to argue that the Amendments are viewpoint based. Not only is *Matal* inapposite, but Plaintiff's Brief conjures up the exact type of "hypothetical or imaginary" instances that this Court must avoid. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008). Even more, Plaintiff's hypotheticals involve instances in which the Amendments would not apply.

For example, Plaintiff asserts that an attorney cannot assert that a religion is "worthy of condemnation" at a CLE or express a view at a bar association event that gender identity transitioning is "harmful and abusive" or that "billionaires shouldn't exist." (Plaintiff's Brief at 6.)[7] Not so. As described in Defendants' Summary Judgment Brief, the Amendments do not distinguish between which views one may take on a particular subject. They do not carve out one idea for favor or disfavor. Instead, the question is whether an attorney engaged in harassing or discriminative conduct directed toward a specific individual – not what viewpoint they take on a particular issue.

Moreover, unlike in *Matal*, an as-applied case that did not involve the compelling interest of addressing discrimination and harassment's harms in the practice of law, whether someone is offended by an attorney's views on a particular

---

[7] A "bar association event" is not covered by the Amendments unless legal credits are offered. *See* Rule 8.4(g), cmt. 3.

11

issue is irrelevant. This is in contrast to *Matal*, where the foundation for the court's holding was, "Speech may not be banned on the ground that it expresses *ideas that offend.*" *Matal v. Shiaol*, 137 S.Ct. 1744, 1755 (2017)(emphasis added). As Plaintiff notes, *Matal* dealt with the constitutionality of a statute that prohibited the registration of trademarks that may generally "disparage or bring into contempt or disrepute" any "persons, living or dead." *Id.* at 1751. Notably, the government's rejection of the trademark at issue relied on the "reaction of the applicant's audience" – the government was attempting to determine whether speech might "have an effect on at least some Asian-Americans." *Id.* at 1766-67.

No such considerations are present in the instant case. The Amendments do not prohibit "ideas that offend"; they prohibit conduct that harms and interferes with an attorney's ability to obtain mandatory legal education credits. The Amendments contain no prohibition against offensive language or the listener's subjective view. Nor does ODC consider whether one is offended or offensive language is used to be relevant. (Farrell Declaration ¶ 16, ECF Doc. 56.) The uncontradicted evidence is that the listener's subjective perception of an attorney's speech is irrelevant for purposes of whether the attorney's conduct falls within the Amendments. (Defendants' Answers to Interrogatories No. 7, ECF Doc. 62, Ex. A.) *See Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989)(court "must . . . consider any limiting construction that a state court or enforcement agency has proffered").

In contrast to *Matal*, the Amendments apply only when an attorney knowingly targets an individual for harassment or discrimination.[8] Plaintiff, however, attempts to use *Matal* to discredit ODC's interpretation of the Amendments by arguing that *Matal* "refused to read an implicit targeting requirement" into the statute at issue. (Plaintiff's Brief at 9-10.) Contrary to Plaintiff's position though, the "plain language" of *Matal*'s statute differs substantially: that statute did not have an express targeting requirement. Here, there is no need to "read an implicit targeting requirement" into the Amendments: it's already there. Comment Three requires that harassment be "toward a person," and Comment Four mandates that discrimination must be in how one "treat[s] a person." In *Matal*, conversely, the issue was whether racial and ethnic groups were "persons," which is not an issue here and does not lend support to Plaintiff's position. *See Matal*, 137 S.Ct. at 1755.

Next, Plaintiff contends that the Amendments are overbroad because the targeting requirement applies outside of legal representation and legal proceedings, and – according to Plaintiff – in situations where there is "no prejudice to the administration of justice." (Plaintiff's Brief at 10.) Setting aside that attorneys have long been subject to disciplinary rules that do not constitute "prejudice to the

---

[8] The Court has the benefit of limiting construction in this case. For example, verbal conduct that "targets individuals by harassing or discriminating against an identifiable person" includes "targeted victimization of a particular person on the basis of protected status. Moreover, targeting individuals includes conduct that results in invidiously disparate treatment and abusive or predatory behavior." (Defendants' Answers to Interrogatories No. 7, ECF Doc. 62, Ex. A.)

administration of justice" or pertain to client relationships or legal proceedings, *see* Pa.R.P.C. 8.4(c), the Amendments apply to functions where CLE credits are offered. And, since attorneys must obtain CLE credits to be in good standing, *see* Pa.R.C.L.E. 105, Pennsylvania has a compelling interest in ensuring that attorneys are not targeted for harassment or discrimination while obtaining credits.[9]

Plaintiff erroneously asserts, based on Chief Counsel Farrell's Declaration, that Defendants suggest that CLE panels must "balance out controversial views." (Plaintiff's Brief at 11.) That is incorrect: Chief Counsel Farrell's Declaration says no such thing, and Defendants do not advance that argument. Instead, the Declaration simply provides an example that CLEs "*may have* panel members from two sides of a 'controversial' issue," to show that what "side" one takes on "controversial issues" is irrelevant under the Amendments. (Emphasis added.)[10]

In addition, Plaintiff produces no evidence to show that the Amendments were enacted to oppress speech as opposed to harmful conduct, let alone to suppress a particular viewpoint. *See Boy Scouts of America v. Wyman*, 335 F.3d 80, 93 (2d Cir. 2003)(holding that Connecticut's Gay Rights Law was not viewpoint discriminatory, even though it may have a viewpoint disparity, where there was no reason to doubt

---

[9] Defendants' Summary Judgment Brief further explains why Plaintiff cannot meet his "heavy burden" to apply the "strong medicine" of overbreadth. (Defendants' Brief at 33-26.)

[10] As Plaintiff notes, one function of free speech is to "invite dispute." (Plaintiff's Brief at 12.) Nothing in the Amendments prevents that.

that the law's purpose was to discourage harmful conduct); *see also Make The Road by Walking, Inc. v. Turner*, 378 F.3d 133, 151 (2d Cir. 2004)(holding that a plaintiff offered no evidence that a policy was based on bias against its viewpoint rather than the conduct of discrimination and harassment).

In contrast, the Amendments' plain language and the evidence of record point the opposite way: the purpose is to discourage harmful conduct, regardless of what view one has.

C.    **The Amendments regulate professional conduct and are not overbroad because any protected speech that they may incidentally encompass pales in comparison to the unprotected conduct to which they apply.**

Plaintiff's Brief contends that the Amendments encompass "pure expression apart from any tortious conduct" and, therefore, do not regulate professional conduct. (Plaintiff's Brief at 13.) That is incorrect. As detailed in Defendants' Summary Judgment Brief, the Amendments are directed toward discrimination and harassment that have detrimental effects on the judicial system, which is conduct that Pennsylvania has a compelling interest in eradicating. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). Further, the Amendments permissibly regulate professional conduct. Thus, that they may incidentally burden speech is permissible.[11]

---

[11] *See National Inst. of Family & Life Advocates*, 138 S.Ct. 2361, 2373 (2018)(collecting cases and reaffirming that the Court upholds professional conduct regulations, including those regarding attorneys, that incidentally burden speech: "the First Amendment does not prevent restrictions directed at . . . conduct from imposing incidental burdens on speech," and "professionals are no exception to this rule"); *Capital Associated Indus., Inc. v. Stein*, 922 F.3d 198, 207-08 (4th Cir.

Although Plaintiff tries to paint the Amendments as a speech code, there is no such language in the Amendments and no evidence that the Amendments are directed at pure speech, offensive ideas, or whether someone is offended. To the contrary, both the Amendments' language and the sole evidence point the other way: the Amendments are directed toward conduct that has a detrimental effect on the judicial system.

In an effort to show that the Amendments prohibit verbal and "other pure forms of expressive conduct," Plaintiff's Brief takes the definition of "in the practice of law" in Comment Three and asserts that the Amendments are really directed at speech. (Plaintiff's Brief at 15.) But Plaintiff is confusing the issue. Comment Three defines "in the practice of law" to include three categories. It then states that speeches, presentations, and related activities outside of those contexts are not "in the practice of law."

Thus, for example, giving a presentation or speech at a CLE is an event that the Amendments encompass. To Plaintiff, that is the end of the story: it's a speech code. Yet this simplistic take ignores the full context of the Amendments. The Amendments do not pertain to speech that does not result in targeted harassment or discrimination directed to a person. Attorneys can speak at a CLE to advocate that cases were wrongly (or rightfully) decided, quote from cases with "offensive terms,"

_____

2019)(collecting cases where the Supreme Court has considered "[b]ans on discrimination" and analyzed them as conduct rules), *cert. denied*, 140 S.Ct. 666 (2019).

and express their views and opinions. They could advocate, for example, that a particular religion is regressive, oppressive, or worthy of condemnation, or that pre-adolescent gender identity transitioning is harmful and abusive, or that "billionaires shouldn't exist." So long as the speaker does not target another CLE participant for harassment or discrimination, the point of view that the speaker espouses is entirely irrelevant.

The *Saxe*, *DeJohn*, and *McCauley* cases that Plaintiff cites do not compel a different result. These cases were concerned with much broader educational institution policies that included "offensive" speech. In *Saxe*, the Third Circuit held that a school district's anti-harassment policy, which included a broad catch-all category of "other personal characteristic" and covered "appearance," "clothing," and "social skills," was overbroad as the policy was based on whether comments were offensive and if the listener was offended. *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 206-10 (3d Cir. 2001). Similarly, the *DeJohn* court also relied on whether a university's policy "offends someone." *DeJohn v. Temple Univ.*, 537 F.3d 301, 317 (3d Cir. 2008). The Third Circuit's decision in *McCauley v. University of the Virgin Islands* does the same: for example, the university policy prohibited "offensive signs." 618 F.3d 232, 248 (3d Cir. 2010).

Unlike the policies in *Saxe*, *DeJohn*, and *McCauley*, whether speech is "offensive" or if someone is "offended" is irrelevant under the Amendments. In addition to the lack of language in the Amendments directed toward offensive

17

language, the sole evidence is that the Amendments do not pertain to offensive language, and whether someone is offended is irrelevant. (Farrell Declaration ¶¶ 10-13, 16, ECF Doc. 56.) Moreover, the Amendments' language is narrower than the policies in the aforementioned cases and does not "prohibit[] a substantial amount of protected expression." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002).

In an attempt to claim that the Amendments are not permissible regulations on professional conduct, even if those regulations incidentally burden speech, Plaintiff again returns to his argument that the Amendments are not tailored to Pennsylvania's compelling interest in conduct that "interferes with the administration of justice." (Plaintiff's Brief at 18.) But, like his argument about overbreadth, he casts aside the fact that attorneys must obtain CLE credits in order to remain in good standing.

Pennsylvania has a compelling interest in ensuring that the judicial system is accessible to all and that attorneys who obtain mandatory legal education credits are not subject to discrimination and harassment, which excludes able lawyers from their place in the practice of law.

**D.    The Amendments are not vague because they use familiar, well-known terms that an objective attorney understands, and they provide fair warning of prohibited conduct.**

To determine whether the Amendments are vague, this Court must decide if they are "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public

interest." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992). Here, the objective question becomes whether the ordinary attorney – not the ordinary person as Plaintiff states – using ordinary common sense can sufficiently understand and comply with the Amendments, without sacrifice to the public interest. *See Howell v. State Bar of Texas*, 843 F.2d 205, 208 (5th Cir. 1988); *see also King v. Christie*, 981 F.Supp.2d 296, 327 (D.N.J. 2013).[12] In addition, this Court must interpret the Amendments "to avoid constitutional difficulties." *Office of Senator Mark Dayton v. Hanson*, 550 U.S. 511, 514 (2007).

1. **Harassment and "conduct that is intended to intimidate, denigrate, or show hostility or aversion" is not vague.**

Plaintiff takes exception to "conduct that is intended to intimidate, denigrate, or show hostility or aversion," and rhetorically asks what "speech, what words, what ideas are sufficient to qualify as 'harassment' because they 'denigrate' or 'show hostility or aversion'?" (Plaintiff's Brief at 23.)[13] The first problem with this question is that it ignores the maxim that in examining provisions for vagueness that "perfect clarity and precise guidance have never been required[.] *Ward*, 491 U.S. at 794. As explained in Defendants' Summary Judgment Brief, courts routinely reject vagueness

---

[12] *See In re Snyder*, 472 U.S. at 645 ("case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct[,]"guide attorneys); Pa.R.P.C. Preamble [14] ("The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself.").

[13] "Ideas" do not come within the Amendments.

challenges to terms such as "professionalism and ethics," "legal and just," and "prejudicial to the administration of justice," to name a few. (Defendants' Brief at 38.)[14]

Next, the Amendments, which are "rules of reason," must be read as a whole.[15] *See Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 25 (1988)(stating that the meaning of words depends on their statutory context). Thus, the terms "denigrate" and "show hostility or aversion" must be taken in context with "harassment," which is a term familiar to attorneys in the professional conduct rules. *See* Pa.R.P.C. Preamble, [5], 3.5(c)(3), 3.10 cmt. 4, 7.3(b)(2), 8.3 cmt. 4; *see also* Fed.R.Civ.P. 11(b)(1).

Black's Law Dictionary defines "harassment" as "[w]ords, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose; purposeful vexation." HARASSMENT, Black's Law Dictionary (11th ed.

---

[14] *See also Canatella v. Stovitz*, 365 F.Supp.2d 1064, 1075 (N.D. Cal. 2005)(rejecting vagueness, overbreadth, and under-inclusiveness challenges to "willful," "moral turpitude," "dishonesty," and "corruption," among other terms)*; Grievance Administrator v. Fieger*, 719 N.W.2d 123, 139 (Mich. 2006)(rejecting a vagueness challenge to ethical rules requiring lawyers to "treat with courtesy and respect all person involved in the legal process" and prohibiting "undignified or discourteous conduct toward [a] tribunal").

[15] Pa.R.P.C. Preamble, [14]. Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 217 (2012)(Canon 34: "A preamble, purpose clause, or recital is a permissible indicator of meaning."); *id*. at 221 (Canon 35: "The title and headings are permissible indicators of meaning.").

2019).[16] Pennsylvania case law defines "harass" to include "to trouble by repeated attacks, incursions, *etc.*, as in war or hostilities; harry; raid; to disturb persistently; torment, as with troubles, cares, *etc.*; to bother continually; pester; persecute." *Commonwealth v. Hendrickson*, 684 A.2d 171, 177–78 (Pa. Super. 1996)(citing The Random House Dictionary of the English Language 645 (unabridged ed. 1969)), *aff'd,* 724 A.2d 315 (Pa. 1999).

Accordingly, denigrating and showing hostility or aversion must fit within "harassment" to begin with, which is a well-known standard. In sum, the ordinary attorney exercising ordinary common sense would understand in the context of the Amendments what "denigrate" and "show hostility or aversion" mean.

### 2. Discrimination is not vague.

Comment Five defines "discrimination" as "conduct that a lawyer knows manifests an intention: to treat a person as inferior based on one or more of the characteristics listed in paragraph (g); to disregard relevant considerations of individual characteristics or merit because of one or more of the listed characteristics; or to cause or attempt to cause interference with the fair administration of justice based on one or more of the listed characteristics." *See* Rule 8.4(g), Comment Five.

---

[16] When a statutory term is undefined, a court gives it its ordinary meaning, and may refer to legal and general dictionaries. *United States v. Poulson*, 871 F.3d 261, 269 (3d Cir. 2017).

"Discrimination" is also defined as "[t]he effect of a law or established practice that confers privileges on a certain class or that denies privileges to a certain class because of race, age, sex, nationality, religion, or disability." DISCRIMINATION, Black's Law Dictionary (11th ed. 2019).

In arguing that "discrimination" is vague, Plaintiff uses examples that – once again – would not come within the Amendments. For example, a CLE presenter advocating for racial or ethnic profiling or another advocating for race-based diversity preferences. (Plaintiff's Brief at 25.) It has already been established that advocating ideas or expressing opinions does not come within the Amendments. Thus, whether an enforcement official agrees that the views are "relevant characteristics" is of no moment. Likewise, an official's "political views" are of no moment.

Moreover, Plaintiff's continued speculation about possible vagueness in hypothetical situations not before the Court cannot support a facial attack. *See Hill v. Colorado*, 530 U.S. 703, 733 (2000). Further, Plaintiff's reliance on *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), does not advance his argument. There, the court was not determining whether a rule was vague on its face, but instead "as it has been interpreted and applied by" Nevada. *Id*. at 1036. Here, conversely, ODC's unopposed interpretation is narrow and focused.

In sum, interpreting a word or phrase depends upon not only the whole statutory text, but also requires "considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Bonkowski v.*

22

*Oberg Indus., Inc.*, 787 F.3d 190, 200 (3d Cir. 2015). Plaintiff pulls out individual words and examines them in a vacuum devoid of context and purpose. But the Amendments' purpose and context are clear, along with ODC's unopposed interpretation of the Amendments and what conduct violates them.

## IV.   Conclusion

In sum, the Amendments' singular purpose is to foster Pennsylvania's compelling interests in guaranteeing that its judicial system is equally accessible to all. And the Amendments do so by proscribing conduct that targets an individual for harassment or discrimination, which is set out in common terms that the ordinary attorney using ordinary common sense can understand.

Plaintiff, who fruitlessly seeks to establish standing through speculation and unrelated circumstances not involving attorney discipline, disregards the Amendments' purpose, conjures up hypotheticals that do not come within the Amendments' proscription, and ignores that the Amendments must be read as a whole along with their purpose and context.

Thus, Defendants respectfully request this Honorable Court to deny

Plaintiff's Motion for Summary Judgement and grant judgment in their favor.


Respectfully submitted,


**S/Michael Daley**
MICHAEL DALEY, ESQUIRE
Attorney I.D. PA 77212
MEGAN L. DAVIS, ESQUIRE
Attorney I.D. PA 321341
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486

***Counsel for Defendants***

24

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ZACHARY GREENBERG   :
           : CIVIL ACTION
     *Plaintiff*  :
           : NO. 2:20-CV-3822
    v.     :
           :
JOHN P. GOODRICH, in his  :
official capacity as Chair of the : Hon. Chad F. Kenney
Disciplinary Board of the Supreme :
Court of Pennsylvania, *et al.*  :
           :
     *Defendants* :

## Certificate of Service

The undersigned certifies that on December 14, 2021, he caused the foregoing

*Brief in Opposition to Plaintiff's Motion for Summary Judgment* via CM/ECF to

counsel of record.

/S/ **Michael Daley**
MICHAEL DALEY, ESQUIRE
Attorney I.D. No. PA 77212
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6300, Fax: (215) 560-5486